Elizabeth L. Deeley (SBN 230798)
elizabeth.deeley@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
gregg.locascio@kirkland.com
Jonathan D. Brightbill (admitted *pro hac vice*)
jonathan.brightbill@kirkland.com
Dennis J. Abdelnour (admitted *pro hac vice*)
dennis.abdelnour@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Attorneys for Defendant
ZONEPERFECT NUTRITION COMPANY

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES COLUCCI and KIMBERLY S. SETHAVANISH,<br><br>       Plaintiffs,<br><br>     vs.<br><br>ZONEPERFECT NUTRITION COMPANY,<br><br>      Defendant. | CASE NO. 3:12-CV-02907-SC<br><br>**ZONEPERFECT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF  POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Complaint Filed:  April 26, 2012<br>Complaint Removed:  June 5, 2012<br>Judge: Honorable Samuel Conti<br>Hearing Date:  October 12, 2012<br>Time:  10:00 AM<br>Location:  450 Golden Gate Ave.,<br>          17th Floor, Courtroom 1<br>          San Francisco, CA 94102 |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 12, 2012 at 10:00 AM, or as soon thereafter as this motion may be heard in the courtroom of the Honorable Samuel Conti located at 450 Golden Gate Ave., 17th floor, Courtroom 1, San Francisco, California 94102, Defendant ZonePerfect Nutrition Company will, and hereby does, move the Court for an order dismissing the Class Action Complaint of James Colucci and Kimberly Sethavanish, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).   The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the entire file in this matter, and the Defendant's exhibits attached to Defendant's Request for Judicial Notice.

DATED:  July 25, 2012                    Respectfully submitted,


/s/ *Jonathan D. Brightbill*
Jonathan D. Brightbill (admitted *pro hac vice*)
jonathan.brightbill@kirkland.com
Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
gregg.locascio@kirkland.com
Dennis J. Abdelnour (admitted *pro hac vice*)
dennis.abdelnour@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Fax: (202) 879-5200

Elizabeth L. Deeley (SBN 230798)
elizabeth.deeley@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500


Attorneys for Defendant
ZONEPERFECT NUTRITION COMPANY

## MEMORANDUM OF POINTS & AUTHORITIES

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ........................................................... i

TABLE OF AUTHORITIES ..................................................................................... iv

INTRODUCTION ............................................................................................................1

I.      STATEMENT OF FACTS AND PROCEDURAL HISTORY..........................................3

II.     STATEMENT OF QUESTIONS INVOLVED................................................................4

III.    LEGAL STANDARD................................................................................................4

IV.     ARGUMENT ...........................................................................................................5

      A.      Plaintiffs' Lack Constitutional And Statutory Standing ...........................................5

            1.      Plaintiff Colucci Lacks Constitutional And California Statutory
                  Standing Because He Did Not Purchase Any ZonePerfect Products .........5

            2.      Plaintiffs Lack Standing To Assert Claims For ZonePerfect Products
                  That They Did Not Buy ....................................................................6

      B.      Plaintiffs' Claims Of Deceptive Advertising Of Product Components Are Not
            Actionable Under The Federal Magnuson-Moss Warranty Act .............................8

      C.      Plaintiffs' Claims Are Impliedly Preempted As An Obstacle To The Effective
            Implementation Of The FDA's Existing Regulatory Scheme ..............................11

      D.      Even If Plaintiffs' State Law Claims Are Not Preempted, Plaintiffs Fail To
            Plausibly Plead Claims Based On ZonePerfect's "Natural" Labeling..................14

            1.      Whatever Definition Of "Natural" Is Applied, Plaintiffs Fail To Plead
                  Facts Plausibly Establishing That ZonePerfect's Ingredients Are Not
                  "Natural"........................................................................................15

            2.      Plaintiffs Do Not Plausibly Plead That A Reasonable Consumer
                  Would Expect A "Natural" Product To Not Contain Any So-Called
                  "Synthetic" Ingredients.................................................................17

            3.      Plaintiffs Allegations Are Implausible And Insufficient Because
                  Plaintiffs Do Not Show That They Relied To Their Detriment On
                  ZonePerfect's "All Natural" Labels............................................20

      E.      Plaintiffs Do Not Plead Fraud With The Requisite Particularity...........................21

      F.      Plaintiffs' Failure To Satisfy The CLRA Notice Requirement Necessitates
            Dismissal With Prejudice..................................................................23

1

G.      Plaintiffs Cannot State A Claim For Restitution Based On Quasi-Contract .........24

2

V.      CONCLUSION....................................................................................................................25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................................... 4, 5, 10

*Astiana v. Dreyer's Grands Ice Cream, Inc.,*
  2012 WL 2990766 (N.D. Cal. 2012) .......................................................................... 9

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .......................................................................................... 4, 5

*Birdsong v. Apple, Inc.,*
  590 F.3d 955 (9th Cir. 2009) .................................................................................. 5

*Bristow v. Lycoming Engines,*
  2008 WL 1902738 (E.D. Cal.  2008) ......................................................................... 20

*Buckman Co. v. Plaintiffs' Legal Comm.,*
  531 U.S. 341 (2001) ........................................................................................ 11

*Caro v. Procter & Gamble Co.,*
  18 Cal. App. 4th 644 (Cal. Ct. App. 1993) ................................................................. 20

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*
  2012 WL 1131526 (9th Cir. 2012) ........................................................................... 20

*Cattie v. Wal-Mart Stores, Inc.,*
  504 F. Supp. 2d 939 (S.D. Cal. 2007) ...................................................................... 23

*Chae v. SLM Corp.,*
  593 F.3d 936 (9th Cir. 2010) ............................................................................... 11

*CRST Van Expedited, Inc. v. Werner Enters., Inc.,*
  479 F.3d 1099 (9th Cir. 2007) .............................................................................. 16

*Davis v. Chase Bank U.S.A., N.A.,*
  650 F. Supp. 2d 1073 (C.D. Cal. 2009) ..................................................................... 23

*Degelmann v. Advanced Med. Optics, Inc.,*
  659 F.3d 835 (9th Cir. 2011) ..................................................................... 11, 12, 14

*Durell v. Sharp Healthcare,*
  183 Cal. App. 4th 1350 (2010) .............................................................................. 25

*Freeman v. Time, Inc.,*
  68 F.3d 285 (9th Cir. 1995) ................................................................................ 20

*Gil v. Bank of Am., Nat'l Ass'n,*
  138 Cal. App. 4th 1371 (2006) .............................................................................. 22

*Hairston v. S. Beach Beverage Co.*,
   2012 WL 1893818 (C.D. Cal. 2012) ............................................................ 7, 9, 10

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (2008) .................................................................................. 6

*Hines v. Davidowitz*,
   312 U.S. 52 (1941) ................................................................................................ 11

*Holk v. Snapple Beverage Corp.*,
   575 F.3d 329 (3d Cir. 2009) .................................................................................. 12

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
   802 F. Supp. 2d 1070 (N.D. Cal. 2011) ............................................................ 6, 25

*In re Facebook Privacy Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011) .................................................................... 4

*In re Sears, Roebuck & Co.*,
   2006 WL 1443737 (N.D. Ill. 2006) ........................................................................ 9

*Janda v. T-Mobile, USA, Inc.*,
   2008 WL 4847116 (N.D. Cal. 2008) ...................................................................... 23

*Johns v. Bayer Corp.*,
   2010 WL 476688 (S.D. Cal. 2010) .......................................................................... 7

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ......................................................................... 16, 22

*Larsen v. Trader Joe's Co.*,
   11-CV-05188-SI (N.D. Cal. June 14, 2012) ............................................. 3, 7, 8, 9, 10

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005),
   *aff'd*, 252 F. App'x 777 (9th Cir. 2007) ............................................................... 23

*Lewis v. Casey*,
   518 U.S. 343 (1996) ................................................................................................ 7

*Littlehale v. Hain Celestial Group, Inc.*,
   11-CV-06342-PJH, (N.D. Cal. July 7, 2012) .......................................................... 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................ 5

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................................... 9

*Mlejnecky v. Olympus Imaging Am. Inc.*,
   2011 WL 1497096 (E.D. Cal. 2011) ........................................................................ 7

*Pappas v. Naked Juice Co. of Glendora, Inc.*,
   2012 WL 1925598 (C.D. Cal. 2012) ................................................................... 9, 10

*Rosal v. First Fed. Bank of Cal.*,
   671 F. Supp. 2d 1111 (N.D. Cal. 2009) ............................................................. 25

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
   732 F. Supp. 2d 952 (N.D. Cal. 2010) ............................................................... 16

*Rubio v. Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010) .......................................................................... 17

*Schauer v. Mandarin Gems of Cal., Inc.*,
   125 Cal. App. 4th 949 (2005) ............................................................................. 6

*Skelton v. Gen. Motors Corp.*,
   660 F.2d 311 (7th Cir. 1981) .............................................................................. 9

*Stearns v. Select Comfort Retail Corp.*,
   2009 WL 1635931 (N.D. Cal. 2009) ................................................................ 23

*Stengel v. Medtronic Inc.*,
   2012 WL 1255040 (9th Cir. 2012) ................................................................... 11

*Thurston v. Bear Naked, Inc.*,
   11-CV-02890-H-BGS (S.D. Cal. July 16, 2012) ......................................... 9, 22

*True v. Am. Honda Motor Co.*,
   520 F. Supp. 2d 1175 (C.D. Cal. 2007) ........................................................... 20

*United States v. Healy Tibbitts Constr. Co.*,
   607 F. Supp. 540 (N.D. Cal. 1985) .................................................................. 24

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987) .............................................................................. 4

*Valley Forge Christian College v. Americans United for Separation
   of Church and State, Inc.*,
   454 U.S. 464 (1982) ....................................................................................... 5, 8

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .......................................................................... 22

*Wang v. OCZ Tech. Group, Inc.*,
   276 F.R.D. 618 (N.D. Cal. 2011) ..................................................................... 22

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ............................................................................ 17

*Williamson v. Reinalt-Thomas Corp.*,
   2012 WL 1438812 (N.D. Cal. 2012) ................................................................ 20

**Statutes**

15 U.S.C. § 2301(6) ............................................................................................... 8

15 U.S.C. § 2310(d)(3) ........................................................................................ 10

15 U.S.C. § 2310(d)(3)(C) .................................................................................................. 10

15 U.S.C.§ 2311(d) ........................................................................................................... 10

7 U.S.C. § 6518(m)(4) ...................................................................................................... 18

7 U.S.C. § 6518(m)(6) ...................................................................................................... 18

**Other Authorities**

16 C.F.R. § 700.3(a) ............................................................................................................ 9

21 C.F.R. § 10.85 .............................................................................................................. 11

21 C.F.R. § 101.9(k)(4) ..................................................................................................... 21

54 Fed. Reg. 32,610 (Aug. 8, 1989) ................................................................................ 12

58 Fed. Reg. 2302 (Jan. 6, 2003) ................................................................ 2, 11, 12, 13, 15

Cal. Bus. & Prof. Code § 17500 (West) .......................................................................... 17

Cal. Civ. Code § 1760 (West) ............................................................................................ 6

Cal. Civ. Code § 1770(a) (West) ...................................................................................... 17

Cal. Civ. Code § 1782 (West) .......................................................................................... 23

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 4

**INTRODUCTION**

ZonePerfect Nutrition Company moves to dismiss Plaintiffs' complaint alleging that ZonePerfect "All Natural Nutrition Bars" are deceptively advertised. This action is one of a litany of "natural" cases pending in the California federal courts involving common ingredients widely used in food products labeled as "natural" for years. For much of the past twenty-five years, the food industry, in reliance on Federal Food & Drug Administration Policy, labeled its products "natural" with remarkably limited litigation. But in the past couple of years—and the last year, in particular— the number of cases exploded. At least forty suits have been filed on the same or near-same theory: food products labeled "natural" are misleading to consumers because certain ingredients therein are categorized as "synthetic" by United States Department of Agriculture's ("USDA") organic regulations.[1] Of course, the organic regulations do not define the term "synthetic" or state that products containing "synthetic" ingredients are not "natural" or cannot be labeled as such. Instead, the various purported class action plaintiffs have contrived definitions for the word "natural" that they contend are not met by these so-called "synthetic" ingredients. Plaintiffs here follow suit. But the specific allegations of ***this*** complaint fail to plausibly plead facts establishing that ZonePerfect bars are not "natural"—and, therefore, that the products are mislabeled. It should be dismissed.

ZonePerfect Nutrition Bars—block-shaped, obviously processed food products with squared-off corners, a plastic wrapper, and occasionally a thin chocolate coating—are "man-made," *i.e.*, manufactured. They are not plucked from trees or gathered from the ground. Although that makes them "synthetic" by the definitions in this complaint, Plaintiffs recognize that no consumer reasonably expects an obviously "synthetic" nutrition bar ***not*** to have been manufactured. They do not base their allegations on a theory that ZonePerfect bars as a whole are not "natural."

Instead, Plaintiffs allege that ZonePerfect Nutrition Bars are not "natural" and cannot be

---

[1] For example, in a span of only a few months, Plaintiff Sethavanish filed four other complaints based on the same legal theory: one against Nonni's Foods (Case No. 3:11-cv-04578-SC, Northern District of California, filed Sept. 23, 2011), another against Balance Bar Company (Case No. 4:11-cv-04547-PJH, Northern District of California, filed Sept. 13, 2011), and two against Kashi Company (Case No. 3:11-cv-01967-H-BGS, Southern District of California, filed Aug. 24, 2011; Case No. 3:11-cv-02356-H-BGS, Southern District of California, filed Oct. 12, 2011). Plaintiff Colucci is a party to the two suits filed against Kashi Company.

labeled as such by asserting that certain *ingredients*, like the bars themselves, are man-made and, thus, "synthetic."  Plaintiffs' theory then assumes that having "synthetic" ingredients is the same things as having artificial or ***not*** "natural" ingredients.  But Plaintiffs concede that "a synthetic substance … can be artificial ***or non-artificial***."  (Compl. ¶ 19.)[2]  And Plaintiffs never plead facts plausibly establishing that any ingredients in ZonePerfect bars are "artificial," and thereby meaningfully distinct from ingredients produced or found "existing in nature."  (*See id.* ¶¶ 21-30.)  Plaintiffs' own allegations thus, even if true, fail to establish that ZonePerfect bars are misleadingly labeled as "natural."  For that reason alone, all Plaintiffs' claims of deceptive advertising should be dismissed.

Even if Plaintiffs pled a plausible theory of mislabeling by ZonePerfect Company, Plaintiffs' claims are preempted by federal law.  Here, a long-standing FDA Policy defines "natural" as meaning "that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food ***that would not normally be expected to be in the food***."  (Compl. ¶ 15 (quoting 58 Fed. Reg. 2302, 2407 (Jan. 6, 2003)).)  FDA policy thus ***permits*** products labeled "natural" to contain certain "synthetic" (or even artificial) ingredients, so long as the ingredients would "normally be expected to be in the food" at issue.  And for nearly twenty-five years, food companies like ZonePerfect have relied on this preempting FDA Policy in advertising its food products as "natural."  But Plaintiffs' complaint seeks to interfere with the execution of Federal food labeling policy by imposing standards different from, and more stringent than, those required by longstanding Federal law.  Plaintiffs' claims are thus preempted as an obstacle to the enforcement of Federal law and should be dismissed.

Plaintiffs' claims should be dismissed in whole or part on several additional grounds.  ***First,*** Plaintiff Colucci ***never purchased*** any of the ZonePerfect bars at issue and therefore suffered no injury.  He lacks constitutional and statutory standing to bring any claim, and should be dismissed as an improper party.  ***Second***, Plaintiff Sethavanish only purchased one ZonePerfect product—the Chocolate Peanut Butter bar—and therefore suffered no injury with respect to the other ZonePerfect

---

[2] All emphasis added and internal quotation marks omitted unless otherwise indicated.

products listed in the complaint.  Neither Plaintiff thus has constitutional or statutory standing to complain about any other product (or ingredient) but the Chocolate Peanut Butter bar.  Allegations about other products these Plaintiffs did not purchase should be dismissed for lack of standing—as other California district courts have done in cases like this.  **Third,** Plaintiffs are not entitled to relief under the federal Magnusson-Moss Warranty Act ("MMWA").  ZonePerfect's "all natural" claims are mere product descriptions, not a time-delineated "warranty" as covered by the MMWA.  Other California districts considering similar "all natural" cases have already recognized the MMWA has no application to merely descriptive food labeling claims like these and dismissed such claims.  *See*, *e.g.*, *Larsen v. Trader Joe's Co.*, 11-CV-05188-SI, at *3-5 (N.D. Cal. 2012).  **Fourth**, Plaintiffs failed to satisfy the thirty-day notice requirement of California's Consumers Legal Remedies Act ("CLRA"), necessitating dismissal of that cause of action with prejudice.  **Fifth**, Plaintiffs failed to plead their claims, each of which sounds in fraud, with the particularity required by Rule 9(b).  **Sixth**, Plaintiffs improperly assert a claim for restitution based on quasi-contract even though such a claim cannot be sustained in California if it is duplicative of other statutory or tort claims.

Ultimately, this and other "natural" suits like it are not the result of newly-launched, specious "natural" claims.  They are targeted at respected companies and products that have correctly used "natural" claims consistently with federal and industry standards, and without confusion, for years.  As set forth below, no policy has been violated and no reasonable consumer has been deceived or harmed.  The flood of these purported class-action lawsuits should stop here and this case dismissed.

## I.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

On September 14, 2011, Plaintiffs James Colucci and Kimberley S. Sethavanish (collectively "Plaintiffs") filed a putative class-action complaint in this Court.  Plaintiffs asserted a number of state law claims against Defendant ZonePerfect Nutrition Company ("ZonePerfect") based on ZonePerfect's use of the term "all natural" on its labels.  ZonePerfect moved to dismiss the suit on February 10, 2012. In response, on March 2, 2012, Plaintiffs filed a First Amended Complaint against ZonePerfect.  On March 30, 2012, ZonePerfect renewed its motion to dismiss Plaintiffs' First Amended Complaint.  Instead of responding, however, on April 27, 2012, Plaintiffs voluntarily dismissed the lawsuit without prejudice.  On April 26, 2012, Plaintiffs filed a third iteration of the

complaint in California Superior Court.  On June 5, 2012, ZonePerfect removed the action, returning it to this Court.  This case was deemed "related" to the original filing, and this motion follows.

## II.   STATEMENT OF QUESTIONS INVOLVED

1. Does James Colucci, an individual who never purchased any ZonePerfect product, lack standing to assert the claims set forth in Plaintiffs' Complaint?

2. Do Plaintiffs lack standing to assert claims concerning varieties of ZonePerfect bars that they never purchased or consumed?

3. Have Plaintiffs failed to establish that they are entitled to relief under the Magnuson-Moss Warranty Act?

4. Are Plaintiffs' state law claims impliedly preempted by federal law?

5. Have Plaintiffs failed to plead facts sufficient to establish the necessary elements of their state law claims?

6. Do Plaintiffs fail to plead their claims of fraud with the requisite particularity?

7. Does Plaintiffs' failure to comply with notice requirement of the Consumer Legal Remedies Act necessitate dismissal with prejudice?

8. Do Plaintiffs fail to state a claim for restitution based on quasi-contract?

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal where the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 710 (N.D. Cal. 2011).

Although the court at this stage "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party," *id.* (quoting *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)), ***that deference* "*is inapplicable to legal conclusions.*"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "*[L]abels and conclusions*, and a formulaic recitation of the elements of a cause of action *will not do*."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  Thereafter, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.*  "Facial plausibility" requires that the plaintiff plead enough "factual content" to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.

The plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief,''" and should be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV.   ARGUMENT

### A.   Plaintiffs' Lack Constitutional And Statutory Standing

A party invoking federal jurisdiction, even when asserting state law claims in federal court, "must … satisfy the federal standing requirement under Article III." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009). Among other elements, Article III standing requires that a plaintiff suffer an "injury-in-fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). That injury must be "concrete" and "particularized," not "conjectural or hypothetical." *Id.* In other words, a plaintiff must "show he personally has suffered some actual or threatened injury." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). Plaintiffs do not satisfy the "injury requirement." First, Plaintiff Colucci did not purchase *any* ZonePerfect bars and therefore suffered no injury. Second, Plaintiff Sethavanish did not purchase any ZonePerfect product *other than* the Chocolate Peanut Butter product. She suffered no purported injury from any other ZonePerfect product or the ingredients and claims they use.

### 1.   *Plaintiff Colucci Lacks Constitutional And California Statutory Standing Because He Did Not Purchase Any ZonePerfect Products*

Now on his *third* complaint against ZonePerfect Company, Plaintiff Colucci still does not plead he ever purchased a single ZonePerfect bar. (*See* Compl. ¶¶ 7-8.) The only purported "harm" that Colucci alleges is that *his girlfriend* "[paid] a premium for ZonePerfect's Nutrition Bars" when she could have "purchased other less expensive alternative nutrition bars" for him. (*See, e.g.*, *id.* ¶¶ 7, 8, 69, 79.) But Colucci, himself, did not pay *any* money to obtain any ZonePerfect product. He paid nothing, let alone a "premium." Thus, Colucci has suffered no cognizable injury at all, let alone an "injury-in-fact." For this reason, Colucci has not established, and cannot, establish the minimum requirements for Article III standing to bring any of the causes of action set forth in the complaint. Plaintiff Colucci and all of his claims should be dismissed.

Colucci similarly lacks standing under the statutory provisions of his California state law claims. Under both California's Unfair Competition Law ("UCL") and its Business and Professional Code §§ 17500 *et seq.* ("FAL"), a plaintiff must have "lost money or property" to have standing. *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 849 (Cal. Ct. App. 2008) (applying the UCL); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076-77 (N.D. Cal. 2011) (applying the FAL). Under the Consumer Legal Remedies Act ("CLRA"), only a "consumer"—defined as "an individual who seeks or acquires, ***by purchase or lease***, any goods or services for personal, family, or household purposes"—can bring suit. Cal. Civ. Code §§ 1760-61 (West).

Colucci's allegation that a purchase was made by another (Sethavanish) on his behalf does not save his claims. Regardless of the cause of action, it is not sufficient for Colucci to plead that a purchase was made by another on behalf of him. *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 960 (Cal. Ct. App. 2005) (finding that a divorced woman could not seek relief under the CLRA for claims regarding her engagement ring because it was her ex-husband who actually made the purchase). Colucci must have made the purchases himself and been a party to the transaction. *See id.* As above, because Colucci did not purchase any ZonePerfect bars, he cannot claim that he lost either money or property, as required by the UCL and FAL. He is not a "consumer" as defined by the CLRA. He lacks statutory standing and these state law claims should be dismissed.

### 2. Plaintiffs Lack Standing To Assert Claims For ZonePerfect Products That They Did Not Buy

Now on their third complaint, with an obligation to plead with specificity pursuant to Rule 9(b), *see infra* Sec(IV)(E), and after ZonePerfect specifically raised this infirmity in its original motions to dismiss, Ms. Sethavanish still pleads that she purchased only *one* ZonePerfect product from the brand's broad array of products: the Chocolate Peanut Butter bar. Specifically, Plaintiffs allege that "[f]rom approximately September 2009 through April, 2010," and then from "December, 2010 until August of 2011, Ms. Sethavanish purchased multi-bar packs of ZonePerfect's [Chocolate] Peanut Butter flavor ZonePerfect nutrition bars for Mr. Colucci once every 4 to 6 weeks." (Compl. ¶ 8.) Despite that, Plaintiffs purport to assert claims concerning every different nutrition bar product

1    sold under the ZonePerfect **brand**—even those products that Sethavanish never bought.  That is

2    impermissible.  Plaintiffs lack standing to bring claims directed to products they did not purchase.

3           Where plaintiffs did not actually purchase **all** the products they attempt to sue about, courts

4    regularly hold that such plaintiffs lack standing to pursue claims against the product *brand*, even if

5    they purchased some particular product with the same alleged defect.  *Mlejnecky v. Olympus*

6    *Imaging Am. Inc*., 2011 WL 1497096, at *4 (E.D. Cal. 2011) (finding that plaintiff  could only assert

7    false advertising claims against the ***particular camera model*** she ***actually bought***, and dismissing

8    plaintiff's claims directed to a related model that plaintiff never purchased, even though it allegedly

9    including the same purported defect); *Johns v. Bayer Corp*., 2010 WL 476688, at *5 (S.D. Cal.

10   2010) ("[Plaintiff] cannot expand the scope of his claims to include a product he did not purchase or

11   advertisements relating to a product that he did not rely upon.").  And this ***includes*** the California

12   courts that have been considering overly broad "all natural" lawsuits like this one.  *See*, *e.g., Larsen*,

13   11-CV-05188-SI at *6-7 (finding the plaintiffs could only assert a claim based on the "all natural"

14   food products that they actually bought); *Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818, at

15   *5 n.5 (C.D. Cal. 2012) (finding that Plaintiff lacked standing in an "all natural" false advertising

16   suit to assert claims for flavors of the product that he did not buy).

17          This prohibition against suing over products a plaintiff didn't actually buy is true even in

18   cases asserting class actions.  Notably, each of the case cited above ***were*** putative class actions.

19   Thus, while plaintiffs sometimes argue that courts should defer ruling on this issue until the class

20   certification stage, this runs contrary to established principles of standing.  *Lewis v. Casey*, 518 U.S.

21   343, 357 (1996) ("[E]ven named plaintiffs who represent a class must allege and show that they

22   personally have been injured, not that injury has been suffered by other, unidentified members of the

23   class.").  A growing body of case law recognizes this, and has rejected these attempts to burden

24   defendants—and the courts, for that matter—with complaints regarding products where no named

25   plaintiff was harmed nor has standing to accuse that product.  *See*, *e.g.*, *Johns*, 2010 WL 476688, at

26   *5; *Hairston*, 2012 WL 1893818, at *5 n.5.  Indeed, Judge Ilston recently rebuffed Plaintiff Colucci

27   and Sethavanish's same attorneys in their efforts to maintain a similar 'brand wide' "natural" lawsuit

28   because the plaintiffs in that case similarly hadn't purchased all the products they were purporting to

sue about.  *Larsen*, 11-CV-05188-SI at *6-7.

This outcome makes particular sense in this case.  Plaintiffs' complaint pleads and reflects that different ZonePerfect bars are distinct products, with different flavors, ingredients, and nutritional content.  (*See* Compl. ¶ 42 (listing varieties of ZonePerfect bars and their different mix of ingredients).)  Each ZonePerfect product therefore presents a unique inquiry, distinct from that presented by the Chocolate Peanut Butter product Ms. Sethavanish actually purchased.  Absent purchases (and thereby "actual or threatened injury") of these other nutrition bar products, neither Colucci nor Sethavanish have standing—constitutional or statutory—to pursue claims based on the labeling of these other products.  *Valley Forge*, 454 U.S. at 472.  This Court should thus dismiss Plaintiffs' claims as they pertain to all ZonePerfect products other than the Chocolate Peanut Butter products that Ms. Sethavanish actually purchased, and in doing so, strike paragraphs 25, 27, 28, 42(a)-(e) and (g)-(r), and the relevant portions of paragraphs 55(c), 72, and 73, each pertaining to non-Chocolate Peanut Butter ZonePerfect products and ingredients.  (*See* Compl. ¶ 42(f) (listing certain ingredients of ZonePerfect Chocolate Peanut Butter Bar.)

### B.   Plaintiffs' Claims Of Deceptive Advertising Of Product Components Are Not Actionable Under The Federal Magnuson-Moss Warranty Act

Plaintiffs' First Cause of Action alleges a violation of the federal Magnuson-Moss Warranty Act ("MMWA").  They claim that the "All Natural" descriptor on the packaging of the ZonePerfect Chocolate Peanut Butter product purchased is a "written warranty" under the MMWA.  This is wrong as a matter of law, and Plaintiffs' MMWA claim should be dismissed with prejudice.

***First***, the MMWA narrowly defines a "written warranty" actionable under the statute as a statement that "affirms or promises that [the] material or workmanship [of a consumer product] is defect free or will meet a specified level of performance ***over a specified period of time***."  15 U.S.C. § 2301(6).  The "over a specified period of time" language applies to statements that a product is "defect free" ***or*** "will meet a specified level of performance," and so the existence of such temporal language is a prerequisite to establishing a "written warranty."  The FTC has confirmed this logical construction of the statute in the implementing regulations, stating, "[a] product information disclosure ***without a specified time period*** to which the disclosure relates is … not a written

1  warranty."  16 C.F.R. § 700.3(a).  In short, without affirming or promising a specific time period

2  with statements, mere representations as to the contents or components of a product are not "written

3  warranties" that are prohibited and actionable pursuant to the MMWA.  *See Skelton v. Gen. Motors*

4  *Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981).

5          In the wake of the Ninth Circuit's recent decision in *Mazza v. America Honda Motor*

6  *Company*,[3] putative class plaintiffs like Colucci and Sethavanish are glomming onto the MMWA,

7  desperately trying to gin up a (previously nonexistent) federal cause of action for consumer

8  advertising claims so that they can maintain putative nationwide class exposure for shakedown

9  value.  But here, Plaintiffs do not plead, nor can they, that ZonePerfect packaging makes ***any***

10  statement that specifies a time period to which Plaintiffs' purported "warranty" applies.  (*See* Compl.

11  ¶¶ 60-70.)  Thus, the "all natural" claim—*as a matter of law*—is not a "written warranty."  This

12  Court, like every other district court in California that has seen these novel allegations in the context

13  of supposedly misleading "all natural" food labeling post-*Mazza*, should recognize that mere product

14  descriptions are not "written warranties," and are not actionable under the MMWA.  *See, e.g.*,

15  *Larsen v. Trader Joe's Co.*, 11-CV-05188-SI, at *3-5 (finding that an "all natural" label did not

16  constitute a "written warranty" under the MMWA); *Littlehale v. Hain Celestial Group, Inc.*, 11-CV-

17  06342-PJH, at *1-2 (N.D. Cal. 2012) ("[T]he court finds that the statements ["Pure Natural" and

18  "All Natural"] are mere production descriptions and do not fall within the Magnuson Moss Warranty

19  Act's definition of "warranty."); *Hairston*, 2012 WL 1893818, at *5-6 (finding that the "all natural"

20  label on a drink product was not written warranty under the MMWA).[4]  The "all natural" labeling at

---

[3]  The Ninth Circuit's decision in *Mazza*, which found that California law cannot be applied universally to a nationwide class in a consumer protection action, effectively bars nationwide class actions under California's state consumer protection statutes—the UCL, FAL, and CLRA.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012).

[4]  *Pappas v. Naked Juice Co. of Glendora, Inc.*, 2012 WL 1925598, at *2 (C.D. Cal. 2012) (finding that defendant's "all natural" label was not a written warranty for the purposes of the MMWA); *Astiana v. Dreyer's Grands Ice Cream, Inc.*, 2012 WL 2990766, at *3 (N.D. Cal. 2012) (dismissing plaintiffs' allegation that defendant's "natural" label constituted a written warranty under the MMWA); *Thurston v. Bear Naked, Inc.*, 11-CV-02890-H-BGS at *11-12 (S.D. Cal. 2012) (finding that the statements "100% Natural" and "100% Pure and Natural" were "product information disclosures, not written warranties under 15 U.S.C. § 2301(6)."); *Skelton* 660 F.2d at 316 n.7 ("[I]t is quite plausible that the Act's draftsmen defined 'written warranty' in § 101(6) so as to exclude general descriptions of consumer products ***or their components*** from the reach of the Act."); *see also In re Sears, Roebuck & Co.*, 2006 WL 1443737, at *4 (N.D. Ill. 2006) (finding that "Made in

issue here, like the labeling in *Hairston* and *Pappas*, is clearly a product description.  Accordingly, Plaintiffs may not maintain an action under the MMWA.

     **Second**, the "all natural" label is not a "promise" that the bar is "defect free."  *See*, *e.g.*, *Hairston*, 2012 WL 1893818 at *6.  Plaintiffs' mere conclusory allegation that the phrase "all natural" is a written warranty, or that it constitutes a statement that the bars are "defect free," is not entitled to any deference.  *Iqbal*, 556 U.S. 678.  District courts can determine, as a matter of law, whether a statement plausibly constitutes a written warranty a product is "defect free" under the Act.  *See*, *e.g.*, *Hairston*, 2012 WL 1893818 at *5-6 (finding, on a motion to dismiss and as a matter of law, that an "all natural" label was not a written warranty); *Pappas*, 2012 WL 1925598, at *2 (same).  Critically, Plaintiffs plead no facts plausibly establishing that being "natural," "artificial" or "synthetic" is a "defect," as contemplated by the MMWA.  For example, Judge Ilston recognized "a defect primarily indicates an omission or an aberration."  *Larsen*, *supra*, at *6.  The "all natural" claims make no warranties of that kind.  *Id.*

     **Third**, Plaintiffs' allegations fail to meet other minimum requirements necessary to bring a claim under the MMWA.[5]  Plaintiffs have not pled any facts in support of these necessary thresholds.  Here, Plaintiff Sethavanish purchased products individually sold at minimal cost, and her collective purchases of ZonePerfect bars did not amount to $50,000.  Moreover, there are just two representatives purporting to bring this putative class action—nowhere near the minimum number of 100.  15 U.S.C. § 2310(d)(3)(C).

     **Fourth**, the MMWA does not apply to "any written warranty the making or content of which is otherwise governed by Federal law."  *Id.*§ 2311(d).  Yet the "all natural" labeling at the core of Plaintiffs' complaint is governed by Federal law. *See infra*, Sec. IV.C; (*see also* Compl. ¶ 6).  Thus, Plaintiffs' MMWA claim should be dismissed.

---

USA" was a product description and not a written warranty under the MMWA)

[5] A claim under the MMWA is not cognizable: "(A) if the amount in controversy of any individual claim is less than the sum or value of $25; (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; *or* (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred."  15 U.S.C. § 2310(d)(3).

**C.    Plaintiffs' Claims Are Impliedly Preempted As An Obstacle To The Effective Implementation Of The FDA's Existing Regulatory Scheme**

After dismissing Plaintiffs' sole federal claim, this Court should likewise dismiss the balance of Plaintiffs' complaint (asserting various state law claims) as preempted by federal law.  For twenty-five years the FDA has maintained a federal policy defining the permissible contours of "natural" food product labeling.  Indeed, the FDA's "natural" policy is its "formal policy" on the issue.  21 C.F.R. § 10.85.  And the FDA has regularly enforced and maintained this policy as adequate and appropriate for guiding "natural" food labeling while repeatedly rebuffing calls for modification of this policy or the creation of other regulations or requirements.  *See*, *e.g.*, 58 Fed. Reg. 2302, 2407.  The FDA's longstanding "natural" policy thus merits the same deference that the Ninth Circuit recently held should be afforded to other non-binding, informal FDA policies.  Plaintiffs' complaint stands as a state law obstacle to federal law and policy, and so should be dismissed as preempted.

Implied obstacle preemption occurs when a state's law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."   *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).  It is frequently applied in situations where, as here, the federal government has created a broad regulatory program such as the FDA's extensive food labeling regulations.  *See*, *e.g.*, *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001); *Stengel v. Medtronic Inc.*, 2012 WL 1255040, at *3-4 (9th Cir. 2012); *Chae v. SLM Corp.*, 593 F.3d 936, 946-47 (9th Cir. 2010).  Where state laws hinder the effective implementation of federal law or a federal program, those state laws are impliedly preempted.  *See Buckman*, 531 U.S. at 348.

The Ninth Circuit has recognized that federal law, for the purposes of implied preemption, is not limited to Congressionally-enacted statutes, but can include federal regulations and even ***informal*** agency policies.  *See Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 840 (9th Cir. 2011).  In *Degelmann*, for example, the Ninth Circuit held that an informal, unenforceable policy (which the FDA described as a "guidance document" and an "addendum") preempts state laws that are not identical.  *Id.*  The Ninth Circuit explained that the guidance policy preempted state law despite the absence of rulemaking or even a binding effect on the FDA or the public, because

"the FDA promulgated specific requirements" that addressed "the labeling at issue in [the] law suit." *Id.* at 842.[6]

Plaintiffs' allegations (and the state labeling standards they would impliedly create) regarding the use of the word "natural" in food labeling are inconsistent with this longstanding FDA policy. This merits implied obstacle preemption. Contrary to Plaintiffs' "dictionary" definitions of "natural," the FDA policy defines "natural" as meaning that "[1] nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food [2] *that would not normally be expected to be in the food*." 58 Fed. Reg. 2302, 2407. Thus, contrary to the theory of Plaintiffs' complaint, it is *not* an FDA requirement that food products contain nothing "artificial" or "synthetic" to be labeled as "natural." Rather, FDA policy recognizes the realities of commercial food production. In modern processes, certain ingredients are appropriate for the production of safe, hygienic, and healthy "natural" packaged food products— even if those ingredients might be considered "synthetic"—so long as nothing included "*would not normally be expected to be in the food*." *Id.*

Instead of pleading facts plausibly establishing that ZonePerfect bars do not satisfy *both* of the elements of the FDA Policy defining "natural," Plaintiffs attempt to read the "not normally be expected to be in the food" element *out* of the federal policy, and argue that a product runs afoul of the FDA policy merely if it has "synthetic" or "artificial" ingredients. (*See*, *e.g.*, Compl. ¶ 1.) This is a clear departure from the FDA Policy's prescriptions and serves only to confuse food product labeling and create litigation (as here).[7]

---

[6] While the Third Circuit once concluded that this same policy was too informal to merit preemptive effect, *see Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 340-41 (3d Cir. 2009), this is inconsistent with the Ninth Circuit's more recent decision in *Degelmann*, which affords informal agency policies in complex FDA regulatory schemes preemptive effect. There is also an extensive regulatory history relating to the promulgation and maintenance of this policy. *See*, *e.g.*, 54 Fed. Reg. 32,610 (Aug. 8, 1989); 58 Fed. Reg. 2302 (Jan. 6, 1993); FDA letter to the Sugar Association, dated August 22, 2006, available at http://www.fda.gov/ohrms/dockets/dockets/06p0094/06p-0094-let0001-vol2.pdf.

[7] This is additionally significant because the Plaintiffs have designated the FDA Policy as the express boundary of their claims. (Compl. ¶ 6). Indeed, in an apparent attempt to avoid federal preemption, Plaintiffs' assert that they "expressly disclaim any attempt to hold ZonePerfect to a higher standard of conduct than what is required under federal law." *Id.* And Plaintiffs point to 21 U.S.C § 343(a)(1) as the relevant federal provision. (*Id.*) Section 343(a)(1) prohibits misleadingly labeled food, but doesn't include any language about "natural" labeling. Instead, the relevant federal rule regarding "natural" food labeling is the FDA "natural" policy. Therefore, even if this Court

The number of cases suddenly alleging deceptive "natural" product claims, using theories inconsistent with the FDA "natural" policy, after nearly twenty-five years of that policy's existence,[8] is a dramatic indicator of the disruption that this dive into FDA-administered waters has produced. For example, more than twenty-five companies, including the following, have been hit with a lawsuit like this in the past two years alone:

| Case Caption | Case Number / Court | Date Filed | Products | Accused Ingredients |
|---|---|---|---|---|
| Sethavanish v. Balance Bar Co. | 4:11-cv-4547 N.D. Cal. | 9/13/2011 | Balance Bar Energy Bar Products | Ascorbic Acid, Alkalized cocoa, Glycerine, Disodium Phosphate and Xanthan Gum |
| Astiana v. Dreyer's Grand Ice Cream, Inc. | 3:11-cv-02910 N.D. Cal. | 6/14/2011 | Dreyer's Ice Cream Products | Alkalized Cocoa (processed with Potassium Carbonate) |
| Bates v. Kashi Co., Kellogg Co., et al. | 3:11-cv-1967 S.D. Cal. | 8/24/2011 | Cereal, Shakes, Granola Bars, Cookies, Snack Bars, Waffles, Pizza, and Crackers | Calcium Carbonate, Calcium Pantothenate, Calcium Phosphate, Disodium Phosphate, Glycerin, Lactic Acid, Maltodextrin, Pectin, Potassium Bicarbonate, Potassium Carbonate, Potassium Chloride, Potassium Iodide, Sodium Acid Pyrophosphate, Sodium Citrate, Sodium, Selenite and others |
| Chatham v. Kashi Co., Kellogg Co. | 3:11-cv-2285 S.D. Cal. | 10/3/2011 | Cereal, Shakes, Granola Bars, Cookies, Snack Bars, Waffles, Pizza, and Crackers | Soy Protein Isolate, Textured Soy Protein, Soy Grits, Soy Protein Concentrate, Soy Flour, Toasted Soy Grits, Ascorbic Acid, and Soy Lecithin. |
| Sethavanish v. Kashi Co. | 3:11-cv-2356 S.D. Cal. | 9/7/2011 | GoLean Protein and Fiber bars | Ascorbic Acid, Disodium Phosphate, Glycerin, Monocalcium Phosphate, Alkalized Cocoa, Sodium Acid Pyrophosphate, Sodium Citrate, and Xantham Gum. |
| Bonar v. Beam Global Spirits & Wine, Inc. | 3:11-cv-2058 S.D. Cal. | 9/6/2011 | Margarita Bottled Drink Products | Sodium Benzoate |

construed Plaintiffs' complaint as **merely** intending to be "consistent with" federal law and the FDA policy, Plaintiffs fail to plead facts establishing that the so-called "synthetic" ingredients in the ZonePerfect product purchased would "not normally be expected to be in the food."

[8] *See* 58 Fed. Reg. 2302, 2407, 2409 (Jan. 6, 1993) (referencing 1988 letter from Raymond E. Newberry, Acting Director of the Division of Regulatory Guidance).

| Case Caption | Case Number / Court | Date Filed | Products | Accused Ingredients |
|---|---|---|---|---|
| Astiana v. Ben & Jerry's Homemade, Inc. | 10-cv-4387 N.D. Cal. | 9/29/2010 | Ben & Jerry's Ice Cream Products | Alkalized Cocoa (processed with Potassium Carbonate) |
| Thurston v. Conopco, Inc. [Unilever] d/b/a Breyer's | 3:10-cv-4937 N.D. Cal. | 11/1/2010 | Breyer's Ice Cream Products | Alkalized cocoa (processed with Potassium Carbonate) |
| Thurston v. Bear Naked Inc. | 3:11-cv-04678 N.D. Cal. | 9/21/2011 | Bear Naked Granola and Trail Mix Products | Alkalized Cocoa ( processed with Potassium Carbonate), Glycerin, and Lecithin |
| Larsen v. Nonni Foods, LLC | 4:11-cv-4758 N.D. Cal. | 9/23/2011 | Nonni's Biscotti Products | Alkalized Cocoa, Glycerin, Monocalcium Phosphate, Sodium Acid Pyrophosphate, Monoglycerides, and Diglycerides |
| Larsen v. Trader Joe's Company | 3:11-cv-5188 N.D. Cal. | 10/24/2011 | Trader Joe's Brand Labeled Food Products | Ascorbic Acid, Potassium Carbonate, Sodium Acid Pyrophosphate, Sodium Citrate, Xanthan Gum, Vegetable Monoglyceride, and Vegetable Diglyceride |
| Larsen v. King Arthur Flour Company, Inc. | 3:11-cv-05495 N.D. Cal. | 11/14/2011 | King Arthur's Flour Mixes | Ascorbic Acid, Disodium Phosphate, Monocalcium Phosphate, Potassium Carbonate, and Sodium Acid Pyrophosphate. |

Because Plaintiffs' contrived theory interposes state law to impliedly produce standards for the use of the word "natural" that would interfere with more than two decades of FDA Policy, there can be no dispute the Plaintiffs' definitions are an obstacle to Federal law.  These claims are impliedly preempted and should be dismissed.  *Degelman*, 659 F.3d at 840.

> **D.      Even If Plaintiffs' State Law Claims Are Not Preempted, Plaintiffs Fail To Plausibly Plead Claims Based On ZonePerfect's "Natural" Labeling**

Irrespective of whether federal law and FDA Policy impliedly preempts Plaintiffs' claims for relief, Plaintiffs fail to plead facts plausibly establishing an entitlement to relief under any of the California state law claims alleged.  Specifically, Plaintiffs fail to plausibly plead that ZonePerfect bars are deceptively labeled as natural, nor do they plead facts establishing the labeling is materially likely to cause harm to a reasonable consumer.  Whatever the definition of "natural" to be applied by this Court, Plaintiffs' state law claims should all be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

1.   ***Whatever Definition Of "Natural" Is Applied, Plaintiffs Fail To Plead Facts Plausibly Establishing That ZonePerfect's Ingredients Are Not "Natural"***

The central premise of Plaintiffs' complaint is that ZonePerfect's "all natural" statement is deceptive because certain ingredients contained in certain ZonePerfect products are referred to as "synthetics" under certain Federal regulations.  (Compl. ¶¶ 1, 21-31.)  Plaintiffs also claim those ingredients meet a Webster's Dictionary meaning of the word "synthetic."  (*Id.* ¶ 19.)  But regardless of whether FDA Policy governs the meaning of the word natural, or if the Court adopts Plaintiffs' Webster's dictionary meaning of the words "natural" and "synthetics," Plaintiffs' complaint fails because they do not plead facts sufficient to establish that any of the ingredients discussed in Plaintiffs' complaint are actually ***not*** "natural."

By Plaintiffs' own admissions, "natural" means "existing in nature."  (*Id.* at ¶ 13.)  Therefore, pleading that ingredients are so-called "synthetics" is ***insufficient*** to establish that those ingredients are not "natural"—*i.e.*, are unlike those that can be found "existing in nature."  (*Id.* ¶¶ 13, 19.)  As previously noted, the FDA policy ***permits*** "synthetic" substances in "natural" foods where the ingredient is normally expected in the food.  58 Fed. Reg. 2302, 2407.  Indeed, even Plaintiffs' own Webster's Dictionary meanings concede that "a synthetic substance … can be artificial ***or non-artificial***."  (Compl. ¶ 19.)  Plaintiffs further note that "artificial" is understood to mean "something ***not found in nature***," (*id.*), whereas "natural" includes something "existing in nature; not artificial."  Plaintiffs' own complaint further concedes that a "synthetic" substance may "mimic[] nature[.]"  (*Id.* ¶ 13.)  In short, the facts and definitions pled in Plaintiffs' own Complaint ***concede*** a "synthetic" or "man made" substance that "mimics nature" ***can*** meet Plaintiffs' own Webster's Dictionary definition of "natural."   So long as a so-called "synthetic" substance is chemically like those "existing in nature; not artificial," (*id.* ¶ 13), it can be labeled as "natural."  Thus, pleading that ZonePerfect ingredients are "synthetics" is not the same things as establishing they are not "natural."

Nowhere, however, do Plaintiffs plead facts establishing that ***any*** ZonePerfect ingredients are not just "synthetic," but affirmatively "artificial" substances chemically distinct from those "existing in nature"—like artificial sweeteners such as sucralose (Splenda) or saccharine.  To the contrary, Plaintiffs' ***own*** complaint concedes that ZonePerfect ingredients at issue are common and like those

that exist in nature.  (*See* Compl. ¶¶ 21-30.)  For example, Plaintiffs concede that ascorbic acid is nothing more than a form of vitamin C—an essential nutrient which is "used in foods as an antioxidant and as a preservative."  (*Id.* ¶ 21.)  Plaintiffs admit that Calcium Pantothenate is "one of the vitamins in the vitamin B complex."  (*Id.* ¶ 22.)  Pyridoxine Hydrochloride is used to provide "vitamin B6 supplements."  (*Id.* ¶ 26.)  Other allegations in Plaintiffs' complaint concede that other ingredients at issue are common and normally expected to be in foods such as these—fully consistent with FDA Policy and their own definition of "natural."  Plaintiffs plead disodium phosphate "is ***used in foods for a variety of purposes***, including enhancing the texture of food, as an emulsifier, and as a leavening agent" (*id.* ¶ 27); glycerine "is ***used in some food products*** as a sweetener, as a preservative, or as a thickening agent" (*id.* ¶ 24); sorbitan monostearate is "***often used***" in a variety of food products (*id.* ¶ 28); and xanthan gum "is ***typically used*** as a thickening or stabilizing agent in beverages, and as an emulsifier in salad dressings" (*id.* ¶ 30)  Thus, regardless of whether the FDA Policy of Webster's Dictionary controls, Plaintiffs fail to plead facts establishing that ZonePerfect's ingredients are not "natural."

Because Plaintiffs make clear that the inclusion of allegedly "synthetic" ingredients in ZonePerfect's "all natural" bars is the "sole factual basis of each state law cause of action brought by this Complaint," (Compl. ¶ 6), there is no basis for concluding that the ZonePerfect bars are mislabeled.  Each of Plaintiffs' state law claims therefore fail.  Specifically:

- **Second Cause of Action ("Fraud")**. In California, fraud requires a "misrepresentation." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).  Yet because Plaintiffs do not allege facts sufficient to show that the allegedly "synthetic" ingredients are not natural, they have failed to plausibly plead common-law fraud.

- **Third Cause of Action ("UCL")**. Establishing an "unlawful" act or practice under the UCL requires a violation of state or federal law.  *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007).  But Plaintiffs have failed to show that ZonePerfect's nutrition bars are not natural or violate the FDA Policy on the meaning of natural.  As such, there is no violation of California's Sherman Law—or any other "misbranding" law—and no grounds for an "unlawful" business practice claim.

- **Fourth Cause of Action ("UCL")**.  A business practice is "unfair" under the UCL if the "gravity of the alleged harm" outweighs "the utility of the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 973 (N.D. Cal. 2010).  Because Plaintiffs fail to allege that ZonePerfect's claims were material because they do not plead facts establishing the ZonePerfect ingredients are unhealthy, or dispute that those ingredients are chemically-identical to the non-synthetic versions they supposedly were expecting, Plaintiffs have not alleged facts sufficient to establish that the "natural" label was "unfair" to them under the UCL.

- **Fifth Cause of Action ("UCL")**.  A business practice is "fraudulent" if reasonable members of the public "are likely to be deceived."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010).  Plaintiffs assert that ZonePerfect's "all-natural" label causes consumers to "believe[] the products are something they are not."  (Compl. ¶ 96.)  But Plaintiffs have failed to offer sufficient factual allegations establishing that the bars are not "natural."  As a result, Plaintiffs have failed to establish that consumers were or could be deceived, and their Fourth Claim for relief under the "fraudulent" business practice prong of the UCL warrants dismissal.

- **Sixth Cause of Action ("FAL")**.  The FAL prohibits "untrue or misleading" advertising.  Cal. Bus. & Prof. Code § 17500.  Plaintiffs allege that ZonePerfect's "labels are misleading and likely to deceive" because they advertise the bars as "all-natural." (Compl. ¶ 100.)  But Plaintiffs do not show that the bars are not "natural," and so there is no basis for concluding that advertising the bars as "all-natural" is untrue or misleading.  Accordingly, the complaint fails to state a plausible claim under the FAL.

- **Seventh Cause of Action ("CLRA")**.  The CLRA prohibits the use of "unfair methods of competition" and "unfair or deceptive acts or practices" in a consumer transaction.  Cal. Civ. Code § 1770(a).  Plaintiffs allege that, due to the ZonePerfect bars' "all-natural" labels, ZonePerfect (1) represented that its goods "had characteristics which they do not have"; (2) represented that its goods "were of a particular standard, quality, or grade, of which they were not"; and (3) "advertised its goods … with the intent not to sell them as advertised."  (Compl. ¶ 110.)  But Plaintiffs have failed to show that ZonePerfect's bars are not "natural"; there is thus no basis for concluding that ZonePerfect's labels have misrepresented that characteristics, standard, quality, or grade of its products.  And so Plaintiffs' CLRA allegation do not state a claim for relief.

## 2. *Plaintiffs Do Not Plausibly Plead That A Reasonable Consumer Would Expect A "Natural" Product To Not Contain Any So-Called "Synthetic" Ingredients*

In addition to Plaintiffs' inability to plausibly plead that ZonePerfect's bars and ingredients are not "natural" as a factual matter, their state law claims all fail because Plaintiffs fail to plead that a reasonable consumer is "likely to be deceived" in any material manner as to the nature or quality of the ZonePerfect bars by ZonePerfect's "all natural" labeling.  Specifically, Plaintiffs fail to plead facts plausibly establishing a reasonable consumer reading the list of ZonePerfect ingredients would be materially deceived by the "All Natural" claim on the label.  Particularly given the acceptability of these ingredients for "organic" products, no consumer would reasonably believe that such obviously man-made "synthetic" bars would contain no so-called "synthetic" ingredients—as opposed to merely no "artificial" ingredients like sucralose (Splenda), saccharine, or other artificial chemicals not found in nature.

California's UCL, FAL, and CLRA statutes prohibit advertising or labeling practices that "are likely to … deceive[]" a "reasonable consumer."  *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008).  But ZonePerfect bars are squared-off, commercially-packaged food products

that are **obviously** "man-made" or "synthetic" (as Plaintiffs' complaint defines that term, Compl. ¶ 13). No facts pled plausibly show that a reasonable consumer would believe that nutrition bars and their ingredients come into being without the aid of any human processing.

**First**, the very U.S.D.A. regulations that Plaintiffs primarily rely upon to categorize the ingredients at issue as "synthetic" refute any notion that a reasonable consumer would be deceived by including them in a "natural" labeled product. Specifically, these U.S.D.A. regulations **permit so-called "synthetic" ingredients to be included in organic products**—notwithstanding the fact that the U.S.D.A. organic regulations refer to them as "synthetic." 7 C.F.R. § 205.605(b). Because these ingredients can be included in far more strictly-regulated organic products, logically no **reasonable** consumers would expect them to be excluded from "natural" labeled products. Notably, in determining what "synthetic" ingredients may permissibly be included in organic products, the U.S.D.A. considers a variety of factors, including whether the ingredients are safe or necessary, and "the alternatives to using the [ingredient] in terms of practice." 7 U.S.C. §§ 6518(m)(4) and (6). Thus, the very fact that so-called "synthetic" ingredients are on the acceptable-for-organics list evinces that they are entirely safe, that it is common "practice" to use them in food, *see id.*, and that consumers' expectations would be that such ingredients would normally be used in food.

**Second**, ZonePerfect bars, and other products with the same allegedly "synthetic" ingredients, are regularly sold at "natural" and organic retail stores like Whole Foods and Trader Joe's. This also shows the implausibility of any reasonable consumer being deceived. No **reasonable** consumer would be misled or deceived by ZonePerfect's characterization of these ingredients as "natural" when they are widely accepted in "natural" and "organic" labeled foods. For example, Whole Foods, which sells only "the highest quality natural and organic products," tells its customers that "[w]e carry natural and organic products because we believe that food in its purest state—unadulterated by artificial additives, sweeteners, colorings, and preservatives—is the best tasting and most nutritious food available." (Ex. 1: Whole Foods "Quality Standards" webpage.)[9] To that end, Whole Foods "evaluate[s] each and every product [they] sell," "feature[s] foods that are

---

[9] All referenced Exhibits are attached to ZonePerfect's Request for Judicial Notice.

free of artificial preservatives, colors, flavors, sweeteners, and hydrogenated fats," and "maintains an extensive list of unacceptable ingredients." (*Id.*)  If a product contains one of these prohibited ingredients, Whole Foods does not consider it "natural" and won't sell it.  Critically—and not surprisingly given the qualifications necessary to be considered acceptable by the "organics" regulations that Plaintiffs reference—***none of the ingredients catalogued in Plaintiffs' complaint are found on the "unacceptable ingredient" list of Whole Foods***, meaning they are permissibly included in Whole Foods' "natural" and "organic" food products sold in Whole Foods stores.  (*See* Ex. 2: Whole Foods "Unacceptable Ingredients" List (cataloguing unacceptable ingredients for "natural" products).)  Besides ZonePerfect bars, Whole Foods regularly sells all manner of food products containing the "synthetic" ingredients that Plaintiffs identify in their complaint.  For example, Whole Foods sells Luna's Protein Mint Chocolate Chip bar, which contains alkalized cocoa, ascorbic acid, pyridoxine hydrochloride, and glycerine.  (Ex. 3: Whole Foods product page for Luna Protein Mint Chocolate Chip bar.)  It also sells the Emergen-C O-Series, Island Fruit Breeze flavor, which contains ascorbic acid, potassium carbonate, calcium phosphate, pyridoxine hydrochloride, and calcium pantothenate.  (Ex. 4: Whole Foods product page for Emergen-C O-Series, Island Fruit Breeze.)

Likewise, Trader Joe's, another "natural" retailer, carries ZonePerfect bars, as well as other products that contain the supposedly synthetic ingredients that Plaintiffs identify.  Nevertheless, Trader Joe's states that "[a]ll [p]roducts in the Trader Joe's [l]abel [p]romise: NO artificial flavors, colors or preservatives" and "NO genetically modified ingredients."  (Ex. 5: Trader Joe's "Products & Guides" webpage).  These practices further establish that the so-called "synthetic" ingredients described in Plaintiffs' Complaint are widely-regarded as acceptable and expected in foods labeled as "natural."  As such, a reasonable consumer would not be deceived by their inclusion in "all natural" labeled products.

***Third***, even if these specific Plaintiffs allege that they, themselves, are unhappy that they received so-called "synthetic" ingredients in a bar labeled as "natural," that is insufficient to sustain their claims.  Apparently Plaintiffs Colucci and Sethavanish unreasonably expected these block-shaped, obviously processed bars wrapped in plastic to contain no ingredients but those plucked off

trees or harvested from fields.  But their unreasonable personal expectations are not the appropriate standard.  *Freeman v. Time, Inc*., 68 F.3d 285, 289 (9th Cir. 1995).  Plaintiffs must plead facts showing that "reasonable consumers" are likely to be deceived.  *Id*.  ("[T]he false or misleading advertising … must be evaluated from the vantage of a reasonable consumer."); *Williamson v. Reinalt-Thomas Corp*., 2012 WL 1438812, at *9 (N.D. Cal. 2012) ("The likely to be deceived standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled.").  They have not done so.  Here, there are no facts plausibly establishing that ***reasonable*** consumers would expect a modern, obviously-processed nutrition bar—using ingredients (fully disclosed and listed on the label) that are regularly used in *other* packaged organic and "natural" food products—to contain no "synthetic" ingredients simply because it says "natural."  *See Carrea v. Dreyer's Grand Ice Cream, Inc*., 2012 WL 1131526, at *1 (9th Cir. 2012) (upholding dismissal of UCL, FAL, and CLRA claims because it was simply too implausible to believe that reasonable consumers were misled).

### 3. *Plaintiffs Allegations Are Implausible And Insufficient Because Plaintiffs Do Not Show That They Relied To Their Detriment On ZonePerfect's "All Natural" Labels*

In addition, the UCL, FAL, CLRA, and fraud claims, require an allegation and demonstration of harm or detrimental reliance.  Specifically, ***only*** advertising or labeling practices that "induce[] the plaintiff to alter his position to his detriment" are unlawful under the UCL, the FAL, and the CLRA.  *See, e.g.*, *True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175, 1182-83 (C.D. Cal. 2007) (citing *Caro v. Procter & Gamble Co*., 18 Cal. App. 4th 644, 668 (Cal. Ct. App. 1993)).  Absent any such "harm to the plaintiffs, there [is] no violation of the UCL or the CLRA."  *Bristow v. Lycoming Engines*, 2008 WL 1902738, at *3 (E.D. Cal.  2008).  Here again, Plaintiffs fail to plausibly plead any cognizable harm from having received a nutrition-packed snack product containing ingredients—"synthetic" or otherwise—that Plaintiffs do not (and cannot) plead are in any manner chemically-distinct from (or less "healthy" than) those "existing in nature" that they claim to have wanted.

Plaintiffs assert that ZonePerfect's supposedly deceptive "all natural" labeling harmed them because that claim somehow implied that ZonePerfect bars are healthier than is actually the case.

---

1    (Compl. ¶¶ 32-35).  Plaintiffs make clear that they sought "all natural" bars in an effort "to try to eat

2    healthier foods."  (*Id*. ¶ 7.)  Indeed, their complaint repeatedly asserts that consumers purchase "all

3    natural" products for health reasons.  (*Id*. at ¶ 32-35.)  But there are no facts pled in the complaint

4    plausibly establishing that the ZonePerfect bars are any less healthy than Plaintiffs expected based

5    on the "all natural" label.  To the contrary, many of the ingredients that Plaintiffs complain about are

6    vitamins and minerals designed to fortify and enrich the nutritional content of these "nutrition

7    bars."[10]

8           Notably, Plaintiffs do not—because they cannot—even attempt to plead facts showing that

9    the so-called "synthetic" ingredients in ZonePerfect are chemically distinct from those that can be

10   found or produced in nature.  In fact, the FDA specifically considers a food ***misbranded*** if it

11   suggests that "a natural vitamin in a food is superior to an added or synthetic vitamin."  21 C.F.R.

12   § 101.9(k)(4).  Plaintiffs also are unable to plead that ZonePerfect bars contain artificial chemicals

13   like saccharine or sucralose (Splenda), that are chemically different than things "existing in nature."

14   Nor do they allege that chemically-identical, but "synthetic," versions of vitamins and nutrients are

15   any less healthy or nutritious.  In fact, Plaintiffs themselves even recognize the nutrition value of

16   ZonePerfect's "synthetic" ingredients.  (*See*, *e.g.*, Compl. ¶ 22) ("Calcium Pantothenate is more

17   stable than natural vitamin B5").  The complaint thus lacks the factual content necessary to establish

18   that the bars' packaging is likely to cause reasonable consumers to purchase and consume a product

19   that is any less "healthy" or more harmful than they were expecting.  Having received ingredients

20   that Plaintiffs do not assert are materially different than what they bargained for and reasonably

21   expected, Plaintiffs have suffered no harm.  Because they fail to plausibly allege facts establishing

22   reliance on ZonePerfect's "all natural" label to their detriment and harm, the Complaint does not

23   state a claim on which relief can be granted.

24         **E.     Plaintiffs Do Not Plead Fraud With The Requisite Particularity**

25         Compounding the problems with the ambiguities in Plaintiffs' pleadings is that these

26

27   _____
     [10] For example: "Ascorbic Acid is a form of vitamin C." (Compl. ¶ 21); "Calcium Pantothenate is
     more stable than natural vitamin B5." (*id*. ¶ 22); "Tocopherols … are a class of chemical compounds

28   with vitamin E properties." (*Id*. ¶ 29.)

allegations against ZonePerfect's supposedly deceptive "natural" labeling sound in fraud. (Compl. ¶ 6) ("This identical conduct serves as the sole factual basis of each state law cause of action brought by this complaint."). For that reason, Plaintiffs' claims must be pled with specificity under Rule 9(b). *See Kearns*, 567 F.3d at 1125 (applying Rule 9(b) to UCL and CLRA actions where the allegations sound in fraud); *Marolda v. Symantec Corp*, 672 F. Supp. 2d 992, 1005 (N.D. Cal. 2009) (requiring FAL claim to be pled with specificity). Rule 9(b) requires that, "[i]n alleging fraud …, a party must state with particularity the circumstances constituting fraud …." Fed. R. Civ. P. 9(b).

The allegations made in Plaintiffs' complaint, however, fail to satisfy Rule 9(b) because pleading fraud in California requires establishing a specific intent to defraud. *See*, *e.g.*, *Gil v. Bank of Am. Nat'l Ass'n*, 138 Cal. App. 4th 1371, 1381 (2006). But Plaintiffs here allege only that ZonePerfect's nutrition bars were mislabeled as being "all natural" because they contained allegedly synthetic ingredients. (Compl. ¶ 6.) This does not show a specific intent to defraud, and is particularly inadequate given Rule 9(b)'s elevated standard and ZonePerfect's consistent compliance with the FDA's longstanding "natural" policy. *See*, *e.g.*, *Thurston*, 11-CV-02890-H-BGS, at *16-17 (dismissing the common law fraud claim in a recent "all natural" labeling case as insufficient under Rule 9(b) because, as is the case here, the plaintiffs alleged only that the defendant's food products were mislabeled as "all natural").

In addition, while Plaintiffs allege that the underlying fraud involves the inclusion of the "All Natural" statement on the Nutrition bars' packaging, (Compl. ¶ 6), their allegations are deficient because they do not set forth how the bars "[fell] short of [their] advertised quality"—*i.e.*, how the possible presence of so-called "synthetic" ingredients renders the bars not natural and somehow materially distinct from what Plaintiffs were expecting. *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 628 (N.D. Cal. 2011); (*see also, infra,* Sec. IV.B.2). Because Plaintiffs fail to plead facts sufficient to show that the ZonePerfect bars are not natural under their proposed definitions and under the FDA policy, they have failed to "state with particularity" the elements of the alleged fraud. Fed. R. Civ. P. 9(b). Plaintiffs' "insufficiently pled averments of fraud [should thus be] disregarded," *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003), and their claims should be dismissed.

1

2

### F.   Plaintiffs' Failure To Satisfy The CLRA Notice Requirement Necessitates Dismissal With Prejudice

3      Plaintiffs' CLRA claim is also procedurally deficient.  Section 1782(a) of the CLRA requires

4   that "thirty days or more prior to the commencement of an action for damages pursuant to this title,

5   the consumer shall … notify the person alleged" to have violated the CLRA of "the particular

6   alleged violations," and "demand that the person … rectify" those violations.  Cal. Civ. Code § 1782

7   (West).  "[C]ompliance with this requirement is necessary to state a claim."  *Cattie v. Wal-Mart*

8   *Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007).  Failure to comply with the CLRA's notice

9   requirement "necessitates dismissal with prejudice."  *Id.* at 950; *Davis v. Chase Bank U.S.A., N.A.*,

10   650 F. Supp. 2d 1073, 1089 (C.D. Cal. 2009); *Stearns v. Select Comfort Retail Corp.*, 2009 WL

11   1635931, at *15 (N.D. Cal. 2009); *Janda v. T-Mobile, USA, Inc.*, 2008 WL 4847116, at *6 (N.D.

12   Cal. 2008).  Later notice and amendment cannot cure an initial failure to comply with the notice

13   requirement.  *Cattie*, 504 F. Supp. 2d at 950 ("Permitting Plaintiff to seek damages first and then

14   later, in the midst of a lawsuit, give notice and amend would destroy the notice requirement's utility,

15   and undermine the possibility of early settlement."); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d

16   1181, 1196 (S.D. Cal. 2005) ("[T]he Legislative goals would be eviscerated if consumers were

17   allowed to sue for damages without first providing the statutorily mandated period for

18   remediation."), *aff'd*, 252 F. App'x 777 (9th Cir. 2007); *see also Davis*, 650 F. Supp. 2d at 1089.

19      Plaintiffs purported to satisfy the CLRA's notice requirement when they sent a letter to

20   ZonePerfect on August 30, 2011, alleging that ZonePerfect violated § 1770(a)(5) of the CLRA

21   because its nutrition bars were labeled as "all natural" while containing the allegedly "synthetic"

22   ingredient potassium carbonate.  (Ex. 6: Letter from Janet Lindner Spielberg, August 30, 2011.)  But

23   Plaintiffs failed to wait the requisite thirty days before commencing an action for damages.  Instead,

24   on September 14, 2011, Plaintiffs filed the initial complaint in this matter, alleging violations of

25   § 1770(a)(5) of the CLRA, but also of §§ 1770(a)(7) and (9)—allegations about ingredients that

26   were not included in the initial CLRA notice letter.  (*See* Compl., D.I. 1, Case No. 11-CV-04561

27   SC.)  That initial complaint sought monetary relief in the form of "restitution," "compensatory

28   damages," "punitive damages," "attorneys' fees," and "an accounting."  (*Id.* at 21-22 ("Prayer"

1    section).)   This conduct doomed the Plaintiffs' CLRA claim for damages.   The Plaintiffs were

2    obligated to provide at least thirty days notice before filing a suit for damages.  They did not.  And

3    the Plaintiffs were obligated to detail all of the particular alleged violations of § 1770 in their CLRA

4    notice.  They did not—failing to reference violations of §§ 1770(a)(7) or (9).

5              Plaintiffs subsequently sent an additional letter, filed an amended complaint, and, after a

6    voluntary dismissal, filed this suit. Each filing contained the same core allegations as the original

7    August 30, 2011 CLRA letter, namely that ZonePerfect bars' "All Natural" labels violate

8    §§ 1770(a)(5), (7), and (9) of the CLRA because the bars contain allegedly "synthetic" ingredients.

9    (Compl. ¶ 110.)   These subsequent filings cannot remedy the Plaintiffs' original non-compliance

10   with CLRA; each was based on the same specific violations and included the same substantive

11   allegation.  These filings thus cannot alter the fact that no notice of the alleged violations was given

12   more thirty days before the plaintiffs filed their first suit for damages in September 2011.  Plaintiffs'

13   failure to provide requisite notice is a violation of § 1782(a) and precludes further consideration of

14   Plaintiffs' CLRA claim.

15         **G.      Plaintiffs Cannot State A Claim For Restitution Based On Quasi-Contract**

16             Plaintiffs' eighth cause of action purports to assert a claim for "Restitution Based On Quasi-

17   Contract."   Specifically, Plaintiffs allege that, based on the very same conduct that serves as the

18   basis for Plaintiffs' other tort claims, "ZonePerfect has been unjustly enriched at the expense of

19   Plaintiffs," and, as a result, Plaintiffs "are entitled to restitution or restitutionary disgorgement."

20   (Compl. ¶ 115-16.)   In the many other "natural" cases now pending in this district, courts have

21   inconsistently dealt with these claims at motion to dismiss—sometimes dismissing, but sometimes

22   not.  The law in California is clear here, however, that no matter what this Court thinks of the

23   adequacy of Plaintiffs' pleadings, Plaintiffs' "quasi-contract" claim should be dismissed.

24             *First*, Plaintiffs themselves assert that their claim for "restitution" by quasi-contract is based

25   on a theory of "unjust enrichment" (*id.*), which California recognizes is at the core of a claim for

26   "quasi-contract."  *See United States v. Healy Tibbitts Constr. Co*., 607 F. Supp. 540, 542 (N.D. Cal.

27   1985) ("A claim for restitution in quasi-contract is based on the well-established principle that one

28   may not be unjustly enriched by the acts of others.").  Indeed, "[u]njust enrichment is synonymous

with restitution." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010).  As set forth above, however, Plaintiffs have not plausibly pled that ZonePerfect bars are not "natural" and, thereby, "unjustly" labeled.  *See supra* Sec. IV(D)(1).  This is fatal to Plaintiffs' quasi-contract claim—an essential element of which is establishing that it is unjust for one party to retain the benefit, *see Durell*, 183 Cal. App. 4th at 1370, as, for example, in situations where the benefit was obtained through "fraud, duress, conversion, or similar conduct[.]" *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1133 (N.D. Cal. 2009).  Because Plaintiffs fail to plausibly plead that ZonePerfect products cannot be appropriately labeled as "natural" even if they do contain purportedly "synthetic" ingredients—as noted, Plaintiffs concede "synthetics" can be "not artificial" and natural (Compl. ¶ 19)—there are no plausible allegations of "fraud, duress, conversion or similar conduct" to sustain the "unjust" element of a quasi-contract claim against Zone Perfect.  *Rosal*, 671 F. Supp. 2d at 1133.

> **Second**, even if this Court holds that Plaintiffs plausibly pled claims against Zone Perfect's "natural" labeling, Plaintiffs' quasi-contract claim for "restitution" based on "unjust enrichment" ***still*** must be dismissed. "Under an unjust enrichment theory, restitution may be awarded" only when "***the plaintiff has chosen not to sue in tort***." *Rosal*, 671 F. Supp. 2d at 1133.  California law does not allow a plaintiff to "assert unjust enrichment claims that are merely duplicative of statutory or tort claims." *In re Apple and AT&T Unlimited Data Plan Litig.*, 802 F. Supp. 2d at 1077 (dismissing with prejudice plaintiff's efforts to pair an unjust enrichment claim with UCL, FAL, and CLRA claims).  Here, Plaintiffs' quasi-contract theory is based on the same conduct that serves as the basis for Plaintiffs' other statutory and tort claims.  (Compl. ¶ 6 (pleading that the "All Natural" labeling of ZonePerfect bars "serves as the sole factual basis of each state law cause of action brought by this Complaint[.]").)  Thus, ***especially*** if Plaintiffs' other claims are sustained, Plaintiffs' quasi-contract claim should be dismissed as impermissibly "duplicative" of those statutory and tort claims.

## V.     CONCLUSION

> For the reasons stated above, ZonePerfect respectfully requests that the Court dismiss the complaint in its entirety with prejudice.

1

2     DATED:  July 25, 2012                    Respectfully submitted,

3                                              /s/ *Jonathan D. Brightbill*
                                               Jonathan D. Brightbill (admitted *pro hac vice*)

4                                              Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
                                               gregg.locascio@kirkland.com
5                                              Jonathan D. Brightbill (admitted *pro hac vice*)
                                               jonathan.brightbill@kirkland.com
6                                              Dennis J. Abdelnour (admitted *pro hac vice*)
                                               dennis.abdelnour@kirkland.com
7                                              KIRKLAND & ELLIS LLP
                                               655 Fifteenth Street, N.W.
8                                              Washington, D.C. 20005
                                               Telephone: (202) 879-5000
9                                              Fax: (202) 879-5200

10                                             Elizabeth L. Deeley (SBN 230798)
                                               elizabeth.deeley@kirkland.com
11                                             KIRKLAND & ELLIS LLP
                                               555 California Street
12                                             San Francisco, California  94104
                                               Telephone: (415) 439-1400
13                                             Facsimile: (415) 439-1500

14                                             Attorneys for Defendant
                                               ZONEPERFECT NUTRITION COMPANY
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

     The undersigned hereby certify that all counsel of record who have consented to electronic service are being served with a copy of the attached **ZONEPERFECT'S NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS** via the CM/ECF system on July 25, 2012.

DATED: July 25, 2012               By: */s/ Jonathan D. Brightbill*
                                       Jonathan D. Brightbill