United States District Court
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   JAMES COLUCCI and KIMBERLY S.      ) Case No. 12-2907-SC
    SETHAVANISH, on behalf of          )
10  themselves and all others          ) ORDER RE MOTION TO DISMISS
    similarly situated,                )
11                                      )
                                        )
12              Plaintiffs,             )
                                        )
13       v.                             )
                                        )
14  ZONEPERFECT NUTRITION COMPANY, a    )
    Delaware corporation,               )
15                                      )
                Defendant.              )
16  _____ )

17

18  I.   **INTRODUCTION**

19       Plaintiffs James Colucci and Kimberly S. Sethavanish

20  (collectively, "Plaintiffs") bring this purported class action

21  against Defendant ZonePerfect Nutrition Company ("Defendant"), a

22  maker of nutritional snack bars ("nutrition bars").  The thrust of

23  Plaintiffs' Complaint is that Defendant's nutrition bars, which

24  bear on their labels the statement "All-Natural Nutrition Bars,"

25  are not all-natural and hence misleadingly labeled.  Now pending

26  before the Court is Defendant's fully-briefed motion to dismiss the

27  Complaint.  ECF Nos. 26 ("Mot."), 31 ("Opp'n"), 32 ("Reply").  The

28  motion is suitable for decision without oral argument.  Civ. L.R.

**United States District Court**
For the Northern District of California

1   7-1(b).  For the reasons set forth below, Defendant's motion to

2   dismiss is GRANTED IN PART and DENIED IN PART.

3

4   **II.   BACKGROUND**

5       **A.   Procedural History**

6       On September 14, 2011, months before Plaintiffs filed the

7   instant case, they filed a separate lawsuit against Defendant in

8   this Court, with the case number 11-cv-4561-SC.  Defendant moved

9   for dismissal on February 10, 2012.  Plaintiffs responded by filing

10  an amended complaint on March 2, 2012.  On March 30, 2012,

11  Defendant moved again for dismissal.  Plaintiffs did not oppose the

12  motion and, on April 27, 2012, filed a notice of voluntary

13  dismissal.  On May 1, 2012, the Court dismissed the case.

14      On April 26, 2012, Plaintiffs had filed a new case against

15  Defendant, this time in the California Superior Court for Sonoma

16  County.  ECF No. 1 (notice of removal ("NOR") Ex. A ("Compl.").

17  The Complaint sets forth eight causes of action: (1) violation of a

18  written warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §

19  2301 et seq. ("MMWA"); (2) common-law fraud; (3-5) claims for

20  unlawful, unfair, and fraudulent business practices under

21  California's Unfair Competition Law, Cal. Bus. & Prof. Code §§

22  17200 et seq. ("UCL")[1]; (6) false advertising in violation of

23  California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500

24

25  [1] The UCL "establishes three varieties of unfair competition --
    acts or practices which are unlawful, or unfair, or fraudulent."
26  Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554
    (Cal. Ct. App. 2007).  Each "prong" of the UCL thus represents an
27  analytically distinct theory of recovery and imposes different
    standards.  See Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th
28  230, 252-53 (2011) (distinguishing prongs, explaining standards).
    Here, Plaintiffs assert a separate UCL claim under each prong.

et seq. ("FAL"); (7) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"); and, in the alternative, (8) restitution based on quasi-contract.

Defendant received a copy of the state-court complaint no earlier than May 7, 2012 and removed to this Court on June 5, 2012. NOR ¶ 2.[2]  On June 28, 2012, the parties stipulated that the instant case is related to the earlier, voluntarily dismissed case. ECF No. 19.  On July 10, 2012, the Court deemed the cases related and the case was transferred to the undersigned.  ECF No. 23.  On July 25, 2012, Defendant filed the instant motion to dismiss.

**B.   The Nutrition Bars' Labels and Ingredients**

In the procedural posture of this case, the Court takes its account of the facts from the allegations of Plaintiffs' Complaint.

Defendant manufactures, distributes, and sells nutrition bars through walk-in and online retailers.  Compl. ¶ 9.  There are twenty varieties of Defendant's nutrition bars, and they are sold and distributed nationwide in grocery stores, health food stores, and other venues.  Id. ¶ 10.

Plaintiffs include in their Complaint twenty color photographs that purport to represent each of the twenty ZonePerfect-brand nutrition bars.  Id. ¶¶ 42(a)-(t).  Each photograph shows a brightly-colored, rectangular plastic wrapper emblazoned on the left with (among other things) the ZonePerfect logo and the legend

---

[2] Defendant removed on the basis of this Court's federal-question jurisdiction over Plaintiffs' MMWA claim and its supplemental jurisdiction over Plaintiffs' other seven, state-law claims.  NOR ¶¶ 6-8 (citing 28 U.S.C. §§ 1331, 1367(a), 1441(a) & 1446).  Having reviewed the NOR, the Court determines that Defendant has satisfied the jurisdictional and procedural requisites of §§ 1441(a) and 1446, respectively.  The Court also concludes, as detailed at note 6 infra, that Defendant could have removed on diversity grounds.

United States District Court
For the Northern District of California

1   "All-Natural Nutrition Bars," and, on the right, a line of text

2   announcing the bar's flavor (e.g., "Chocolate Mint") situated

3   beneath an image of an unpackaged rectangular food bar flanked by

4   food items representing its flavor (e.g., a sprig of mint leaves

5   and a bowl of chocolate pudding).

6       Plaintiffs allege that all of Defendant's nutrition bars

7   contain at least one of the following ten allegedly non-natural

8   ingredients: ascorbic acid; calcium pantothenate; calcium

9   phosphates; glycerine; potassium carbonate a/k/a "Cocoa [Processed

10  with Alkali]" or "Cocoa Powder [Processed with Alkali]"; pyridoxine

11  hydrochloride; disodium phosphate; sorbitan monostearate;

12  tocopherols; and xanthan gum.  Id. ¶¶ 21-30.  Plaintiffs allege

13  that, although the labels on nutrition bars' packages "did disclose

14  that [the nutrition bars] contained many of [these] synthetic and

15  artificial substances, the labels did not disclose that these

16  ingredients were synthetic or artificial, and in some cases did not

17  identify that these components existed in ZonePerfect's Nutrition

18  Bars at all (e.g., Potassium Carbonate)."  Id. ¶ 40.

19      C.   **Plaintiffs' Purchases of Nutrition Bars and Class**

20           **Allegations**

21      Mr. Colucci and Ms. Sethavanish are engaged but unmarried.

22  See generally id. ¶¶ 7-8.  Both have been residents of Windsor,

23  California since December 2010.  Prior to that, Mr. Colucci was an

24  active-duty member of the United States Marine Corps, stationed at

25  Camp Pendleton in San Diego County, California.  Ms. Sethavanish

26  lived in Orange, California.  From September 2009 through April

27  2010, Mr. Colucci was deployed as part of his military service.

28  Ms. Sethavanish would send him a monthly care package.  At Mr.

**United States District Court**
For the Northern District of California

1   Colucci's request, she would include in these care packages "two

2   multi-bar packs of ZonePerfect Nutrition Bars per month, including

3   its Classic ZonePerfect 'All-Natural' Nutrition Bars Chocolate

4   Peanut Butter flavor" (herein, "Chocolate Peanut Butter Bars").

5   <u>Id.</u>  Plaintiffs allege that, beginning on September 14, 2007, Ms.

6   Sethavanish would purchase packs of Chocolate Peanut Butter Bars

7   every four to six weeks from retail stores near her home.  <u>See id.</u>

8       Plaintiffs allege that Mr. Colucci believed and relied upon

9   the "all-natural" representation on the label of the nutrition bars

10  when he asked Ms. Sethavanish to purchase them for him.  <u>Id.</u> ¶ 7.

11  They further allege that Mr. Colucci would not have asked Ms.

12  Sethavanish to buy, nor would she have agreed to buy, Defendant's

13  nutrition bars had they known the bars were not all-natural.  <u>Id.</u>

14  ¶¶ 7-8.  Instead, they allege, Ms. Sethavanish would have bought

15  either a "truly" all-natural bar or another non-natural bar with a

16  lower price.  <u>Id.</u>

17      Plaintiffs purport to bring this action on behalf of a

18  nationwide class consisting of all persons who purchased any of

19  Defendant's nutrition bars on or after September 14, 2007.  <u>See id.</u>

20  ¶ 52.  The start of the class period corresponds with the date Ms.

21  Sethavanish allegedly first purchased nutrition bars for Mr.

22  Colucci.  <u>Compare id.</u> ¶ 8 <u>with id.</u> ¶ 52.

23

24  **III.  <u>DISCUSSION</u>**

25      **A.   <u>Standing</u>**

26      Defendant challenges Mr. Colucci's constitutional standing to

27  bring any claim regarding Defendant's labeling practices because

28  the Complaint does not allege that Mr. Colucci personally bought

**United States District Court**
For the Northern District of California

1    Defendant's nutrition bars, only that Ms. Sethavanish bought the

2    bars for him.  Mot. at 5-6; Reply at 6-7.  Defendant also

3    challenges the scope of Ms. Sethavanish's standing, arguing that,

4    while Ms. Sethavanish has standing to sue for mislabeling of the

5    Chocolate Peanut Butter Bars because she alleges that she purchased

6    that type of bar, she does not have standing to sue where the other

7    nineteen varieties of Defendant's nutrition bars are concerned

8    because she does not specifically allege that she purchased those

9    types.  Mot. at 6-8; Reply at 7-9.

10        Article III of the United States Constitution provides that

11   the "judicial power of the United States" extends only to proper

12   "Cases" and "Controversies."  The doctrine of standing which flows

13   from this language limits the federal courts' exercise of the

14   judicial power to those cases brought by plaintiffs who meet

15   certain minimum requirements.  See <u>Allen v. Wright</u>, 468 U.S. 737,

16   750 (1984).

17              The irreducible constitutional minimum of
              Article III standing contains three elements.
18            First, the plaintiff must have suffered an
              "injury in fact" that is "concrete and
19            particularized" and "actual or imminent."
              Second, there must be a causal connection
20            between the injury and the conduct complained
              of, such that the injury is fairly traceable to
21            the action challenged.  "Third, it must be
              likely, as opposed to merely speculative, that
22            the injury will be redressed by a favorable
              decision.
23

24   <u>Renee v. Duncan</u>, 686 F.3d 1002, 1012 (9th Cir. 2012) (quoting <u>Lujan</u>

25   <u>v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)) (internal

26   quotation marks, brackets, and citations omitted).  "The party

27   invoking federal jurisdiction bears the burden of establishing

28   these elements." <u>Lujan</u>, 504 U.S. at 561.  Defendant's standing

challenge focuses only on the injury-in-fact requirement: Defendant argues that Ms. Sethavanish alleges no injury in fact concerning nutrition bar flavors she did not actually purchase and that Mr. Colucci alleges no injury at all since he does not allege that he, personally, purchased any nutrition bars.

### 1.   Ms. Sethavanish

The Complaint alleges that Ms. Sethavanish purchased nutrition bars "including" Chocolate Peanut Butter Bars, but never identifies any other flavor.  Compl. ¶ 8.  Both parties' moving papers appear to assume that Ms. Sethavanish bought only that flavor, so the Court assumes the same for purposes of this discussion.

Ms. Sethavanish obviously has standing to sue for alleged mislabeling of the Chocolate Peanut Butter Bars that she allegedly purchased.  Both Article III standing requirements and the separate statutory standing requirements imposed by California's UCL are satisfied by allegations that a plaintiff would "not have purchased the products in question had he known the truth about these products and had they been properly labeled in compliance with the labeling regulations" and that he "lost money or property when he purchased the products in question because he did not receive the full value of those products as advertised and labeled due to the alleged misrepresentation."  Khasin v. Hershey Co., 5:12-CV-01862 EJD, 2012 WL 5471153, at *6-7 (N.D. Cal. Nov. 9, 2012).  Defendant does not dispute Ms. Sethavanish's standing as to the Chocolate Peanut Butter Bars she allegedly bought.

The issue, rather, is whether Ms. Sethavanish has standing to sue for alleged mislabeling of differently flavored bars that she did not allegedly buy.  Defendant argues she does not.  Mot. at 6-

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

8; Reply at 7-9. Plaintiffs argue that the nutrition bars Ms. Sethavanish did not buy are similar enough to those she did that this issue is not one of standing, but rather one of whether Ms. Sethavanish can adequately represent the alleged purchaser class -- that is, a question appropriately raised in the context of a Rule 23 motion for class certification rather than a Rule 12(b)(1) motion to dismiss for lack of standing. <u>See</u> Opp'n at 6.

As Judge Chen of this District recently observed, "there is authority going both ways" on this issue. <u>Astiana v. Dreyer's Grand Ice Cream, Inc.</u>, C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (Chen, J.). Reviewing the cases, however, this Court agrees with Judge Chen that "the critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased." <u>Id.</u>[3] Factors that other courts have

---

[3] It is difficult to identify with certainty how much similarity is required. Courts have denied standing where a wide swath of challenged products were purchased but one challenged product was not. <u>See</u> <u>Larsen v. Trader Joe's Co.</u>, C 11-05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012) (denying standing as to unbought crescent rolls where plaintiff allegedly purchased a wide variety of products, including cookies, apple juice, cinnamon rolls, biscuits, and ricotta cheese). Courts also have denied standing as to unbought products that differed from the purchased product in only minor, arguably trivial ways. <u>See</u> <u>Dysthe v. Basic Research LLC</u>, CV 09-8013 AG SSX, 2011 WL 5868307, at *5 (C.D. Cal. June 13, 2011) (denying standing as to an unbought weight-loss pill marketed as "Relacore" where plaintiff bought only "Relacore Extra," which had only minor differences in packaging and ingredients; "[J]ust because an Old Fashioned and a Manhattan both have bourbon doesn't mean they're the same drink."). But courts have also <u>found</u> standing as to unbought products that differed only trivially from the purchased product, <u>see</u> <u>Dreyer's Grand</u>, 2012 WL 2990766, at *13 (different flavors of the same brand of ice cream bearing the same label), as well as to unbought products that differed fairly substantially, <u>see</u> <u>Koh v. S.C. Johnson & Son, Inc.</u>, C-09-00927 RMW, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010) (two cleaning sprays, one a window cleaner and the other carpet stain remover, both with the same allegedly false badge of eco-friendliness). The Court need not reconcile any tension that may exist in the cases, however, because it determines, for the reasons set forth herein, that the challenged products here are sufficiently similar under any test --

considered include whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling.  See Dreyer's Grand, 2012 WL 2990766, at *13.

Here, the Court concludes that there is more than enough similarity between the Chocolate Peanut Butter Bars allegedly purchased and the other nineteen varieties of nutrition bars identified in the Complaint.  The accused products are all of a single kind, that is, they are all nutrition bars.  They share a uniform size and shape.  On casual inspection, the only obvious difference between the bars is their flavor.  Closer inspection reveals some difference between the ingredients used in different flavors, but the similarities are more striking: six of the nine challenged ingredients appear in all twenty nutrition bar flavors. See Compl. ¶ 42.  Most importantly, all twenty flavors bear the same challenged label: "All-Natural Nutrition Bars."

The Court concludes that Ms. Sethavanish has standing for both Article III and UCL purposes to sue for alleged mislabeling of all twenty nutrition bar flavors identified in the Complaint.

### 2.   Mr. Colucci

The Court concludes that Mr. Colucci lacks standing.  As the previous section's discussion suggests, standing in product mislabeling cases is predicated on the purchase of at least some product.  See Hershey, 2012 WL 5471153, at *6-7.  Here, Plaintiffs

---

more similar than the weight-loss pills in Dysthe and at least as similar as the ice cream brands in Dreyer's Grand.  The different flavors of Defendant's nutrition bars are more or less fungible when viewed from the perspective of a consumer considering buying one or the other; any preference for one flavor versus another could rest only on personal idiosyncrasies of taste, diet, or allergy.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  suggest that Mr. Colucci has standing despite the absence of

2  allegations that he personally purchased the products, or even that

3  they were purchased using money in which he had a legal interest

4  (as might have been the case if, for instance, he and Ms.

5  Sethavanish had been married at the time of the purchases rather

6  than engaged).

7      Plaintiffs argue that Mr. Colucci's standing flows from his

8  status as the "intended beneficiary" of the purchases.  Opp'n at 5.

9  The Court disagrees.  Mr. Colucci may have been a beneficiary in a

10  colloquial sense -- Ms. Sethavanish no doubt meant him to enjoy the

11  snacks she bought for him -- but Plaintiffs' argument misapprehends

12  third-party beneficiary law.  Third-party beneficiary status turns

13  on the intent of both parties to a contract.  See Spinks v. Equity

14  Residential Briarwood Apartments, 171 Cal. App. 4th 1004, 1023

15  (Cal. Ct. App. 2009).  While it is not required for both parties to

16  intend to benefit the third party, it is required that the promisor

17  understand the promisee -- here, Ms. Sethavanish -- to have such

18  intent.  Id.  Even assuming that Defendant was the promisor (as

19  compared to the retailer who actually Ms. Sethavanish the bars),

20  nothing suggests that Defendant knew Ms. Sethavanish intended to

21  benefit Mr. Colucci when she bought the bars or, indeed, knew of

22  Mr. Colucci's existence.  Mr. Colucci clearly was not an intended

23  beneficiary of the purchases in any legal sense.  Plaintiffs'

24  argument that Mr. Colucci's intended beneficiary status gives him

25  Article III standing falters at the gate.[4]

26  _____

27  [4] The one case Plaintiffs cite in support of their argument,
Walters v. Fid. Mortg. of CA, 730 F. Supp. 2d 1185 (E.D. Cal.
2010), is distinguishable.  In that case, a plaintiff who claimed

28  third-party beneficiary status alleged that a promisor (Ocwen) knew
that two promisees (Fidelity "and/or" HSBC) had "entered one or

1    The Court DISMISSES this action as to Mr. Colucci for lack of

2  standing.  Because no amendment consistent with the current

3  allegations could cure the defect, the dismissal is WITH PREJUDICE.

4  The Clerk of the Court shall administratively terminate Mr. Colucci

5  as a party.

6    **B.    Federal Claim (Magnuson-Moss Warranty Act)**

7    Plaintiffs bring only a single federal claim, one for breach

8  of written warranty under the federal Magnuson-Moss Warranty Act

9  ("MMWA").  Compl. ¶¶ 60-70.  The MMWA creates a civil cause of

10  action for consumers to enforce the terms of implied or express

11  warranties.  15 U.S.C. § 2310(d).

12    As a threshold matter, the Court considers whether Plaintiffs

13  meet MMWA's jurisdictional requirements.  Under § 2310(d)(1)(B),

14  private parties may bring a MMWA claim in federal district court.

15  Id. § 2310(d)(1)(B).  However, if the action is brought on behalf

16  of a class, as this one is, a district court may not hear the claim

17  if "the number of named plaintiffs is less than one hundred."  Id.

18  § 2310(d)(3)(C).  Defendant argues that Plaintiffs' MMWA claim must

19  be dismissed because, here, the number of named plaintiffs is only

20  two.  See Mot. at 10.  Plaintiffs respond that "numerous courts

21  have found such prerequisites to be irrelevant when, as here, a

22  court has jurisdiction under the Class Action Fairness Act, 28

23  U.S.C. § 1332(d) ('CAFA')."  Opp'n at 24.  Though Plaintiffs do not

24  provide a citation to any of those "numerous" opinions or attempt

25  to demonstrate that this case satisfies CAFA's jurisdictional

26

27  more agreements requiring Ocwen to provide various services to
plaintiff."  Id. at 1201.  In the case at bar, nothing suggests

28  that Defendant entered any agreement with Ms. Sethavanish to
provide anything to Mr. Colucci.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   prerequisites, their conclusion is correct.  <u>See</u> <u>Keegan v. Am.</u>

2   <u>Honda Motor Co., Inc.</u>, 838 F. Supp. 2d 929, 954-55 (C.D. Cal. 2012)

3   (collecting cases holding that Congress's passage of CAFA

4   supplanted the jurisdictional requirements of the earlier-enacted

5   MMWA).  Plaintiffs need not satisfy the numerosity requirements of

6   the MMWA, only the jurisdictional requisites of CAFA, and they have

7   done so here.[5]

8         Proceeding, then, to the merits of Plaintiffs' MMWA claim, the

9   Court concludes that the claim fails as a matter of law.

10   Plaintiffs allege a breach of written warranty.  Compl. ¶¶ 65-67.

11   The MMWA defines a written warranty as follows:

12                 any written affirmation of fact or written
                    promise made in connection with the sale of a
13             consumer product by a supplier to a buyer which
                    relates to the nature of the material or
14             workmanship and affirms or promises that such
                    material or workmanship is <u>defect free or will</u>
15             <u>meet a specified level of performance over a</u>
                    <u>specified period of time</u>.
16

17   15 U.S.C. § 2301(6)(A) (emphasis added).  The MMWA's disjunctive

18   language ("or") identifies two kinds of written warranties, the

19   first warranting a "defect free" product and the second warranting

20   a product that will "meet a specified level of performance over a

21   specified period of time."  Plaintiffs allege only the first kind,

22   a "defect free" warranty; specifically, they allege that the

23   nutrition bars' "All-Natural" representation constitutes "a written

24   promise that the ingredients in the Nutrition Bars were free of a

25

26   _____

27   [5] <u>See</u> 28 U.S.C. § 1332(d)(2) (provisions of CAFA giving district
    courts jurisdiction over class actions where any class member is
    diverse from any defendant and more than $5 million is in
28   controversy); Compl. (alleging complete diversity of named parties
    and placing in controversy more than $5 million).

**United States District Court**
For the Northern District of California

particular type of defect (i.e., that they were not synthetic or artificial)." Compl. ¶ 66.

The Court concludes that Plaintiffs' claim fails as a matter of law. Plaintiffs allege that the actionable defect here is the artificiality or synthetic nature of the ingredients in the nutrition bars. The identical argument has been rejected in many other cases. E.g., Larsen v. Trader Joe's Co., C 11-05188 SI, 2012 WL 5458396, at *3 (N.D. Cal. June 14, 2012) ("[T]his Court is not persuaded that being 'synthetic' or 'artificial' is a 'defect.'"); Dreyer's Grand Ice Cream, 2012 WL 2990766, at *2-4 (same, and collecting cases). This Court finds the reasoning of those cases persuasive and adopts it here. Plaintiffs fail to marshal any persuasive authority that artificial or synthetic ingredients in otherwise unobjectionable food products amount to an actionable defect under the MMWA. Accordingly, Plaintiffs' MMWA claim is DISMISSED. Because amendment could not save the claim, the dismissal is WITH PREJUDICE.[6]

---

[6] In Defendant's Notice of Removal, the only stated grounds for subject-matter jurisdiction are federal-question and supplemental jurisdiction. See NOR ¶¶ 6-8. Hence, the Court's dismissal of Plaintiffs' only federal claim raises the question of whether the Court should exercise its discretion to remand Plaintiffs' seven remaining state-law claims. The Court is plainly authorized to do so. See 28 U.S.C. § 1362(c); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988). Cohill authorizes district courts to remand state law claims over which it exercises only supplemental jurisdiction after all federal claims have been dismissed. See Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 637 (2009). Not only is remand authorized in such cases, but usually "the balance of factors to be considered [. . .] -- judicial economy, convenience, fairness, and comity -- will point toward" remand. Cohill, 484 U.S. at 350 n.7. The Court concludes, however, that this is not the usual case. As previously explained, this case satisfies CAFA's jurisdictional requirements. Further, because the Complaint alleges complete diversity between the parties and places more than $75,000 in controversy, Defendant could have removed on diversity grounds. Given the existence of grounds for subject-matter jurisdiction separate from those named in Defendant's Notice of

C. **State Law Claims**

   1. **Preemption**

   Defendant argues that Plaintiffs' state-law claims "stand[] as an obstacle to federal law and policy, and so should be dismissed as preempted." Mot. at 11. Preemption doctrine flows from the Supremacy Clause of Article VI of the U.S. Constitution, which provides that federal law is the "supreme law of the land." Under this provision of the Constitution, "Congress has the power to preempt state law." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000). Thus, in all preemption cases, congressional intent is the "ultimate touchstone" of preemption analysis. See Altria Group, Inc. v. Good, 555 U.S. 70, 76 (2008). Congressional intent to preempt state law may be found if the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Kroske v. U.S. Bank Corp., 432 F.3d 976, 981 (9th Cir. 2005) (quoting English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990)). This "implied obstacle" or "conflict" preemption theory is the only one Defendant argues here.

   The Court notes, however, that the Ninth Circuit opinion on which Defendant rests its argument was vacated during the pendency of this motion. See Degelmann v. Advanced Med. Optics, Inc., 659 F.3d 835 (9th Cir. 2011) vacated sub nom. Degelmann v. Advanced Med. Optics Inc., 699 F.3d 1103 (9th Cir. 2012); see also Mot. at 11-12, Reply at 11-12 (arguing that Degelmann controls in this case). In the absence of viable authority, the Court declines to

   Removal, the Court declines to exercise its discretion to remand Plaintiffs' remaining state-law claims. Nothing would stop Defendant from simply removing again, and such a result would hardly be economical, convenient, or fair.

**United States District Court**
For the Northern District of California

entertain Defendant's preemption argument at this time -- without, however, any prejudice to Defendant's right to raise preemption arguments in further proceedings before this Court.

### 2.   Plausibility and Particularity

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court has held that Rule 8 requires that a complaint's well-pleaded allegations, if taken as true, must "<u>plausibly</u> give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009) (emphasis added).  Determining the plausibility of allegations is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id.</u>

Rule 9(b) imposes a higher pleading standard on, inter alia, claims that sound in fraud.  For such claims, "the circumstances constituting fraud" must be "state[d] with particularity."  Fed. R. Civ. P. 9(b).  This "particularity" standard means that a plaintiff "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  <u>Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and brackets omitted).  States of mind, however, including intent, "may be alleged generally."  Fed. R. Civ. P. 9(b).

In the case at bar, Defendant argues that the Court should dismiss Plaintiffs' state-law claims as implausible or, to the extent they sound in fraud, as lacking particularity.  Mot. at 14-21; Reply at 2-6.  The argument is unavailing.  First, as to

1   plausibility, the Ninth Circuit has made plain that UCL, FAL, and

2   CLRA claims, like those asserted by Plaintiffs here, turn on the

3   application of a "reasonable consumer" standard.  See Williams v.

4   Gerber Products Co., 552 F.3d 934, 938-40 (9th Cir. 2008).

5   Defendant's argument as to plausibility is, at bottom, an argument

6   that no reasonable consumer is likely be deceived by the labeling

7   of its nutrition bars.  But, as the Ninth Circuit and numerous

8   courts have held, that issue is generally not amenable to

9   resolution on the pleadings because it involves issues of fact.

10  See id.; see also, e.g., Dreyer's Grand, 2012 WL 2990766, at *11;

11  Hershey, 2012 WL 5471153, at *7; Vicuna v. Alexia Foods, Inc., C

12  11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012);

13  Astiana v. Ben & Jerry's Homemade, Inc., C 10-4387 PJH, 2011 WL

14  2111796, at *4 (N.D. Cal. May 26, 2011).  The questions of (1)

15  whether it would be reasonable for a consumer to believe the

16  nutrition bars' claim to be "All-Natural" and (2) whether the

17  nutrition bars' labels are "likely to deceive," are both factual

18  inquiries beyond the scope of the present inquiry into the "legal

19  sufficiency" of the Complaint.  Cf. APL Co. Pte. Ltd. v. UK

20  Aerosols Ltd., Inc., 452 F. Supp. 2d 939, 942 (N.D. Cal. 2006)

21  (Rule 12(b)(6) motion tests sufficiency of pleading, not merits).

22      The Court also rejects Defendant's arguments that the

23  Complaint's allegations of fraud are insufficiently particular.

24  Defendant argues first that Plaintiffs have failed to allege the

25  required element of "specific intent" with particularity.  The

26  argument fails because Rule 9(b) permits states of mind, including

27  intent, to be pled generally.  Second, Defendant cites a recent

28  case from this District where the Court dismissed similar legal

1  claims as having been pled with insufficient particularity, but the
2  case is distinguishable.  <u>See</u> <u>Wang v. OCZ Tech. Group, Inc.</u>, 276
3  F.R.D. 618 (N.D. Cal. 2011).  In <u>Wang</u>, the plaintiff failed to
4  allege how the challenged product -- a computer storage drive --
5  "f[ell] short of its advertised qualities, e.g., actual versus
6  expected capacity of his drive and actual versus expected
7  performance speed."  <u>Id.</u> at 628.  By citing to this case, Defendant
8  appears to suggest that Plaintiffs, too, have not alleged with
9  particularity how the purchased nutrition bars fell short of their
10  advertised qualities, in other words, how the advertising was
11  false.  The suggestion is unavailing.  Plaintiffs allege that the
12  bars were labeled "All-Natural" but in fact were not.

13      The Court is cognizant of Defendant's argument which purports
14  to show how the Complaint's "central premise" -- that the "All-
15  Natural" statement on the nutrition bars is deceptive because
16  federal regulations describe some of the bars' ingredients as
17  "synthetic" -- is false.  <u>See</u> Mot. at 15-17; Reply at 3-4.
18  Defendant explains at length why "synthetic" ingredients are not in
19  fact unnatural, in the sense of being found "in nature."  Defendant
20  points out that Plaintiffs admit that certain of the challenged
21  ingredients are naturally occurring compounds (for instance,
22  vitamins) or "common and normally expected to be in foods" like the
23  nutrition bars.  Defendant asserts that this makes the ingredients,
24  if not quite "natural," then not unnatural, and concludes that,
25  therefore, "there is no basis for concluding that the [nutrition]
26  bars are mislabeled."  Defendant may be correct as a matter of
27  fact, but factual matters are not amenable to resolution at the
28  pleading stage.

**United States District Court**
For the Northern District of California

In a similar vein, Defendant submits a request for judicial notice with six exhibits, the first five of which are screenshots of the websites of purportedly health-conscious grocery stores. ECF No. 27 ("RJN") Exs. 1-5.  In the screenshots, the grocery stores mention ingredients which are also used in Defendant's nutrition bars.  Defendant points to these representations by the non-party grocery stores to "show[] the implausibility of any reasonable consumer being deceived" by the "All-Natural" claim on Defendant's packaging, since products containing the same ingredients are sold at the purportedly health-conscious grocery stores.  Mot. at 18-19.  The Court rejects this argument as untenable at the pleading stage.  The Court is not inclined to assume the role of fact-finder in the guise of determining plausibility.  "The plausibility standard is not akin to a probability requirement . . . ."  Iqbal, 556 U.S. at 678 (internal quotation marks omitted).  Because Defendant's RJN essentially asks the Court to make a factual finding at the pleading stage, the RJN is DENIED as to Exhibits 1 through 5.

Defendant presents no reason to dismiss Plaintiffs' state-law claims as implausible or lacking particularity.  Accordingly, the Court DENIES Defendant's motion to dismiss the state-law claims on those grounds.  Because those are the only grounds on which Defendant challenged Plaintiffs' common-law fraud, UCL, and FAL claims (claims 2 through 6), those claims remain undisturbed.

### 3. CLRA Notice

Defendant argues that Plaintiffs' seventh claim, asserting violations of the CLRA, must be dismissed as procedurally deficient.  Section 1782(a) of the CLRA requires that "[t]hirty

1   days or more prior to the commencement of an action for damages

2   pursuant to this title, the consumer shall . . . [n]otify the

3   person alleged to have" violated the CLRA "of the particular

4   alleged violations" and "[d]emand that the person correct, repair,

5   replace, or otherwise rectify" the violations.  Cal. Civ. Code §

6   1782(a).  Defendant argues that Plaintiffs failed to comply with

7   this pre-suit notice provision because they sent a demand letter to

8   Defendant on August 30, 2011 but then filed a suit for damages in

9   California Superior Court on September 14, 2011.  See RJN Ex. 6

10  ("Aug. 30, 2011 Letter").[7]  Defendant argues that even if the

11  letter had been timely, it failed to detail the CLRA violations

12  with sufficient particularity.  Lastly, Defendant argues that

13  failure to provide proper notice requires dismissal with prejudice

14  of Plaintiffs' CLRA claim, because later notice and amendment

15  cannot, as a matter of law, cure the initial failure to provide

16  notice.  Mot. at 23-24.

17       Defendant's position is unavailing.  Plaintiffs sent their

18  CLRA notice letter on August 30, 2011, and filed the action now at

19  bar on April 26, 2012 -- nearly eight months later.  Defendant

20  makes much of the fact that Plaintiffs are on their third complaint

21  in their second case against Defendant.  The first case only

22  matters to the second, however, if it has some sort of preclusive

23  _____

24  [7] Defendant asks the Court to take judicial notice of the August
    30, 2011 Letter.  The Court declines to do so because it is neither

25  a fact generally known nor is it the type of source whose accuracy
    "could not reasonably be questioned." Fed. R. Evid. 201.  The

26  Court will, however, consider the letter under the doctrine of
    incorporation by reference.  Under that doctrine, it is sufficient

27  that no party questions the authenticity of the document and that
    the document's contents are alleged in the complaint.  Knievel v.

28  ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).  Those conditions are
    satisfied here.  See Compl. ¶¶ 45-47.

effect.  Here, it does not, whether one looks to federal preclusion law or to the preclusion rules of the California state court where the instant case was initially filed.[8]  Accordingly, the Court gives no preclusive effect to the first, voluntarily dismissed lawsuit.  The CLRA notice letter was sent eight months before commencement of the case now before this Court and thus was not untimely for purposes of section 1782(a).

Defendant's argument that the letter lacked sufficient detail is similarly unavailing.  Notice need only "give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements."  Stickrath v. Globalstar, Inc., 527 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2007) (quoting Outboard Marine Corp. v. Superior Court, 52 Cal. App. 3d 30, 40 (Cal. Ct. App. 1975)).  Defendant, challenged on this point in Plaintiffs' opposition, essentially concedes it by declining to respond in the reply brief.  Having reviewed the August 30, 2011 Letter, the Court concludes that it adequately notified Defendant

---

[8] As to federal law, "[c]laim preclusion, or res judicata, bars successive litigation of the very same claim following a final adjudication on the merits involving the same parties or their privies."  Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1159 (9th Cir. 2002) (internal quotation marks omitted).  However, voluntary dismissals are not judgments "on the merits" unless specifically so stated or the claim has been voluntarily dismissed more than once.  See Fed. R. Civ. P. 41(a)(1)(B).  As to the preclusive effect of California law, under 28 U.S.C. § 1738, this Court "must give the same preclusive effect to a state court judgment as the state courts of that state would themselves give to that judgment," Noel v. Hall, 341 F.3d 1148, 1159 (9th Cir. 2003), and California courts do not give preclusive effect to voluntary dismissals without prejudice, see In re Estate of Redfield, 193 Cal. App. 4th 1526, 1534 (Cal. Ct. App. 2011) ("Application of the doctrine of res judicata requires an affirmative answer to" the question "Was there a final judgment on the merits?"); Syufy Enterprises v. City of Oakland, 104 Cal. App. 4th 869, 879 (Cal. Ct. App. 2002) ("By definition, a voluntary dismissal without prejudice is not a final judgment on the merits.").

**United States District Court**
For the Northern District of California

1  of the alleged defect, which was the use of allegedly synthetic or

2  artificial ingredients in Defendant's nutrition bars.

3      **4.   Restitution Based on Quasi-Contract**

4      Plaintiffs' eighth and final claim is pled in the alternative.

5  Compl. ¶¶ 114-16.  Plaintiffs style this claim as one for

6  "Restitution Based On Quasi-Contract."  <u>Id.</u>  Defendant seeks

7  dismissal of this claim on two grounds.  First, Defendant argues

8  that Plaintiffs have failed to plausibly plead that Defendant's

9  nutrition bars are not natural and hence have failed to plead the

10  existence of a fraud that would make Defendant's enrichment

11  "unjust."  Second, Defendant argues that Plaintiffs cannot bring a

12  claim for unjust enrichment, even in the alternative, because they

13  have already sued in tort.  <u>See</u> Mot. at 24-25; Reply at 14-15.

14      Defendant's first argument fails because it is predicated on

15  plausibility arguments that the Court already rejected.  <u>See</u>

16  Section III.C.2 <u>supra</u>.  Defendant's second argument, however,

17  presents a closer question.  Defendant begins its discussion with

18  the observation that "courts have inconsistently dealt" with

19  restitution claims.  Mot. at 24.  "Inconsistent" is an

20  understatement.  Some of the cases emphasize that unjust enrichment

21  or restitution -- the terms are synonymous[9] -- is not a cause of

22  action, but rather a remedy.  Some state that unjust enrichment is

23  neither a claim nor a remedy, but a "principle."  Some state that

24  unjust enrichment is indeed a cause of action, but one that may not

25  be pled alongside claims for breach of contract or tort.  Yet

---

[9] <u>Cf.</u> <u>McBride v. Boughton</u>, 123 Cal. App. 4th 379, 387 (Cal. Ct.
App. 2004) ("Unjust enrichment is not a cause of action . . . or
even a remedy, but rather a general principle, underlying various
legal doctrines and remedies[.]  It is synonymous with
restitution." (internal quotation marks and citations omitted)).

**United States District Court**
For the Northern District of California

1   others come to the slightly different conclusion that these claims

2   may be <u>pled</u> alongside contract and tort claims, but only as an

3   alternative, "fallback" claim in the event that the contract or

4   tort claims fail.  Finally, some courts appear to elide the issue

5   entirely and simply analyze whether the plaintiff has adequately

6   pled the "elements" of the "claim."  The outcome of some motions

7   appears to have turned on the words used in the caption to describe

8   the cause of action.

9       Having reviewed numerous discussions, this Court is persuaded

10  by, and adopts the reasoning of, the cases which hold that claims

11  for restitution or unjust enrichment may survive the pleading stage

12  when pled as an alternative avenue of relief, though the claims, as

13  alternatives, may not afford relief if other claims do.  <u>E.g.</u>,

14  <u>Alexia Foods</u>, 2012 WL 1497507, at *3; <u>Trader Joe's</u>, 2012 WL

15  5458396, at *7; <u>Ben & Jerry's</u>, 2011 WL 2111796, at *11.

16  Accordingly, the Court declines to dismiss Plaintiffs' alternative

17  "claim" for restitution based on quasi-contract.  However, "to the

18  extent that plaintiffs are ultimately able to prevail under a tort

19  theory, they will be precluded from also recovering under a claim

20  of unjust enrichment." <u>Trader Joe's</u>, 2012 WL 5458396, at *7.

21

22  **IV.**   **<u>CONCLUSION</u>**

23      The Court ORDERS Plaintiff James Colucci dismissed from this

24  action for lack of standing.  The Clerk shall administratively

25  terminate Mr. Colucci in ECF.  Plaintiff Kimberly S. Sethavanish

26  has standing to pursue the claims set forth in the Complaint with

27  respect to all twenty brands of Defendant ZonePerfect Nutrition

28  Company's nutrition bars identified in the Complaint.

1    As to the merits, the Complaint's first claim for relief,

2  arising under the Magnuson-Moss Warranty Act, is DISMISSED WITH

3  PREJUDICE.   The other seven claims set out in the Complaint remain

4  undisturbed.

5

6    IT IS SO ORDERED.

7

8    Dated: December 28, 2012    

9                                  UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California