1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   JAMES COLUCCI and KIMBERLY S.     ) Case No. 12-2907-SC
    SETHAVANISH, on behalf of         )
10  themselves and all others         ) ORDER RE MOTION TO DISMISS
    similarly situated,               )
11                                    )
                                      )
12          Plaintiffs,               )
                                      )
13      v.                            )
                                      )
14  ZONEPERFECT NUTRITION COMPANY, a  )
    Delaware corporation,             )
15                                    )
            Defendant.                )
16  _____  )

17

18  **I.   <u>INTRODUCTION</u>**

19      Plaintiffs James Colucci and Kimberly S. Sethavanish

20  (collectively, "Plaintiffs") bring this purported class action

21  against Defendant ZonePerfect Nutrition Company ("Defendant"), a

22  maker of nutritional snack bars ("nutrition bars").  The thrust of

23  Plaintiffs' Complaint is that Defendant's nutrition bars, which

24  bear on their labels the statement "All-Natural Nutrition Bars,"

25  are not all-natural and hence misleadingly labeled.  Now pending

26  before the Court is Defendant's fully-briefed motion to dismiss the

27  Complaint.  ECF Nos. 26 ("Mot."), 31 ("Opp'n"), 32 ("Reply").  The

28  motion is suitable for decision without oral argument.  Civ. L.R.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

7-1(b).  For the reasons set forth below, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.

## II.   BACKGROUND

### A.   Procedural History

On September 14, 2011, months before Plaintiffs filed the instant case, they filed a separate lawsuit against Defendant in this Court, with the case number 11-cv-4561-SC.  Defendant moved for dismissal on February 10, 2012.  Plaintiffs responded by filing an amended complaint on March 2, 2012.  On March 30, 2012, Defendant moved again for dismissal.  Plaintiffs did not oppose the motion and, on April 27, 2012, filed a notice of voluntary dismissal.  On May 1, 2012, the Court dismissed the case.

On April 26, 2012, Plaintiffs had filed a new case against Defendant, this time in the California Superior Court for Sonoma County.  ECF No. 1 (notice of removal ("NOR") Ex. A ("Compl.").  The Complaint sets forth eight causes of action: (1) violation of a written warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. ("MMWA"); (2) common-law fraud; (3-5) claims for unlawful, unfair, and fraudulent business practices under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL")[1]; (6) false advertising in violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500

---

[1] The UCL "establishes three varieties of unfair competition -- acts or practices which are unlawful, or unfair, or fraudulent." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal. App. 4th 1544, 1554 (Cal. Ct. App. 2007).  Each "prong" of the UCL thus represents an analytically distinct theory of recovery and imposes different standards.  See Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230, 252-53 (2011) (distinguishing prongs, explaining standards). Here, Plaintiffs assert a separate UCL claim under each prong.

United States District Court
For the Northern District of California

et seq. ("FAL"); (7) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"); and, in the alternative, (8) restitution based on quasi-contract.

Defendant received a copy of the state-court complaint no earlier than May 7, 2012 and removed to this Court on June 5, 2012. NOR ¶ 2.[2] On June 28, 2012, the parties stipulated that the instant case is related to the earlier, voluntarily dismissed case. ECF No. 19. On July 10, 2012, the Court deemed the cases related and the case was transferred to the undersigned. ECF No. 23. On July 25, 2012, Defendant filed the instant motion to dismiss.

**B.   The Nutrition Bars' Labels and Ingredients**

In the procedural posture of this case, the Court takes its account of the facts from the allegations of Plaintiffs' Complaint.

Defendant manufactures, distributes, and sells nutrition bars through walk-in and online retailers. Compl. ¶ 9. There are twenty varieties of Defendant's nutrition bars, and they are sold and distributed nationwide in grocery stores, health food stores, and other venues. Id. ¶ 10.

Plaintiffs include in their Complaint twenty color photographs that purport to represent each of the twenty ZonePerfect-brand nutrition bars. Id. ¶¶ 42(a)-(t). Each photograph shows a brightly-colored, rectangular plastic wrapper emblazoned on the left with (among other things) the ZonePerfect logo and the legend

---

[2] Defendant removed on the basis of this Court's federal-question jurisdiction over Plaintiffs' MMWA claim and its supplemental jurisdiction over Plaintiffs' other seven, state-law claims. NOR ¶¶ 6-8 (citing 28 U.S.C. §§ 1331, 1367(a), 1441(a) & 1446). Having reviewed the NOR, the Court determines that Defendant has satisfied the jurisdictional and procedural requisites of §§ 1441(a) and 1446, respectively. The Court also concludes, as detailed at note 6 infra, that Defendant could have removed on diversity grounds.

United States District Court
For the Northern District of California

1    "All-Natural Nutrition Bars," and, on the right, a line of text

2    announcing the bar's flavor (e.g., "Chocolate Mint") situated

3    beneath an image of an unpackaged rectangular food bar flanked by

4    food items representing its flavor (e.g., a sprig of mint leaves

5    and a bowl of chocolate pudding).

6        Plaintiffs allege that all of Defendant's nutrition bars

7    contain at least one of the following ten allegedly non-natural

8    ingredients: ascorbic acid; calcium pantothenate; calcium

9    phosphates; glycerine; potassium carbonate a/k/a "Cocoa [Processed

10   with Alkali]" or "Cocoa Powder [Processed with Alkali]"; pyridoxine

11   hydrochloride; disodium phosphate; sorbitan monostearate;

12   tocopherols; and xanthan gum. Id. ¶¶ 21-30. Plaintiffs allege

13   that, although the labels on nutrition bars' packages "did disclose

14   that [the nutrition bars] contained many of [these] synthetic and

15   artificial substances, the labels did not disclose that these

16   ingredients were synthetic or artificial, and in some cases did not

17   identify that these components existed in ZonePerfect's Nutrition

18   Bars at all (e.g., Potassium Carbonate)." Id. ¶ 40.

19   **C.   Plaintiffs' Purchases of Nutrition Bars and Class**

20        **Allegations**

21        Mr. Colucci and Ms. Sethavanish are engaged but unmarried.

22   See generally id. ¶¶ 7-8. Both have been residents of Windsor,

23   California since December 2010. Prior to that, Mr. Colucci was an

24   active-duty member of the United States Marine Corps, stationed at

25   Camp Pendleton in San Diego County, California. Ms. Sethavanish

26   lived in Orange, California. From September 2009 through April

27   2010, Mr. Colucci was deployed as part of his military service.

28   Ms. Sethavanish would send him a monthly care package. At Mr.

**United States District Court**
For the Northern District of California

1  Colucci's request, she would include in these care packages "two

2  multi-bar packs of ZonePerfect Nutrition Bars per month, including

3  its Classic ZonePerfect 'All-Natural' Nutrition Bars Chocolate

4  Peanut Butter flavor" (herein, "Chocolate Peanut Butter Bars").

5  <u>Id.</u>  Plaintiffs allege that, beginning on September 14, 2007, Ms.

6  Sethavanish would purchase packs of Chocolate Peanut Butter Bars

7  every four to six weeks from retail stores near her home.  <u>See id.</u>

8      Plaintiffs allege that Mr. Colucci believed and relied upon

9  the "all-natural" representation on the label of the nutrition bars

10  when he asked Ms. Sethavanish to purchase them for him.  <u>Id.</u> ¶ 7.

11  They further allege that Mr. Colucci would not have asked Ms.

12  Sethavanish to buy, nor would she have agreed to buy, Defendant's

13  nutrition bars had they known the bars were not all-natural.  <u>Id.</u>

14  ¶¶ 7-8.  Instead, they allege, Ms. Sethavanish would have bought

15  either a "truly" all-natural bar or another non-natural bar with a

16  lower price.  <u>Id.</u>

17      Plaintiffs purport to bring this action on behalf of a

18  nationwide class consisting of all persons who purchased any of

19  Defendant's nutrition bars on or after September 14, 2007.  <u>See id.</u>

20  ¶ 52.  The start of the class period corresponds with the date Ms.

21  Sethavanish allegedly first purchased nutrition bars for Mr.

22  Colucci.  <u>Compare id.</u> ¶ 8 <u>with id.</u> ¶ 52.

23

24  **III.  <u>DISCUSSION</u>**

25      **A.  <u>Standing</u>**

26      Defendant challenges Mr. Colucci's constitutional standing to

27  bring any claim regarding Defendant's labeling practices because

28  the Complaint does not allege that Mr. Colucci personally bought

Defendant's nutrition bars, only that Ms. Sethavanish bought the bars for him.  Mot. at 5-6; Reply at 6-7.  Defendant also challenges the scope of Ms. Sethavanish's standing, arguing that, while Ms. Sethavanish has standing to sue for mislabeling of the Chocolate Peanut Butter Bars because she alleges that she purchased that type of bar, she does not have standing to sue where the other nineteen varieties of Defendant's nutrition bars are concerned because she does not specifically allege that she purchased those types.  Mot. at 6-8; Reply at 7-9.

Article III of the United States Constitution provides that the "judicial power of the United States" extends only to proper "Cases" and "Controversies."  The doctrine of standing which flows from this language limits the federal courts' exercise of the judicial power to those cases brought by plaintiffs who meet certain minimum requirements.  See Allen v. Wright, 468 U.S. 737, 750 (1984).

> The irreducible constitutional minimum of Article III standing contains three elements. First, the plaintiff must have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent." Second, there must be a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the action challenged. "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Renee v. Duncan, 686 F.3d 1002, 1012 (9th Cir. 2012) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)) (internal quotation marks, brackets, and citations omitted).  "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561.  Defendant's standing

**United States District Court**
For the Northern District of California

challenge focuses only on the injury-in-fact requirement: Defendant argues that Ms. Sethavanish alleges no injury in fact concerning nutrition bar flavors she did not actually purchase and that Mr. Colucci alleges no injury at all since he does not allege that he, personally, purchased any nutrition bars.

### 1.   Ms. Sethavanish

The Complaint alleges that Ms. Sethavanish purchased nutrition bars "including" Chocolate Peanut Butter Bars, but never identifies any other flavor.  Compl. ¶ 8.  Both parties' moving papers appear to assume that Ms. Sethavanish bought only that flavor, so the Court assumes the same for purposes of this discussion.

Ms. Sethavanish obviously has standing to sue for alleged mislabeling of the Chocolate Peanut Butter Bars that she allegedly purchased.  Both Article III standing requirements and the separate statutory standing requirements imposed by California's UCL are satisfied by allegations that a plaintiff would "not have purchased the products in question had he known the truth about these products and had they been properly labeled in compliance with the labeling regulations" and that he "lost money or property when he purchased the products in question because he did not receive the full value of those products as advertised and labeled due to the alleged misrepresentation."  Khasin v. Hershey Co., 5:12-CV-01862 EJD, 2012 WL 5471153, at *6-7 (N.D. Cal. Nov. 9, 2012).  Defendant does not dispute Ms. Sethavanish's standing as to the Chocolate Peanut Butter Bars she allegedly bought.

The issue, rather, is whether Ms. Sethavanish has standing to sue for alleged mislabeling of differently flavored bars that she did not allegedly buy.  Defendant argues she does not.  Mot. at 6-

United States District Court
For the Northern District of California

8; Reply at 7-9.  Plaintiffs argue that the nutrition bars Ms. Sethavanish did not buy are similar enough to those she did that this issue is not one of standing, but rather one of whether Ms. Sethavanish can adequately represent the alleged purchaser class -- that is, a question appropriately raised in the context of a Rule 23 motion for class certification rather than a Rule 12(b)(1) motion to dismiss for lack of standing.  See Opp'n at 6.

As Judge Chen of this District recently observed, "there is authority going both ways" on this issue.  Astiana v. Dreyer's Grand Ice Cream, Inc., C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (Chen, J.).  Reviewing the cases, however, this Court agrees with Judge Chen that "the critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased." Id.[3]  Factors that other courts have

---

[3] It is difficult to identify with certainty how much similarity is required.  Courts have denied standing where a wide swath of challenged products were purchased but one challenged product was not.  See Larsen v. Trader Joe's Co., C 11-05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012) (denying standing as to unbought crescent rolls where plaintiff allegedly purchased a wide variety of products, including cookies, apple juice, cinnamon rolls, biscuits, and ricotta cheese).  Courts also have denied standing as to unbought products that differed from the purchased product in only minor, arguably trivial ways.  See Dysthe v. Basic Research LLC, CV 09-8013 AG SSX, 2011 WL 5868307, at *5 (C.D. Cal. June 13, 2011) (denying standing as to an unbought weight-loss pill marketed as "Relacore" where plaintiff bought only "Relacore Extra," which had only minor differences in packaging and ingredients; "[J]ust because an Old Fashioned and a Manhattan both have bourbon doesn't mean they're the same drink.").  But courts have also found standing as to unbought products that differed only trivially from the purchased product, see Dreyer's Grand, 2012 WL 2990766, at *13 (different flavors of the same brand of ice cream bearing the same label), as well as to unbought products that differed fairly substantially, see Koh v. S.C. Johnson & Son, Inc., C-09-00927 RMW, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010) (two cleaning sprays, one a window cleaner and the other carpet stain remover, both with the same allegedly false badge of eco-friendliness).  The Court need not reconcile any tension that may exist in the cases, however, because it determines, for the reasons set forth herein, that the challenged products here are sufficiently similar under any test --

8

considered include whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling.  See Dreyer's Grand, 2012 WL 2990766, at *13.

Here, the Court concludes that there is more than enough similarity between the Chocolate Peanut Butter Bars allegedly purchased and the other nineteen varieties of nutrition bars identified in the Complaint.  The accused products are all of a single kind, that is, they are all nutrition bars.  They share a uniform size and shape.  On casual inspection, the only obvious difference between the bars is their flavor.  Closer inspection reveals some difference between the ingredients used in different flavors, but the similarities are more striking: six of the nine challenged ingredients appear in all twenty nutrition bar flavors. See Compl. ¶ 42.  Most importantly, all twenty flavors bear the same challenged label: "All-Natural Nutrition Bars."

The Court concludes that Ms. Sethavanish has standing for both Article III and UCL purposes to sue for alleged mislabeling of all twenty nutrition bar flavors identified in the Complaint.

### 2.   Mr. Colucci

The Court concludes that Mr. Colucci lacks standing.  As the previous section's discussion suggests, standing in product mislabeling cases is predicated on the purchase of at least some product.  See Hershey, 2012 WL 5471153, at *6-7.  Here, Plaintiffs

---

more similar than the weight-loss pills in Dysthe and at least as similar as the ice cream brands in Dreyer's Grand.  The different flavors of Defendant's nutrition bars are more or less fungible when viewed from the perspective of a consumer considering buying one or the other; any preference for one flavor versus another could rest only on personal idiosyncrasies of taste, diet, or allergy.

**United States District Court**
For the Northern District of California

suggest that Mr. Colucci has standing despite the absence of allegations that he personally purchased the products, or even that they were purchased using money in which he had a legal interest (as might have been the case if, for instance, he and Ms. Sethavanish had been married at the time of the purchases rather than engaged).

Plaintiffs argue that Mr. Colucci's standing flows from his status as the "intended beneficiary" of the purchases.  Opp'n at 5.  The Court disagrees.  Mr. Colucci may have been a beneficiary in a colloquial sense -- Ms. Sethavanish no doubt meant him to enjoy the snacks she bought for him -- but Plaintiffs' argument misapprehends third-party beneficiary law.  Third-party beneficiary status turns on the intent of both parties to a contract.  See Spinks v. Equity Residential Briarwood Apartments, 171 Cal. App. 4th 1004, 1023 (Cal. Ct. App. 2009).  While it is not required for both parties to intend to benefit the third party, it is required that the promisor understand the promisee -- here, Ms. Sethavanish -- to have such intent.  Id.  Even assuming that Defendant was the promisor (as compared to the retailer who actually Ms. Sethavanish the bars), nothing suggests that Defendant knew Ms. Sethavanish intended to benefit Mr. Colucci when she bought the bars or, indeed, knew of Mr. Colucci's existence.  Mr. Colucci clearly was not an intended beneficiary of the purchases in any legal sense.  Plaintiffs' argument that Mr. Colucci's intended beneficiary status gives him Article III standing falters at the gate.[4]

---

[4] The one case Plaintiffs cite in support of their argument, Walters v. Fid. Mortg. of CA, 730 F. Supp. 2d 1185 (E.D. Cal. 2010), is distinguishable.  In that case, a plaintiff who claimed third-party beneficiary status alleged that a promisor (Ocwen) knew that two promisees (Fidelity "and/or" HSBC) had "entered one or

1    The Court DISMISSES this action as to Mr. Colucci for lack of

2    standing.  Because no amendment consistent with the current

3    allegations could cure the defect, the dismissal is WITH PREJUDICE.

4    The Clerk of the Court shall administratively terminate Mr. Colucci

5    as a party.

6    **B.   Federal Claim (Magnuson-Moss Warranty Act)**

7         Plaintiffs bring only a single federal claim, one for breach

8    of written warranty under the federal Magnuson-Moss Warranty Act

9    ("MMWA").  Compl. ¶¶ 60-70.  The MMWA creates a civil cause of

10   action for consumers to enforce the terms of implied or express

11   warranties.  15 U.S.C. § 2310(d).

12        As a threshold matter, the Court considers whether Plaintiffs

13   meet MMWA's jurisdictional requirements.  Under § 2310(d)(1)(B),

14   private parties may bring a MMWA claim in federal district court.

15   Id. § 2310(d)(1)(B).  However, if the action is brought on behalf

16   of a class, as this one is, a district court may not hear the claim

17   if "the number of named plaintiffs is less than one hundred."  Id.

18   § 2310(d)(3)(C).  Defendant argues that Plaintiffs' MMWA claim must

19   be dismissed because, here, the number of named plaintiffs is only

20   two.  See Mot. at 10.  Plaintiffs respond that "numerous courts

21   have found such prerequisites to be irrelevant when, as here, a

22   court has jurisdiction under the Class Action Fairness Act, 28

23   U.S.C. § 1332(d) ('CAFA')."  Opp'n at 24.  Though Plaintiffs do not

24   provide a citation to any of those "numerous" opinions or attempt

25   to demonstrate that this case satisfies CAFA's jurisdictional

26

27   more agreements requiring Ocwen to provide various services to
     plaintiff."  Id. at 1201.  In the case at bar, nothing suggests
28   that Defendant entered any agreement with Ms. Sethavanish to
     provide anything to Mr. Colucci.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

prerequisites, their conclusion is correct.  See <u>Keegan v. Am.</u>
<u>Honda Motor Co., Inc.</u>, 838 F. Supp. 2d 929, 954-55 (C.D. Cal. 2012)
(collecting cases holding that Congress's passage of CAFA
supplanted the jurisdictional requirements of the earlier-enacted
MMWA).  Plaintiffs need not satisfy the numerosity requirements of
the MMWA, only the jurisdictional requisites of CAFA, and they have
done so here.[5]

Proceeding, then, to the merits of Plaintiffs' MMWA claim, the
Court concludes that the claim fails as a matter of law.
Plaintiffs allege a breach of written warranty.  Compl. ¶¶ 65-67.
The MMWA defines a written warranty as follows:

> any written affirmation of fact or written
> promise made in connection with the sale of a
> consumer product by a supplier to a buyer which
> relates to the nature of the material or
> workmanship and affirms or promises that such
> material or workmanship is <u>defect free or will</u>
> <u>meet a specified level of performance over a</u>
> <u>specified period of time</u>.

15 U.S.C. § 2301(6)(A) (emphasis added).  The MMWA's disjunctive
language ("or") identifies two kinds of written warranties, the
first warranting a "defect free" product and the second warranting
a product that will "meet a specified level of performance over a
specified period of time."  Plaintiffs allege only the first kind,
a "defect free" warranty; specifically, they allege that the
nutrition bars' "All-Natural" representation constitutes "a written
promise that the ingredients in the Nutrition Bars were free of a

---

[5] <u>See</u> 28 U.S.C. § 1332(d)(2) (provisions of CAFA giving district
courts jurisdiction over class actions where any class member is
diverse from any defendant and more than $5 million is in
controversy); Compl. (alleging complete diversity of named parties
and placing in controversy more than $5 million).

**United States District Court**
For the Northern District of California

1   particular type of defect (i.e., that they were not synthetic or

2   artificial)."  Compl. ¶ 66.

3        The Court concludes that Plaintiffs' claim fails as a matter

4   of law.  Plaintiffs allege that the actionable defect here is the

5   artificiality or synthetic nature of the ingredients in the

6   nutrition bars.  The identical argument has been rejected in many

7   other cases.  <u>E.g.</u>, <u>Larsen v. Trader Joe's Co.</u>, C 11-05188 SI, 2012

8   WL 5458396, at *3 (N.D. Cal. June 14, 2012) ("[T]his Court is not

9   persuaded that being 'synthetic' or 'artificial' is a 'defect.'");

10  <u>Dreyer's Grand Ice Cream</u>, 2012 WL 2990766, at *2-4 (same, and

11  collecting cases).  This Court finds the reasoning of those cases

12  persuasive and adopts it here.  Plaintiffs fail to marshal any

13  persuasive authority that artificial or synthetic ingredients in

14  otherwise unobjectionable food products amount to an actionable

15  defect under the MMWA.  Accordingly, Plaintiffs' MMWA claim is

16  DISMISSED.  Because amendment could not save the claim, the

17  dismissal is WITH PREJUDICE.[6]

18  _____

[6] In Defendant's Notice of Removal, the only stated grounds for
19  subject-matter jurisdiction are federal-question and supplemental
    jurisdiction.  <u>See</u> NOR ¶¶ 6-8.  Hence, the Court's dismissal of
20  Plaintiffs' only federal claim raises the question of whether the
    Court should exercise its discretion to remand Plaintiffs' seven
21  remaining state-law claims.  The Court is plainly authorized to do
    so.  <u>See</u> 28 U.S.C. § 1362(c); <u>Carnegie-Mellon Univ. v. Cohill</u>, 484
22  U.S. 343 (1988).  <u>Cohill</u> authorizes district courts to remand state
    law claims over which it exercises only supplemental jurisdiction
23  after all federal claims have been dismissed.  <u>See Carlsbad Tech.,
    Inc. v. HIF Bio, Inc.</u>, 556 U.S. 635, 637 (2009).  Not only is
24  remand authorized in such cases, but usually "the balance of
    factors to be considered [. . .] -- judicial economy, convenience,
25  fairness, and comity -- will point toward" remand.  <u>Cohill</u>, 484
    U.S. at 350 n.7.  The Court concludes, however, that this is not
26  the usual case.  As previously explained, this case satisfies
    CAFA's jurisdictional requirements.  Further, because the Complaint
27  alleges complete diversity between the parties and places more than
    $75,000 in controversy, Defendant could have removed on diversity
28  grounds.  Given the existence of grounds for subject-matter
    jurisdiction separate from those named in Defendant's Notice of

**United States District Court**
For the Northern District of California

C.   **State Law Claims**

1.   **Preemption**

Defendant argues that Plaintiffs' state-law claims "stand[] as an obstacle to federal law and policy, and so should be dismissed as preempted." Mot. at 11.   Preemption doctrine flows from the Supremacy Clause of Article VI of the U.S. Constitution, which provides that federal law is the "supreme law of the land."  Under this provision of the Constitution, "Congress has the power to preempt state law." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000).  Thus, in all preemption cases, congressional intent is the "ultimate touchstone" of preemption analysis.  See Altria Group, Inc. v. Good, 555 U.S. 70, 76 (2008).  Congressional intent to preempt state law may be found if the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Kroske v. U.S. Bank Corp., 432 F.3d 976, 981 (9th Cir. 2005) (quoting English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990)).  This "implied obstacle" or "conflict" preemption theory is the only one Defendant argues here.

The Court notes, however, that the Ninth Circuit opinion on which Defendant rests its argument was vacated during the pendency of this motion.  See Degelmann v. Advanced Med. Optics, Inc., 659 F.3d 835 (9th Cir. 2011) vacated sub nom. Degelmann v. Advanced Med. Optics Inc., 699 F.3d 1103 (9th Cir. 2012); see also Mot. at 11-12, Reply at 11-12 (arguing that Degelmann controls in this case).  In the absence of viable authority, the Court declines to

---

Removal, the Court declines to exercise its discretion to remand Plaintiffs' remaining state-law claims.  Nothing would stop Defendant from simply removing again, and such a result would hardly be economical, convenient, or fair.

**United States District Court**
For the Northern District of California

1  entertain Defendant's preemption argument at this time -- without,

2  however, any prejudice to Defendant's right to raise preemption

3  arguments in further proceedings before this Court.

4         **2.  Plausibility and Particularity**

5      Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff

6  to set forth "a short and plain statement of the claim showing that

7  the pleader is entitled to relief."  The Supreme Court has held

8  that Rule 8 requires that a complaint's well-pleaded allegations,

9  if taken as true, must "<u>plausibly</u> give rise to an entitlement to

10  relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009) (emphasis

11  added).  Determining the plausibility of allegations is "a context-

12  specific task that requires the reviewing court to draw on its

13  judicial experience and common sense."  <u>Id.</u>

14      Rule 9(b) imposes a higher pleading standard on, inter alia,

15  claims that sound in fraud.  For such claims, "the circumstances

16  constituting fraud" must be "state[d] with particularity."  Fed. R.

17  Civ. P. 9(b).  This "particularity" standard means that a plaintiff

18  "must identify the who, what, when, where, and how of the

19  misconduct charged, as well as what is false or misleading about

20  the purportedly fraudulent statement, and why it is false."

21  <u>Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d

22  1047, 1055 (9th Cir. 2011) (internal quotation marks and brackets

23  omitted).  States of mind, however, including intent, "may be

24  alleged generally."  Fed. R. Civ. P. 9(b).

25      In the case at bar, Defendant argues that the Court should

26  dismiss Plaintiffs' state-law claims as implausible or, to the

27  extent they sound in fraud, as lacking particularity.  Mot. at 14-

28  21; Reply at 2-6.  The argument is unavailing.  First, as to

1   plausibility, the Ninth Circuit has made plain that UCL, FAL, and

2   CLRA claims, like those asserted by Plaintiffs here, turn on the

3   application of a "reasonable consumer" standard.  See Williams v.

4   Gerber Products Co., 552 F.3d 934, 938-40 (9th Cir. 2008).

5   Defendant's argument as to plausibility is, at bottom, an argument

6   that no reasonable consumer is likely be deceived by the labeling

7   of its nutrition bars.  But, as the Ninth Circuit and numerous

8   courts have held, that issue is generally not amenable to

9   resolution on the pleadings because it involves issues of fact.

10  See id.; see also, e.g., Dreyer's Grand, 2012 WL 2990766, at *11;

11  Hershey, 2012 WL 5471153, at *7; Vicuna v. Alexia Foods, Inc., C

12  11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012);

13  Astiana v. Ben & Jerry's Homemade, Inc., C 10-4387 PJH, 2011 WL

14  2111796, at *4 (N.D. Cal. May 26, 2011).  The questions of (1)

15  whether it would be reasonable for a consumer to believe the

16  nutrition bars' claim to be "All-Natural" and (2) whether the

17  nutrition bars' labels are "likely to deceive," are both factual

18  inquiries beyond the scope of the present inquiry into the "legal

19  sufficiency" of the Complaint.  Cf. APL Co. Pte. Ltd. v. UK

20  Aerosols Ltd., Inc., 452 F. Supp. 2d 939, 942 (N.D. Cal. 2006)

21  (Rule 12(b)(6) motion tests sufficiency of pleading, not merits).

22      The Court also rejects Defendant's arguments that the

23  Complaint's allegations of fraud are insufficiently particular.

24  Defendant argues first that Plaintiffs have failed to allege the

25  required element of "specific intent" with particularity.  The

26  argument fails because Rule 9(b) permits states of mind, including

27  intent, to be pled generally.  Second, Defendant cites a recent

28  case from this District where the Court dismissed similar legal

1   claims as having been pled with insufficient particularity, but the

2   case is distinguishable. See Wang v. OCZ Tech. Group, Inc., 276

3   F.R.D. 618 (N.D. Cal. 2011). In Wang, the plaintiff failed to

4   allege how the challenged product -- a computer storage drive --

5   "f[ell] short of its advertised qualities, e.g., actual versus

6   expected capacity of his drive and actual versus expected

7   performance speed." Id. at 628. By citing to this case, Defendant

8   appears to suggest that Plaintiffs, too, have not alleged with

9   particularity how the purchased nutrition bars fell short of their

10  advertised qualities, in other words, how the advertising was

11  false. The suggestion is unavailing. Plaintiffs allege that the

12  bars were labeled "All-Natural" but in fact were not.

13      The Court is cognizant of Defendant's argument which purports

14  to show how the Complaint's "central premise" -- that the "All-

15  Natural" statement on the nutrition bars is deceptive because

16  federal regulations describe some of the bars' ingredients as

17  "synthetic" -- is false. See Mot. at 15-17; Reply at 3-4.

18  Defendant explains at length why "synthetic" ingredients are not in

19  fact unnatural, in the sense of being found "in nature." Defendant

20  points out that Plaintiffs admit that certain of the challenged

21  ingredients are naturally occurring compounds (for instance,

22  vitamins) or "common and normally expected to be in foods" like the

23  nutrition bars. Defendant asserts that this makes the ingredients,

24  if not quite "natural," then not unnatural, and concludes that,

25  therefore, "there is no basis for concluding that the [nutrition]

26  bars are mislabeled." Defendant may be correct as a matter of

27  fact, but factual matters are not amenable to resolution at the

28  pleading stage.

**United States District Court**
For the Northern District of California

1    In a similar vein, Defendant submits a request for judicial

2   notice with six exhibits, the first five of which are screenshots

3   of the websites of purportedly health-conscious grocery stores.

4   ECF No. 27 ("RJN") Exs. 1-5.   In the screenshots, the grocery

5   stores mention ingredients which are also used in Defendant's

6   nutrition bars.   Defendant points to these representations by the

7   non-party grocery stores to "show[] the implausibility of any

8   reasonable consumer being deceived" by the "All-Natural" claim on

9   Defendant's packaging, since products containing the same

10  ingredients are sold at the purportedly health-conscious grocery

11  stores.   Mot. at 18-19.   The Court rejects this argument as

12  untenable at the pleading stage.   The Court is not inclined to

13  assume the role of fact-finder in the guise of determining

14  plausibility.   "The plausibility standard is not akin to a

15  probability requirement . . . ."   Iqbal, 556 U.S. at 678 (internal

16  quotation marks omitted).   Because Defendant's RJN essentially asks

17  the Court to make a factual finding at the pleading stage, the RJN

18  is DENIED as to Exhibits 1 through 5.

19   Defendant presents no reason to dismiss Plaintiffs' state-law

20  claims as implausible or lacking particularity.   Accordingly, the

21  Court DENIES Defendant's motion to dismiss the state-law claims on

22  those grounds.   Because those are the only grounds on which

23  Defendant challenged Plaintiffs' common-law fraud, UCL, and FAL

24  claims (claims 2 through 6), those claims remain undisturbed.

25       **3.   CLRA Notice**

26   Defendant argues that Plaintiffs' seventh claim, asserting

27  violations of the CLRA, must be dismissed as procedurally

28  deficient.   Section 1782(a) of the CLRA requires that "[t]hirty

United States District Court
For the Northern District of California

1    days or more prior to the commencement of an action for damages

2    pursuant to this title, the consumer shall . . . [n]otify the

3    person alleged to have" violated the CLRA "of the particular

4    alleged violations" and "[d]emand that the person correct, repair,

5    replace, or otherwise rectify" the violations.  Cal. Civ. Code §

6    1782(a).  Defendant argues that Plaintiffs failed to comply with

7    this pre-suit notice provision because they sent a demand letter to

8    Defendant on August 30, 2011 but then filed a suit for damages in

9    California Superior Court on September 14, 2011.  See RJN Ex. 6

10   ("Aug. 30, 2011 Letter").[7]  Defendant argues that even if the

11   letter had been timely, it failed to detail the CLRA violations

12   with sufficient particularity.  Lastly, Defendant argues that

13   failure to provide proper notice requires dismissal with prejudice

14   of Plaintiffs' CLRA claim, because later notice and amendment

15   cannot, as a matter of law, cure the initial failure to provide

16   notice.  Mot. at 23-24.

17        Defendant's position is unavailing.  Plaintiffs sent their

18   CLRA notice letter on August 30, 2011, and filed the action now at

19   bar on April 26, 2012 -- nearly eight months later.  Defendant

20   makes much of the fact that Plaintiffs are on their third complaint

21   in their second case against Defendant.  The first case only

22   matters to the second, however, if it has some sort of preclusive

23   _____

24   [7] Defendant asks the Court to take judicial notice of the August
     30, 2011 Letter.  The Court declines to do so because it is neither
25   a fact generally known nor is it the type of source whose accuracy
     "could not reasonably be questioned." Fed. R. Evid. 201.  The
26   Court will, however, consider the letter under the doctrine of
     incorporation by reference.  Under that doctrine, it is sufficient
27   that no party questions the authenticity of the document and that
     the document's contents are alleged in the complaint.  Knievel v.
28   ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).  Those conditions are
     satisfied here.  See Compl. ¶¶ 45-47.

**United States District Court**
For the Northern District of California

effect.  Here, it does not, whether one looks to federal preclusion law or to the preclusion rules of the California state court where the instant case was initially filed.[8]  Accordingly, the Court gives no preclusive effect to the first, voluntarily dismissed lawsuit.  The CLRA notice letter was sent eight months before commencement of the case now before this Court and thus was not untimely for purposes of section 1782(a).

Defendant's argument that the letter lacked sufficient detail is similarly unavailing.  Notice need only "give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements."  Stickrath v. Globalstar, Inc., 527 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2007) (quoting Outboard Marine Corp. v. Superior Court, 52 Cal. App. 3d 30, 40 (Cal. Ct. App. 1975)).  Defendant, challenged on this point in Plaintiffs' opposition, essentially concedes it by declining to respond in the reply brief.  Having reviewed the August 30, 2011 Letter, the Court concludes that it adequately notified Defendant

_____

[8] As to federal law, "[c]laim preclusion, or res judicata, bars successive litigation of the very same claim following a final adjudication on the merits involving the same parties or their privies."  Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1159 (9th Cir. 2002) (internal quotation marks omitted).  However, voluntary dismissals are not judgments "on the merits" unless specifically so stated or the claim has been voluntarily dismissed more than once.  See Fed. R. Civ. P. 41(a)(1)(B).  As to the preclusive effect of California law, under 28 U.S.C. § 1738, this Court "must give the same preclusive effect to a state court judgment as the state courts of that state would themselves give to that judgment," Noel v. Hall, 341 F.3d 1148, 1159 (9th Cir. 2003), and California courts do not give preclusive effect to voluntary dismissals without prejudice, see In re Estate of Redfield, 193 Cal. App. 4th 1526, 1534 (Cal. Ct. App. 2011) ("Application of the doctrine of res judicata requires an affirmative answer to" the question "Was there a final judgment on the merits?"); Syufy Enterprises v. City of Oakland, 104 Cal. App. 4th 869, 879 (Cal. Ct. App. 2002) ("By definition, a voluntary dismissal without prejudice is not a final judgment on the merits.").

United States District Court
For the Northern District of California

1    of the alleged defect, which was the use of allegedly synthetic or

2    artificial ingredients in Defendant's nutrition bars.

3         **4.   Restitution Based on Quasi-Contract**

4         Plaintiffs' eighth and final claim is pled in the alternative.

5    Compl. ¶¶ 114-16.  Plaintiffs style this claim as one for

6    "Restitution Based On Quasi-Contract."  <u>Id.</u>  Defendant seeks

7    dismissal of this claim on two grounds.  First, Defendant argues

8    that Plaintiffs have failed to plausibly plead that Defendant's

9    nutrition bars are not natural and hence have failed to plead the

10   existence of a fraud that would make Defendant's enrichment

11   "unjust."  Second, Defendant argues that Plaintiffs cannot bring a

12   claim for unjust enrichment, even in the alternative, because they

13   have already sued in tort.  <u>See</u> Mot. at 24-25; Reply at 14-15.

14        Defendant's first argument fails because it is predicated on

15   plausibility arguments that the Court already rejected.  <u>See</u>

16   Section III.C.2 <u>supra</u>.  Defendant's second argument, however,

17   presents a closer question.  Defendant begins its discussion with

18   the observation that "courts have inconsistently dealt" with

19   restitution claims.  Mot. at 24.  "Inconsistent" is an

20   understatement.  Some of the cases emphasize that unjust enrichment

21   or restitution -- the terms are synonymous[9] -- is not a cause of

22   action, but rather a remedy.  Some state that unjust enrichment is

23   neither a claim nor a remedy, but a "principle."  Some state that

24   unjust enrichment is indeed a cause of action, but one that may not

25   be pled alongside claims for breach of contract or tort.  Yet

---

[9] <u>Cf.</u> <u>McBride v. Boughton</u>, 123 Cal. App. 4th 379, 387 (Cal. Ct.
App. 2004) ("Unjust enrichment is not a cause of action . . . or
even a remedy, but rather a general principle, underlying various
legal doctrines and remedies[.]  It is synonymous with
restitution." (internal quotation marks and citations omitted)).

others come to the slightly different conclusion that these claims may be pled alongside contract and tort claims, but only as an alternative, "fallback" claim in the event that the contract or tort claims fail.  Finally, some courts appear to elide the issue entirely and simply analyze whether the plaintiff has adequately pled the "elements" of the "claim."  The outcome of some motions appears to have turned on the words used in the caption to describe the cause of action.

Having reviewed numerous discussions, this Court is persuaded by, and adopts the reasoning of, the cases which hold that claims for restitution or unjust enrichment may survive the pleading stage when pled as an alternative avenue of relief, though the claims, as alternatives, may not afford relief if other claims do.  E.g., Alexia Foods, 2012 WL 1497507, at *3; Trader Joe's, 2012 WL 5458396, at *7; Ben & Jerry's, 2011 WL 2111796, at *11. Accordingly, the Court declines to dismiss Plaintiffs' alternative "claim" for restitution based on quasi-contract.  However, "to the extent that plaintiffs are ultimately able to prevail under a tort theory, they will be precluded from also recovering under a claim of unjust enrichment."  Trader Joe's, 2012 WL 5458396, at *7.


IV.   **CONCLUSION**

The Court ORDERS Plaintiff James Colucci dismissed from this action for lack of standing.  The Clerk shall administratively terminate Mr. Colucci in ECF.  Plaintiff Kimberly S. Sethavanish has standing to pursue the claims set forth in the Complaint with respect to all twenty brands of Defendant ZonePerfect Nutrition Company's nutrition bars identified in the Complaint.

1    As to the merits, the Complaint's first claim for relief,

2 arising under the Magnuson-Moss Warranty Act, is DISMISSED WITH

3 PREJUDICE.   The other seven claims set out in the Complaint remain

4 undisturbed.

5

6    IT IS SO ORDERED.

7

8    Dated: December 28, 2012            

9                                        UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California