Janet Lindner Spielberg (SBN 221926)
**LAW OFFICES OF JANET
    LINDNER SPIELBERG**
12400 Wilshire Boulevard, #400
Los Angeles, California  90025
Tel:  (310) 392-8801
Fax:  (310) 278-5938
Email: jlspielberg@jlslp.com

Michael D. Braun (SBN 167416)
**BRAUN LAW GROUP, P.C.**
10680 West Pico Boulevard, Suite 280
Los Angeles, California  90064
Tel:  (310) 836-6000
Fax:  (310) 836-6010
Email: service@braunlawgroup.com

Joseph N. Kravec, Jr. (admitted *pro hac vice*)
Wyatt A. Lison (admitted *pro hac vice*)
**FEINSTEIN DOYLE PAYNE
    & KRAVEC LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA  15219
Tel:  (412) 281-8400
Fax:  (412) 281-1007
Email:jkravec@fdpklaw.com
Email:wlison@fdpklaw.com

*ATTORNEYS FOR PLAINTIFF*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| KIMBERLY S. SETHAVANISH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZONEPERFECT NUTRITION COMPANY, a Delaware corporation,<br><br>Defendant. | CASE NO.: 3:12-CV-02907 SC<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:   November 8, 2013<br>Time:  10:00 a.m.<br>Location: Courtroom 1, 17th Floor |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ....................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT ....................................2

I.      INTRODUCTION ....................................................................................................2

II.     COMMON EVIDENCE ADDUCED TO DATE.....................................................4

    A.      ZonePerfect Used Common Labels and Identical Misrepresentations on Its
        Nutrition Bars' Labels Throughout the Class Period...........................................4

    B.      ZonePerfect Used Common Non-Natural Ingredients in the Nutrition Bars
        Throughout the Class Period.................................................................................4

    C.      Common Evidence Establishes that "All-Natural" is Unlawful and Signifies To
        Consumers the Absence of Synthetic Ingredients ...............................................6

    D.      Common Evidence Shows that ZonePerfect's "All-Natural" Claim Is Material
        To Purchasers' Decision to Buy Nutrition Bars ..................................................8

    E.      Additional Common Evidence Corroborates The Materiality of ZonePerfect's "All-
        Natural" Claims ...................................................................................................9

    F.      ZonePerfect's Nutrition Bars Are A Single Product Line .................................10

    G.      Class-wide Relief Can Be Proved on a Common Basis .....................................11

III.    THIS COURT CAN CERTIFY A NATIONWIDE CLASS AS ZONEPERFECT'S
       CONDUCT EMANATES FROM CALIFORNIA....................................................12

IV.     THE REQUIREMENTS FOR CERTIFICATION PURSUANT TO FED.R.CIV.P. 23(a)
       AND 23(b)(3) ARE MET ........................................................................................12

    A.      Standard ..............................................................................................................12

    B.      Rule 23(a)(1) – Numerosity ...............................................................................13

    C.      Rule 23(a)(3) – Typicality .................................................................................14

    D.      Rule 23(a)(4) – Adequacy of Representation .....................................................15

    E.      Rule 23(a)(2) Commonality / Rule 23(b)(3) Predominance ..............................16

        1.      Common Questions Exist for Plaintiff and the Class .......................................17

2.    Common Questions of Law Predominate As To Plaintiff's Consumer
      Protection Claims ........................................................................18

3.    Common Questions of Law Predominate As To Plaintiff's Common Law Fraud
      and Quasi Contract Claims ..........................................................20

4.    Individual Issues of Damages Do Not Predominate ...............................21

F.    Rule 23(b)(3) – Superiority.......................................................21

1.    Rule 23(b)(3)(A) ......................................................................21

2.    Rule 23(b)(3)(B) ......................................................................22

3.    Rule 23(b)(3)(C) ......................................................................22

4.    Rule 23(b)(3)(D) ......................................................................22

V.   CONCLUSION................................................................................23

1

**TABLE OF AUTHORITIES**

2

3 <u>**CASES**</u>

4 *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................ 17

5 *Astiana v. Dreyers Grand Ice Cream, Inc.*, 2012 WL 2990766, (N.D. Cal. July 20, 2012) ............ 10, 11

6 *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558 (S.D. Cal. 2012) ........................................ passim

7 *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ..................................................... 21

8 *Bruno v. Eckart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012) ............................................... 12

9 *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) .................................. 21, 22

10 *Cf. Comcast v. Behrend*, --- S.Ct. ----, 2013 WL 1222646 (2013) ..................................... 21

11 *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D.Cal 2010) ............................. passim

12 *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 80 Cal. Rptr. 2d 329, 354 (1998) ................................................................................ 20

13 *Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978) .................................................... 13

14 *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ................................................... 13

15 *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir.2011) ........................................ 13

16 *Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388 (Cal. Ct. App. 2002) ....................... 19

17 *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir.1977) .............................. 13

18 *Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982) .................................................... 13, 16

19 *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468 (C.D. Cal. 2012) ........................................ 21

20 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................... 14, 15, 17

21 *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir.1992) ............................................ 14

22 *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir.1964) ............................ 13

23 *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974) ................................. 22

24 *Holk v. Snapple Beverage Corp.*, 575 F.3d 329 (3d Cir. 2009) ......................................... 7

25 *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1998) ..................................... 13

26 *In re Emulex Corp.*, 210 F.R.D. 717 (C.D. Cal. 2002) ................................................. 16

27 *In re Ferrero*, 278 F.R.D. 552 (S.D. Cal. 2011) ............................................... 3, 16, 18

28

1    *In re POM Wonderful*, 2012 WL 4490860 (C.D.Cal. 2012) .......................................... 3, 12, 18

2    *In re Steroid Hormone Prod. Cases*, 181 Cal.App.4th 145 (Cal. Ct. App. 2010) ................................. 19

3    *In re Tobacco II Cases*, 46 Cal.4th 298 (Cal. 2009) ................................................... 19

4    *In re Worldcom Inc. Sec. Litig.*, 219 F.R.D. 267 (S.D.N.Y. 2003)..................................... 22

5    *Johns v. Bayer Corp.*, 280 F.R.D. 551 (S.D.Cal., 2012)................................... 3, 15, 18, 21

6    *Johnson v. General Mills, Inc.*, 276 F.R.D. 519 (C.D.Cal.2011) .................................... 3, 18

7    *Jordan v. Paul Financial, LLC*, 285 F.R.D. 435 (N.D.Cal. 2012) ..................................... 23

8    *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ............................................. 12

9    *Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010) .......................... 10

10   *Kwikset Corp. v. Sup. Ct.*, 51 Cal.4th 310 (Cal. 2011) ..................................................... 10

11   *Larsen v. Trader Joe's Co.*, --- F.Supp.2d ----, 2013 WL 132442 (N.D.Cal., 2013)................... 6

12   *Mass. Mut. Life Ins. Co v. Sup. Ct.*, 97 Cal. App. 4th 1282 (Cal. Ct. App. 2002)................................. 19

13   *Mazza v. Am. Honda Motor Co.*, Inc., 666 F.3d 581 (9th Cir. 2012) ...................................... 12

14   *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457 (2006) ........................................ 20

15   *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir.1983) ......................................... 13

16   *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735 (Cal. Ct. App. 1980) ...................... 18

17   *Pacific States Box & Basket Co. v. White*, 296 U.S. 176 (1935) .......................................... 5

18   *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ................. 22

19   *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir.2010) .................................................. 14, 17

20   *Rogge v. U. S.*, 128 F.2d 800 (9th Cir. 1942)............................................................ 5

21   *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (Cal. Ct. App. 1999) .... 18

22   *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir.2003) ..................................................... 15

23   *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011).......................................... 19

24   *Swanson v. American Consumer Indus*, 415 F.2d 1326 (7th Cir. 1969)..................................... 13

25   *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814, 484 P.2d 964 (1971).................................. 20

26   *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011)..................................... 12, 16, 17

27   *Washington Mutual Bank v. Superior Court*, 24 Cal.4th 906, 103 Cal.Rptr.2d 320,
     15 P.3d 1071 (Cal 2001) ........................................................................ 12

28

Case No. CV 12-2907 SC

Notice of Motion and Motion for Class Certification;
Memorandum and Points and Authorities in Support

*West v. Circle K Stores, Inc.*, 2006 WL 1652598 (E.D. Cal. June 12, 2006) .......................... 22

*Williams v. Gerber Prods.*, 552 F.3d 934 (9th Cir. 2008) ........................................... 19

*Zeisel v. Diamond Foods*, Inc., 2011 WL 2221113 (N.D.Cal., 2011) ........................... 3, 16, 18

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir.2001) ........................... 12

## STATUTES

21 U.S.C. § 301 .......................................................................................... 3

21 U.S.C. § 343(a)(1) ............................................................................... 18

Cal.Civ.Code § 1770(a)(5) ....................................................................... 19

Cal.Civ.Code § 1770(a)(7) ....................................................................... 19

Cal.Civ.Code § 1770(a)(9) ....................................................................... 19

Cal. Health & Safety Code § 110660 ..................................................... 3, 18

California Business & Professions Code l7500 ............................................ 3

California's Business and Professions Code section 17200 .......................... 3

## RULES

Fed.R.Civ.P. 23 ........................................................................................ 13

Fed. R. Civ. P. 23(a) ...................................................................... 1, 12, 13, 15

Fed. R. Civ. P. 23(a)(1) ...................................................................... 13, 14

Fed. R. Civ. P. 23(a)(2) ........................................................................ 7, 18

Fed. R. Civ. P. 23(a)(3) ............................................................................ 14

Fed.R.Civ.P. 23(a)(2) ............................................................................... 18

Fed.R.Civ.P. 23(a)(3) ............................................................................... 14

Fed.R.Civ.P. 23(a)(4) ............................................................................... 15

Fed.R.Civ.P. 23(b)(3) ......................................................................... passim

Rule 23(b)(3)(A) ..................................................................................... 21

Rule 23(b)(3)(B) ..................................................................................... 22

Rule 23(b)(3)(C) ..................................................................................... 22

Rule 23(b)(3)(D) ................................................................................. 22, 23

v

1    Fed.R.Civ.P. 23(g)(1)..................................................................................................4

2    **REGULATIONS**

3    21 C.F.R. § 172.515.....................................................................................................5

4    21 C.F.R. § 172.842.....................................................................................................5

5    21 C.F.R. § 172.866.....................................................................................................5

6    21 C.F.R. § 178.3500...................................................................................................5

7    21 C.F.R. § 182.3890...................................................................................................5

8    21 C.F.R. § 184.1212...................................................................................................5

9    21 C.F.R. § 184.1676...................................................................................................5

10   21 C.F.R. § 184.1890...................................................................................................5

11   62 Fed. Reg. 49826, 49841 .........................................................................................7

12   7 C.F.R. § 205.605(b) ..................................................................................................5

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

vi

## NOTICE OF MOTION AND MOTION

TO DEFENDANT AND ITS ATTORNEYS OF RECORDS:

PLEASE TAKE NOTICE that, on November 8, 2013, at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-captioned Court located at 450 Golden Gate Ave., 17th Floor, Courtroom 1, San Francisco, California 94102, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiff Kimberly S. Sethavanish will and hereby does move this Court to certify her claims against Defendant ZonePerfect Nutrition Company ("Defendant" or "ZonePerfect"), based upon its false and misleading labeling of its All-Natural Nutrition Bars as "All-Natural," when those nutrition bars contained synthetic ingredients, to appoint Plaintiff Kimberley S. Sethavanish as class representative, and to appoint the following attorneys as Class Counsel: Joseph N. Kravec, Jr. of Feinstein Doyle Payne & Kravec, LLC, Michael D. Braun of the Braun Law Group, P.C., and Janet Lindner Spielberg of the Law Offices of Janet Lindner Spielberg.[1]

Plaintiff moves this Court to certify her claims on behalf of a Class defined as:

> All persons who purchased ZonePerfect Nutrition Company's All-Natural Nutrition Bars in the United States on or after September 14, 2007 that were labeled "All-Natural" but which contained one or more of the following non-natural ingredients: Ascorbic Acid, Calcium Pantothenate, Calcium Phosphate, Glycerine, Cocoa Processed with Alkali, Pyridoxine Hydrochloride, Disodium Phosphate, Sorbitan Monostearate, Tocopherols or Xanthan Gum.

Excluded from the Class are: (i) ZonePerfect and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned and any members of their immediate families.

The proposed Class is certifiable under Fed. R. Civ. P. 23(a) and 23(b)(3), as Plaintiff's and the Class's claims are each based upon Defendant's standardized misconduct in falsely and misleadingly labeling its Nutrition Bars in violation of the Federal Food Drug and Cosmetic Act, as amended, and California law.

The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum and Points of Authorities in Support of Motion for Class Certification, the Declaration of Joseph N. Kravec,

---

[1] If this Court determines that nationwide certification is not appropriate, Plaintiff moves in the

1

Jr. in Support of the Motion for Class Certification, the Proposed Order, the files and records in this case, and such argument and further filings and evidence as this Court may receive on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

### I.    INTRODUCTION

Plaintiff Kimberly S. Sethavanish ("Plaintiff") seeks nationwide (or alternatively multi-state or state-wide) certification of her claims in this class action against ZonePerfect Nutrition Company ("ZonePerfect") on behalf of herself and a Class defined as: All persons who purchased ZonePerfect Nutrition Company's Nutrition Bars in the United States on or after September 14, 2007 that were labeled "All-Natural" but which contained one or more of the following non-natural ingredients: Ascorbic Acid, Calcium Pantothenate, Calcium Phosphate, Glycerine, Cocoa Processed with Alkali, Pyridoxine Hydrochloride, Disodium Phosphate, Sorbitan Monostearate, Tocopherols or Xanthan Gum. ¶¶ 1, 52 [2,3].

Plaintiff was harmed by this false and misleading labeling as she purchased the ZonePerfect nutrition bars (hereafter "Nutrition Bars") believing that the ingredients in them were "All-Natural" as the labels represented. Unbeknownst to the Plaintiff, and the class of consumers she seeks to represent, they did not receive the "All-Natural" Nutrition Bars they paid for.   ¶ 8.  Despite the "All-Natural" labeling, ███████████████████████████████████████████████████████ ███████████████████"  Kravec Decl. Exhibit 3.  Through the use of this false and misleading labeling, ZonePerfect has been able to sell these Nutrition Bars as  "All-Natural," despite containing synthetic

<hr>

alternative for certification of her claims on behalf of state or multi-state classes.

[2]  All "¶__" references are to Plaintiff's Class Action Complaint, and at all times emphasis is added and citations are omitted unless otherwise indicated.  A copy of the Complaint is attached to ZonePerfect's Notice of Removal (Dkt. No. 1).  This copy is black-and-white, difficult to view clearly and omits the Complaint's exhibits.  As such, Plaintiff has attached a color copy of the Complaint and its exhibits. *See* Kravec. Decl. Exhibit 2.

[3]  The ZonePerfect products are shown and listed at ¶ 42, and exemplars of the corresponding "All-Natural" labels are at Exhibit 1 to the Declaration of Joseph N. Kravec, Jr. in Support of Plaintiff's Motion for Class Certification ("Kravec Decl.") filed herewith.

2

Case No. CV 12-2907 SC                    Notice of Motion and Motion for Class Certification;
                                          Memorandum and Points and Authorities in Support

substances, to thousands of unsuspecting consumers in California and throughout the United States. ¶ 3.[4]

Courts within this Circuit and in this District routinely certify litigation classes for similar food and other product mislabeling claims. *See, e.g.*, *In re POM Wonderful Marketing and Sales Practices Litig.*, No. ML 10-02199 DDP, 2012 WL 4490860, *1 (C.D.Cal. Sept. 28, 2012); *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 564 (S.D.Cal. 2012); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 559 (S.D.Cal., 2012); *In re Ferrero*, 278 F.R.D. 552, 556 (S.D.Cal. 2011); *Johnson v. General Mills, Inc.*, 276 F.R.D. 519, 521 (C.D.Cal.2011); *Zeisel v. Diamond Foods*, Inc., No. C 10–01192 JSW, 2011 WL 2221113, *1 (N.D.Cal. June 7, 2011); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 369 (N.D.Cal 2010). The predominately common evidence adduced in this case similarly supports certification of a nationwide class here.

While fact discovery is ongoing, evidence adduced to date demonstrates that Class members' claims each arise from ZonePerfect's uniform course of conduct, and that all the factual issues necessary to resolve Plaintiff's and class members' dispute with ZonePerfect are common issues that can be proven on a class-wide basis through documents, testimony of key corporate personnel, and publically available consumer research and marketing studies. Specifically, the evidence shows throughout the class period that: 1) the Nutrition Bars had common labels containing common "All-Natural" misrepresentations; 2) the Nutrition Bars contained common non-natural synthetic ingredients; 3) the Nutrition Bars' "All-Natural" claim signifies to consumers the absence of non-natural synthetic ingredients; 4) according to ZonePerfect's own records and corporate representative testimony, the "All-Natural" claim is material to consumers' decision to purchase food products such as the Nutrition Bars; 5) Plaintiff purchased ZonePerfect's Nutrition Bars with the materially identical "All-Natural" label as all other class members; 6) the restitution, restitutionary disgorgement and

---

[4] Based upon the above, Plaintiff alleges that ZonePerfect's false and misleading conduct violates the Food Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, as amended, and California's Sherman Food, Drug and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 110660. Plaintiff further alleges that ZonePerfect's conduct violates the unlawful, unfair and fraudulent prongs of California's Business and Professions Code section 17200, *et. seq.* (the "UCL"), the California Business & Professions Code l7500 *et. seq.* (the "FAL"), the Consumer Legal Remedies Act ("CLRA"), and common law fraud. In the alternative, Plaintiff also brings a claim for restitution based on quasi contract. Plaintiff does not seek certification of the MMWA claim this Court dismissed. Dkt.

3

1   damages through the price premium paid for the "All-Natural" Nutrition Bars sought for Plaintiff's

2   class claims can be determined through available records of units sold, revenue, costs, profits and

3   average retail prices; and 7) ZonePerfect's conduct at issue substantially emanated from California

4   where ZonePerfect manufactured and labeled all of the Nutrition Bars at issue in this case.

5       As further detailed below, the predominantly common evidence adduced to date shows that

6   Plaintiff has met all of the requirements of Rule 23(a) and 23(b)(3).  Therefore, Plaintiff respectfully

7   requests that this Court certify the proposed Class, appoint Plaintiff as Class Representative for the

8   Class, and appoint Plaintiff's Counsel as Class Counsel for the Class pursuant to Fed. R. Civ. P.

9   23(g)(1).

10  **II.    COMMON EVIDENCE ADDUCED TO DATE**

11      **A. ZonePerfect Used Common Labels and Identical Misrepresentations on Its
            Nutrition Bars' Labels Throughout the Class Period**

12

13      Discovery to date establishes that ZonePerfect used common, materially identical labels

14  with uniform "All-Natural" misrepresentations on each of the Nutrition Bars since before the beginning

15  of the class period (i.e., September 14, 2007).[5]  *See* ¶ 42, Kravec Decl. Exhibit 1 (Labels); Kravec Decl.

16  Exhibit 4, deposition of ZonePerfect through Kimberly Casey pursuant to Fed.R.Civ.P. 30(b)(6)

17  ("Casey Dep.") at 87:24 – 88:7.  ███████████████████████████████████████

18  ████████████████████████████.  *Id*. at 85:24 – 86:17.

19      **B. ZonePerfect Used Common Non-Natural Ingredients in the Nutrition Bars
            Throughout the Class Period**

20      ZonePerfect sells and markets a selection of purportedly "All-Natural" Nutrition Bars.  *See* ¶ 42,

21  Kravec Decl. Exhibit 1 (Labels); ZonePerfect's Amended Answer to Plaintiff's Complaint ("Answer")

22  (Dkt. 58) ¶¶ 2, 40, 41, 44, 48, 49.  Belying the "All-Natural" claim, however, ZonePerfect used

23  common non-natural, synthetic substances throughout the class period in the Nutrition Bars.  ¶¶ 1-2, 21-

24  30, 42; Answer ¶¶ 2, 42; Kravec Dec. Exhibit 8 (Table of Unnatural Ingredients and Applicable

25  Regulations).  In particular, discovery confirms that ZonePerfect has included Ascorbic Acid, Calcium

26

27  No. 38.

28  [5] The class period runs from September 14, 2007, *i.e.*, four years prior to Plaintiff filing of her original
    complaint against ZonePerfect.  *See* ¶ 1.

4

1    Pantothenate, Calcium Phosphate, Glycerine, ████████████████████,[6] Pyridoxine

2    Hydrochloride, Disodium Phosphate, Sorbitan Monostearate, Tocopherols or Xanthan Gum in its

3    purportedly "All-Natural" Nutrition Bars throughout the class period.  *See* ¶ 42; Kravec Decl. Exhibit 1

4    (Labels).

5            Each of these identified substances, which ZonePerfect consistently used in the Nutrition Bars,

6    is decried by federal regulations as synthetic, (i.e., non-natural).[7]  *See* Kravec Decl. Exhibit 8 (Chart of

7    Applicable Regulations); Kravec Decl. Exhibit 1 (Labels with ingredients); ¶¶ 21 – 30 (identifying non-

8    natural ingredients); ¶ 42 (identifying non-natural ingredients in each of ZonePerfect's Nutrition Bars);

9    Kravec Decl. at 74 (chart of non-natural ingredients in ZonePerfect's Nutrition Bars).   These

10   regulations determine the nature of various substances which constitute regulatory findings of fact and

11   create a strong evidentiary presumption in Plaintiff's favor that these substances are synthetic.  *See*

12   *Morgan v. U.S.*, 298 U.S. 468, 477 (1936) ("When the Secretary acts within the authority conferred by

13   the statute, his findings of fact are conclusive."); *Pacific States Box & Basket Co. v. White*, 296 U.S.

14   176, 185-86 (1935); *Rogge v. U. S.*, 128 F.2d 800, 803 (9th Cir. 1942).  ████████████████

15   █████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████   Kravec Decl. Exhibit 3

17   (████████████████████████████████); Kravec Decl. Exhibit 10 ("████

18   ████████████████████████████████████████████████████████████████

19   ██████████████████████████████████).   However, should additional factual

20   proof of the nature of the ingredients be needed, Plaintiff is able to show on a common basis through

21

22   ───────────────────
     [6] Plaintiff alleged the Cocoa [processed with alkali] used in ZonePerfect's Nutrition Bars were alkalized
23   with Potassium Carbonate or another non-natural alkalizing agent.   ¶ 25 and fn. 17.   Discovery
     confirmed that ████████████████████
24   ████████████████████████████████████████████████   *See* Kravec Decl., Exhibit 9,
     ZonePerfect's Answer to Plaintiff's Interrogatory No. 5.

25   [7] *See* Kravec Decl. Exhibit 8 citing 7 C.F.R. § 205.605(b) (████████████, Ascorbic Acid,
26   Calcium Phosphates, Glycerine, Potassium Carbonate, Disodium Phosphate, Tocopherols, Xanthan
     Gum); 21 C.F.R. § 184.1212 (Calcium Pantothenate); 21 C.F.R. § 172.866 (Glycerin); 21 C.F.R. §
27   178.3500 (Glycerin); ████████; 21 C.F.R. § 182.3890 (Tocopherols); 21 C.F.R. § 184.1676 (Pyridoxine Hydrochloride);
28   21 C.F.R. § 172.842 (Sorbitan Monostearate); 21 C.F.R. § 172.515 (Sorbitan Monostearate); 21 C.F.R.

                                                    5

1    ZonePerfect's suppliers that the ingredients are artificial or synthetic by showing how they are made.

2    **C. Common Evidence Establishes that "All-Natural" is Unlawful and Signifies
     To Consumers the Absence of Synthetic Ingredients**

3

4    Available common evidence, including statements by the FDA, comments to formal regulations,

5    and records from ZonePerfect establishes that food containing synthetic vitamins and other ingredients

6    are not "All-Natural."

7    The FDA explicitly stated that synthetic vitamins such as the Ascorbic Acid (synthetic Vitamin

8    C), Pyridoxine Hydrochloride (synthetic Vitamin B) and Tocopherols (synthetic Vitamin E) included in

9    each of the Nutrition Bars cannot be labeled "natural."  ¶ 42, Kravec Decl. Exhibit 1 (labels); Kravec

10   Decl. Exhibit 12 (ZonePerfect's Supplemental Response to Interrogatory No. 2) at 6-10 (███████████

11   ████████████████████████████████████████████████); 62 Fed.

12   Reg. 49826, 49841 (Sept. 23, 1997) ("the term 'natural' should not be used when referring to a vitamin

13   that is only obtained through chemical synthesis."); Kravec Decl. Exhibit 13 (████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████); *see also Larsen v. Trader Joe's Co.*, --- F.Supp.2d ----,

16   2013 WL 132442, *4 (N.D.Cal. 2013)(Illston, D.J.)(holding FDA regulations do not permit the labeling

17   of non-natural vitamins as "natural," even if the natural and synthetic vitamins are chemically identical

18   because "there is some value to consumers and the market of knowing whether ingredients are synthetic

19   or naturally occurring").   Consumers care whether a product contains natural or artificial vitamins

20   because synthetic, crystalline chemical vitamins used in processed foods are different from, and have

21   different properties then, vitamins found in nature.  Kravec Decl. Exhibit 14 (Thiel RJ, "The truth about

22   vitamins in supplements," ANMA Monitor. 2003;6(2):6-14")).

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████               Kravec Decl. Exhibit 11, deposition of

25   ZonePerfect through Dr. Robert Joseph pursuant to Fed.R.Civ.P. 30(b)(6) ("Joseph Dep.") at 20:14-25.

26   While ZonePerfect does not publicly define the term "natural", ████████████████████████

27   _____

28   § 184.1890 (Tocopherols).

6

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████ Joseph Dep. at 18:5-13 (████████████

5 ████████████████████████████████).[8]  The fact that ZonePerfect

maintains an internal definition of "natural" and employs it in the formulation of their products

demonstrates commonality under Fed.R.Civ.P. 23(a)(2) and 23(b)(3). Moreover, the fact that that

ZonePerfect maintains an internal definition of "natural" does not mean its definition is correct or

would be consistent with what a reasonable consumer would understand the term "natural" to mean.

*See infra* at §II.D.  Indeed, ZonePerfect's definition of "natural" is inconsistent with the guidance

provided by the Food and Drug Administration ("FDA") – the body governing label representations at

issue in this litigation.   While the FDA does not specifically regulate the use of the terms "natural," the

agency does provide clear guidance for industry by stating that it does not "object[] to the use of the

term ["natural"] if the food does not contain added color, artificial flavors, or synthetic substances."

Kravec Decl. Exhibit 2 at 45.  Moreover, with respect to vitamins, FDA regulation prohibits food

products containing synthetic vitamins from being called "natural."  62 Fed. Reg. 49826, 49841 (Sept.

23, 1997) ("the term 'natural' should not be used when referring to a vitamin that is only obtained

through chemical synthesis.").

Notwithstanding its ill-conceived notion of "natural," it is notable that ZonePerfect violated its

own internal definition as each of the Nutrition Bars contained a chemical preservative.  *See* ¶ 42 and

Kravec Decl. Exhibit 1 and Exhibit 2 at 74 (showing each Nutrition Bar contains Ascorbic Acid); 21

C.F.R. 182.3013 (Ascorbic Acid is a "Chemical Preservative"); Kravec Decl. Exhibit 15 (Jan. 7, 2000

Warning Letter to Fruit Fillings, Inc. citing the company for failing to call out the presence of a

chemical preservative, e.g., Ascorbic Acid); Kravec Decl. Exhibit 3 (████████████████████████

████████████████████████████████████████████████████);  Kravec

---

[8] The FDA has also adopted an informal policy that a product is ***not*** natural if it contains artificial or synthetic substances, *see* ¶ 15, but the FDA's policy does not bind this Court.  *See Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 342 (3d Cir. 2009) (holding FDA policy lacks "the force of law").

1    Decl. Exhibit 10 (████████████████████████████████████████████

2    ███████████████████████████████████████████████████████████████

3    █████████████████████████)[9]

### D. Common Evidence Shows that ZonePerfect's "All-Natural" Claim Is Material To Purchasers' Decision to Buy Nutrition Bars

Common evidence produced to date from ZonePerfect's records is more than sufficient to prove its "All-Natural" claim is material.  Documentary evidence, including ZonePerfect's own marketing studies, establishes that claims such as "All-Natural" are material to ZonePerfect consumers and significantly affect purchase intent.  ████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████.  Kravec Decl. Exhibit 16 at 10, 13 and 25 – 27.  *See also* Kravec Decl. Exhibit 17 at 3 (████████████ ███████████████████████████████████████████████████████████████████ ███████████████████).  ███████████████████████████████████████████ ██████████████████████████" Kravec Decl. Exhibit 25 at 22.  ██████████████ ██████████████████████████████  Kravec Decl. Exhibit 18 at 19.  ██ ███████████████████████████████████████████████████████████████████ █████████████████████████████  Kravec Decl. Exhibit 33 at 3.

ZonePerfect's internal studies are consistent with common evidence that consumers generally are motivated by "all natural" claims.  Commercial marketing studies are similarly replete with evidence of the materiality of "All Natural" claims to purchasers.  A 2010 Mintel study  reported that 75% of 25-34 year-olds, 74% of 18-24 year-olds, and 55% of 55-64 year-olds, are either very or somewhat interested in consuming all natural foods, that more than 6 in 10 users of natural/organic products "agree that it's worth paying more for natural products," and that "demand for all-natural

---

[9] Notwithstanding violating its own definition of natural, the Nutrition Bars at issue were each labeled "All-Natural" – a broader, more definite statement than simply calling a product "natural" – and one which makes the misrepresentation even more egregious ¶ 14.

Notice of Motion and Motion for Class Certification;
                                        Memorandum and Points and Authorities in Support

1   products is high among young adults and will remain relatively strong in years to come, as these young

2   people mature, start families, and gain greater influence." Kravec Decl. Exhibit 19 at 52. Indeed, sales

3   of food products with "natural" claims exceed $20 billion dollars annually. Kravec Dec. Exhibit 27 at

4   3.

5       Numerous studies further show the materiality of "natural" label claims throughout the class

6   period. In 2008, market research group Packaged Facts reported "[t]he overall trend is clear...[n]atural

7   and organic products are flying high in segments that are otherwise flat." Kravec Decl. Exhibit 32 at 3-

8   5. The same study attributed the success of Clif Bar, the dominant nutrition bar manufacturer, in part to

9   Clif's offering nutrition bars with "all natural ingredients." *Id*. at 75. By 2009, "Natural" had become

10  the most popular claim when launching new foods and beverages in the United States. Kravec Decl.

11  Exhibit 28 at 2. A 2009 study reported 50% of consumers rated a "Natural" claim on a food package as

12  either "Very Important" or "Important." Kravec Decl. Exhibit 33 at 5. In fact, as a 2011 study reports,

13  25% of consumers rated "100 percent natural" or "all natural" as "the best description to read on a food

14  label." Kravec. Decl. Exhibit 31.    U.S. retail sales of natural and organic food and beverages are

15  expected to double from $39 billion in 2010 to $78 billion in 2015. Kravec. Dec. Exhibit 2 at 68. This

16  follows a five-year sales increase of 63% from 2005 through 2010. *Id*.

17      Common evidence from ZonePerfect and independent commercial market researchers shows

18  that marketing a product "All Natural" is material to consumers.

19  **E. Additional Common Evidence Corroborates The Materiality of ZonePerfect's "All-Natural" Claims**

20

21      Research shows consumers rely on front-of-package label statements to form impressions about

22  and make decisions about food products. Kravec Decl. Exhibit 29 at 9-10 ("Three of seven studies

23  reviewed found that consumers could more easily identify the healthier of two products using all FOP

24  [front-of-package] labels studied compared with the no-label condition...FOP labels increase

25  consumers' ability to correctly identify a healthier product compared with the no-label condition...for

26  all product categories studied[.]"). According to a 2010 FDA survey, 67% of consumers rely on front-

27  of-package information "often" or "sometimes" when making purchasing decisions. Kravec Decl.

28  Exhibit 31. Labels serve as a useful information tool for consumers in evaluating product attributes.

9

Kravec Decl. Exhibit 2 at 42. **Simply stated: labels matter**. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label...")(emphasis added). *Kwikset Corp. v. Sup. Ct.*, 51 Cal.4th 310, 328 (Cal. 2011).

### F.  ZonePerfect's Nutrition Bars Are A Single Product Line

Although Plaintiff has not purchased each and every flavor of ZonePerfect's Nutrition Bars, her purchase is sufficiently similar to those of all other members of the Class since ZonePerfect's Nutrition Bars are a single product line.

As this Court has already concluded:

[T]here is more than enough similarity between the Chocolate Peanut Butter Bars allegedly purchased and the other nineteen varieties of nutrition bars identified in the Complaint. The accused products are all of a single kind, that is, they are all nutrition bars. They share a uniform size and shape. On casual inspection, the only obvious difference between the bars is their flavor. Closer inspection reveals some difference between the ingredients used in different flavors, but the similarities are more striking: six of the nine challenged ingredients appear in all twenty nutrition bar flavors. *See* Compl. ¶ 42. Most importantly, all twenty flavors bear the same challenged label: "All-Natural Nutrition Bars." The Court concludes that Ms. Sethavanish has standing for both Article III and UCL purposes to sue for alleged mislabeling of all twenty nutrition bar flavors identified in the Complaint.

Dkt No. 38 at p. 9.  This is consistent with ZonePerfect's corporate representative, who testified that,

█████████████████████████████████████████████████████████████████████████████

███████" Casey Dep at 27:25 – 28:2.

It is also generally well accepted that a plaintiff may represent a class consisting of individuals who have purchased products in the same product line as the particular product he or she purchased.[10] *See e.g, Beck-Ellman*, 283 F.R.D. at 571 (certifying claims on class of purchasers of  "electric heating pads bearing the words 'Kaz' and/or 'SoftHeat' and/or 'Smart/Heat' and/or 'Dunlap' and/or the number 1–800–477–0457"); *Chavez*, 268 F.R.D. at 380 (certifying claims of a class of purchasers of "any beverage bearing the Blue Sky mark or brand"); *Astiana v. Dreyers Grand Ice Cream, Inc.*, No. C–11–2910 EMC, 2012 WL 2990766, *11 (N.D. Cal. July 20, 2012) (different flavors of ice cream); *Koh v.*

---

[10] In *Koh*, 2010 WL 94265, Judge Whyte rejected the argument that the plaintiff could not bring claims for products in product lines he had not purchased, noting that "there is no brightline rule that different product lines cannot be covered by a single class." *Id.* at *3. However, the court need not reach this issue, as ZonePerfect's Nutrition Bars constitute a single product lines.

10

1  *S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 WL 94265, *3 (N.D. Cal. Jan. 6, 2010),

2  (different types of detergents).

3    As recently explained by Judge Chen, in refusing to dismiss class allegations:

4    Plaintiffs are challenging the same kind of food products ( i.e., ice cream) as well as the same
   labels for all of the products— i.e., "All Natural Flavors" for the Dreyer's/Edy's products and

5    "All Natural Ice Cream" for the Haagen–Dazs products. That the different ice creams may
   ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same

6    basic mislabeling practice across different product flavors. Indeed, many of the ingredients
   are the same… Therefore, the Court rejects [Defendant's] argument that claims based on ice

7    cream products not purchased by Plaintiffs should be dismissed from the case.

8    *Astiana*, 2012 WL 2990766, *13.

9    This same logic applies to the Nutrition Bars at issue here which come in different flavors, *see* ¶

10  42; Kravec Decl. Exhibit 1 (Labels), but which bear identical "All-Natural" labeling claims and share

11  many of the same non-natural ingredients. *See also* ¶ 42 (showing the labels and listing the unnatural

12  ingredients); Dkt. No. 38 at 9 ("The accused products are all of a single kind, that is, they are all

13  nutrition bars. They share a uniform size and shape. On casual inspection, the only obvious difference

14  between the bars is their flavor. Closer inspection reveals some difference between the ingredients used

15  in different flavors, but the similarities are more striking: six of the nine challenged ingredients appear

16  in all twenty nutrition bar flavors").  Accordingly, Plaintiff's claims are sufficiently similar to those of

17  all other members of the Class to support certification.

18   **G.  Class-wide Relief Can Be Proved on a Common Basis**

19    Plaintiff is able to prove entitlement to relief on a common basis for the Class.

20    Plaintiff can establish restitution (from data of average retail prices, numbers of units sold),

21  restitionary disgorgement of profits (from data on ZonePerfect's sales and costs), and damages based on

22  a price-premium theory (from data of average retail prices) on a common basis for the Class.

23  ZonePerfect keeps the necessary records on sales, profits, and costs for the ZonePerfect Nutrition Bars,

24  from which Plaintiff will be able to prove this restitution and damages nationwide. *See, e.g.*, Casey

25  Dep. at 62:2 – 63-6 ████████████████████████████████████████████

26  ██████████ 70:13-17, 132:11-15, 137:11-15 ████████████████████████

27  █████████████████████████. █████████████████████████

28  ███████████████████████████████████████████████

11

1    *Id*. at 70:13-17 ( ███████████████████████

2    ███████████████████ ); Kravec Decl. Exhibit 20 ████████

3    ████████████████████████ Further, if necessary, Plaintiff

4    can calculate this restitution and damages on a statewide basis, based upon a combination of

5    ZonePerfect's records, records subpoenaed from ZonePerfect's distributors, wholesalers and/or

6    retailers, and records maintained by third-party retail information collector such as Nielsen.

7    **III.    THIS COURT CAN CERTIFY A NATIONWIDE CLASS AS ZONEPERFECT'S**
     **CONDUCT EMANATES FROM CALIFORNIA**

8

9        This Court may certify a nationwide class because ZonePerfect's conduct emanates from

10   California.[11]    *Mazza v. Am. Honda Motor Co.*, Inc., 666 F.3d 581, 589-590 (9th Cir. 2012).

11   ████████████████████████████████████████ Casey Dep. at 15:18

12   – 16:16 ( █████████████████████████████████████

13   █████████████████████ ). █████████████████

14   ███████████████████████ . *Id*.,

15   17:19 – 20:9.   Where, as here, the conduct underlying Plaintiff's claims substantially emanates from

16   California, this Court may apply California law nationwide, as other recent cases have done since

17   *Mazza.  See, e.g., In re Pom Wonderful*, 2012 WL 4490860 at *3-4; *Bruno v. Eckart Corp.*, 280 F.R.D.

18   540, 543 (C.D. Cal. 2012).

19   **IV.    THE REQUIREMENTS FOR CERTIFICATION PURSUANT TO FED.R.CIV.P. 23(a)**
     **AND 23(b)(3) ARE MET**

20

21       **A.    Standard**

22       "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf

23   of the individual named parties only.'" *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011).

24   To qualify, the party seeking class certification must provide facts sufficient to satisfy the requirements

25

26   [11] A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon Co.*
     *v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under California's choice-of-law rules, if this due
     process test is satisfied, the presumption is that California law applies; the burden of proving otherwise
27   rests with the party seeking to invoke foreign law. *Washington Mutual Bank v. Superior Court*, 24
     Cal.4th 906, 103 Cal.Rptr.2d 320, 15 P.3d 1071, 1080 (Cal 2001).
28

12

1   of Federal Rules of Civil Procedure 23(a) and (b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180,

2   1186 (9th Cir.2001). Fed. R. Civ. P. 23(a) requires Plaintiff to demonstrate: (1) numerosity; (2)

3   commonality of the factual and legal issues; (3) typicality of Plaintiff's claims and defenses to those of

4   the class; and (4) adequacy of Plaintiff and her counsel.   Fed.R.Civ.P. 23(b)(3) requires that the

5   questions of law or fact common to class members predominate over any questions affecting only

6   individual members, and that a class action is superior to other available methods for fairly and

7   efficiently adjudicating the controversy.

8        The district court must conduct a rigorous analysis to determine whether Rule 23 has been

9   satisfied. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). It is a well-recognized precept that "the

10   class determination generally involves considerations that are 'enmeshed in the factual and legal issues

11   comprising the plaintiff's cause of action,'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)

12   (quotation citation omitted), and a court must consider the merits if they overlap with the Rule 23

13   requirements.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir.2011). However, "it is

14   improper to advance a decision on the merits at the class certification stage," *Moore v. Hughes

15   Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir.1983) (citation omitted); *see Eisen v. Carlisle &

16   Jacquelin*, 417 U.S. 156, 178 (1974), and a court's review of the merits should be limited to those

17   aspects relevant to making the certification decision on an informed basis. Fed.R.Civ.P. 23 advisory

18   notes.

19        **B.        Rule 23(a)(1) – Numerosity**

20        Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is

21   impracticable." Fed.R.Civ.P. 23(a)(1). "Impracticability does not mean impossibility," rather the

22   inquiry focuses on the difficulty or inconvenience of joining all members of class. *Harris v. Palm

23   Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–914 (9th Cir.1964). As a general rule, classes of forty

24   or more are considered sufficiently numerous*." Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262

25   (S.D. Cal. 1998); *Swanson v. American Consumer Indus*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40

26   sufficient).   Moreover, in determining whether numerosity is satisfied, the Court may consider

27   reasonable inferences drawn from the facts before it. *Gay v. Waiters' & Dairy Lunchmen's Union*, 549

28   F.2d 1330, 1332 n. 5 (9th Cir.1977).

13

Here, at minimum, the Class consists of thousands of consumers. ████████████████

████████████████████████████████████████████████████████████

████████████████████████████.   Kravec Dec. Exhibit 21 █████████████

████████████████████████████████████).[12]  ZonePerfect cannot dispute the

numerosity of the proposed Class.

While the exact number of consumers is not currently knowable, the threshold minimum for

establishing numerosity under Rule 23(a)(1) is clearly satisfied.  *See, e.g., Beck-Ellman*, 283 F.R.D. at

564 (inferring numerosity based upon allegation of sale of 5 million heating pads over 8-year period);

*Chavez*, 268 F.R.D. at 376 (inferring numerosity based on "allegation that Blue Sky sold over $20

million of product").

## C.     Rule 23(a)(3) – Typicality

Rule 23(a)(3) requires the representative party to have claims that are "typical of the claims or

defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality is satisfied "when each class member's claim

arises from the same course of events, and each class member makes similar legal arguments to prove

the defendants' liability." *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir.2010) (citations omitted).

The typicality requirement is "permissive and requires only that the representative's claims are

reasonably co-extensive with those of the absent class members; they need not be substantially

identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). However, "[c]lass

certification is inappropriate where a putative class representative is subject to unique defenses which

threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

Cir.1992) (citations omitted).

In this case, Plaintiff's claims are clearly typical.  Plaintiff's and all Class members' claims each

arise from the same course of events – the sales of "All-Natural" labeled Nutrition Bars which

contained non-natural substances.  Kravec Decl. Exhibit 22 (Plaintiff's Answers to Defendant's First

Set of Interrogatories, Nos. 1, 4 and 5.); ¶ 1.  Kravec Decl. Exhibit 23 (Excerpts of Deposition of

Kimberly S. Sethavanish taken on June 20, 2013 ("Sethavanish Dep."), at 5 – 10; 11 - 12 (confirming

---

[12] ZonePerfect maintains similar tables of its direct sales to retailers for each year of Plaintiff's

14

1   purchases and reasons).  Plaintiff and Class members were also each exposed to the identical alleged

2   misrepresentations on the packages, ¶ 42, Kravec Decl. Exhibit 1 (Labels), and thus share the same

3   interests in determining whether the ZonePerfect Products were deceptively labeled.  *See, e.g., Beck-*

4   *Ellman*, 283 F.R.D. at 565; *Johns*, 280 F.R.D. at 557.

5          In addition, it is worth emphasizing that Plaintiff's claims are typical of **both** class members'

6   claims based upon purchases of the identical flavor of nutrition bar **and** class members' claims based

7   upon purchases of other flavors of the Nutrition Bars. *See* Section II.F, *supra*.

8          As recognized in *Beck-Ellman*, a plaintiff who purchases products within the same product line

9   with the same labeling omissions (or claims) is "sufficiently similar" to, and can represent, all other

10  class members within that product line.  283 F.R.D. at 566 (certifying claims on behalf of all models in

11  "heating pad" product line where all "heating pads contain similar omission[s]"); *see also Chavez*, 268

12  F.R.D. at 378 (certifying claims; stating "Although plaintiff did not purchase each type of beverage

13  carrying the misleading label, his claims are 'reasonably coextensive with those of absent members.'")

14  (citation omitted).  As in *Beck-Ellman* and *Chavez*, Plaintiff's claims cover the same product line, bear

15  the materially identical misrepresentation and, therefore, have claims that are "sufficiently similar" to

16  those of all other class members.

17         In sum, Plaintiff's claims arise from the same course of events, share the same legal theory, and

18  are "reasonably coextensive" of the claims of the Class.  Thus, the typicality requirement is satisfied

19  here.

20         **D.     Rule 23(a)(4) − Adequacy of Representation**

21         Rule 23(a) also requires the representative parties to "fairly and adequately protect the interests

22  of the class." Fed.R.Civ.P. 23(a)(4). The Ninth Circuit set a two-prong test for this requirement: "(1) do

23  the named plaintiffs and their counsel have any conflicts of interest with other class members and (2)

24  will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

25  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir.2003) (citing *Hanlon*, 150 F.3d at 1020).

26

27  _____

28  proposed class, showing sales to all 50 states.

15

Here, Plaintiff is an adequate representative because she is a member of the Class she seeks to represent, shares the same claims and interest in obtaining relief as all other class members, and has no conflicts of interests with other class members. *Beck-Ellman*, 283 F.R.D. at 567; *In re Ferrero*, 278 F.R.D. at 559; *see Falcon*, 457 U.S. at 157-8, n. 13 (noting that where the claims of the class and class representatives are coextensive, there is no conflict). Plaintiff has also demonstrated her adequacy through her participation thus far in this litigation.  *See* Kravec Decl. Exhibit 22 (Plaintiff's Interrog. Resps.); Sethavanish Dep. at 11 (Plaintiff bought the Nutrition Bars because her husband Mr. Colucci wanted "All-Natural" bars); at 16 (Plaintiff would only accept an incentive award if she agreed with the judgment).

In addition, proposed Class Counsel (*i.e.*, Joseph N. Kravec, Jr. of Feinstein Doyle Payne & Kravec, LLC, Michael D. Braun of the Braun Law Group, P.C., and Janet Lindner Spielberg of the Law Offices of Janet Lindner Spielberg) are adequate, as they are qualified, experienced, and generally able to conduct the proposed litigation as required by Fed.R.Civ.P. 23(g).  *See* Kravec Decl. Exs 5-7.  In fact, a Court within this District has already recognized the abilities of Messer's Kravec, Braun and Spielberg in appointing them co-lead class counsel while certifying a nationwide litigation class against Diamond Foods, Inc. for the company falsely labeling packages of shelled walnuts.  *See Zeisel*, 2011 WL 2221113 at *9.  Here, proposed Class Counsel have also demonstrated their adequacy by vigorously prosecuting this action through discovery and litigation of ZonePerfect's motion to dismiss. Dkt. No. 38 (Order denying in large part ZonePerfect's motion to dismiss); *See In re Emulex Corp.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (In evaluating the adequacy of counsel, "a court may examine the attorneys' professional qualifications, skill, experience, and resources.  The court may also look at the attorneys' demonstrated performance in the suit itself") (citations omitted).

Respectfully, Plaintiff and proposed Class Counsel are adequate.

### E.     Rule 23(a)(2) Commonality / Rule 23(b)(3) Predominance[13]

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal–Mart Stores, Inc.*, 131 S.Ct. at 2551. This requires that the "claims must depend on

---

[13] Post *Wal-Mart Stores, Inc.*, the commonality and predominance requirements have effectively

Notice of Motion and Motion for Class Certification; Memorandum and Points and Authorities in Support

a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  Commonality is satisfied by "existence of shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019–20.  All questions of fact and law need not be common to satisfy the rule. *Rodriguez*, 591 F.3d at 1122.

To satisfy predominance, it is not enough to establish that common questions of law or fact exist. "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022.  Class certification under Rule 23(b)(3) is proper when common questions present a significant portion of the case and can be resolved for all class members in a single adjudication.  *Id.* The predominance test is more rigorous as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-624 (1997).  Despite the enhanced rigor, the Supreme Court noted "[p]redominance is a test readily met in certain cases alleging consumer…fraud." *Id.* at 625.

### 1.  Common Questions Exist for Plaintiff and the Class

The commonality element is easily satisfied for Plaintiff and the Class.

Here, Plaintiff's and all Class members' claims each arise from ZonePerfect's identical misrepresentations that the Nutrition Bars were "All-Natural" when, in fact, these products contained non-natural ingredients, and Plaintiff's and Class members' claims depend on common factual and legal contentions the determination of which will resolve issues that are central to the validity of their claims in a single stroke.  *Wal–Mart Stores, Inc.*, 131 S.Ct. at 2551.  Such common questions include: (1) whether ZonePerfect labeled the Nutrition Bars "All-Natural"; (2) whether the Nutrition Bars that include non-natural synthetic substances are "All-Natural"; (3) whether ZonePerfect's "All-Natural" labeling is and was likely to deceive class members or the general public; (4) whether ZonePerfect's "All-Natural" representations are unlawful; and (5) the appropriate measure of damages, restitution and/or restitutionary disgorgement.  ¶ 55 a, c, d, e, f.

---

merged, so Plaintiff addresses them together.

Case No. CV 12-2907 SC

Notice of Motion and Motion for Class Certification; Memorandum and Points and Authorities in Support

These common contentions satisfy Fed.R.Civ.P. 23(a)(2) and, as discussed below, predominate over any individual issues, as recent certifications of similar labeling misrepresentation claims by this Court and other district courts confirm.[14]

### 2.  Common Questions of Law Predominate As To Plaintiff's Consumer Protection Claims

Plaintiff asserts causes of action under the UCL[15], the FAL, and the CLRA on behalf of herself and the Class. ¶¶ 80-113.  Each of Plaintiff's statutory causes of action lends itself to proof by common inquiry and therefore satisfies the predominance requirement set forth by Fed.R.Civ.P. 23(b)(3).

Plaintiff asserts claims on her own behalf and on behalf of the Class under the "unlawful" prong of the UCL.  ¶¶ 80-87.  Unlawful business acts include "any practices forbidden by law." *South Bay*, 72 Cal. App. 4th at 880.  As discussed above, Plaintiff will be able to establish through common evidence that ZonePerfect's "All-Natural" claims are false and misleading to consumers. *See* Sections II.A-E, *supra*.  Since federal and state law identically prohibit false and misleading labeling of food, 21 U.S.C. § 343(a)(1); Cal. Health & Safety Code §§ 110660, 110100(a), ZonePerfect's false and misleading labeling gives rise to UCL unlawful claims on behalf of the Class.  *South Bay*, 72 Cal. App. 4th at 880 ("section 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable under section 17200 et seq.'").  Notably, the proof needed to establish these violations is not based on any individualized factor and is common across the Class.

Plaintiff asserts claims on her own behalf and on behalf of the Class under the "unfair" prong of the UCL.  ¶¶ 88-92.  Under this prong, the Court must examine the impact of ZonePerfect's practice "on its alleged victims, balanced against the reasons, justifications and motives of the alleged wrongdoer.  In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim...." *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (Cal.

---

[14] *See, e.g., In re Pom Wonderful,*2012 WL 4490860, *1 (certifying labeling claims)*; Johns*, 280 F.R.D. at 559  (same); *In re Ferrero*, 278 F.R.D. at 556 (same); *Johnson*, 276 F.R.D. at 521 (C.D.Cal.2011) (re-affirming certification); *Zeisel*, 2011 WL 2221113, *1 (certifying labeling claims); *Chavez*, 268 F.R.D. at 380 (same).

[15] Plaintiff asserts claims under the "unlawful," "unfair," and "fraudulent" prongs of the UCL.  ¶¶ 80-98.  Each prong of the UCL is a separate theory of liability which offers an independent basis for relief. *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. 4th 861, 878 (Cal. Ct. App. 1999).

1    Ct. App. 1980); *Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388, 1425 n. 15 (Cal. Ct. App.

2    2002) (same).  Here again, this is an inquiry that is common to all members of the Class.  ZonePerfect's

3    motivation – increased sales and market share – is not unique to Plaintiff or any Class member.

4    Similarly, the harm to Plaintiff resulting from the purchase of the Nutrition Bars is no different than the

5    harm to any of those she seeks to represent.

6            Plaintiff also asserts claims on her own behalf and on behalf of the Class under the "fraudulent"

7    prong of the UCL and the FAL.  ¶¶ 93-105. For this claim, Plaintiff must demonstrate her individual

8    reliance on ZonePerfect's "All-Natural" statement resulted in injury in fact, *In re Tobacco II Cases*, 46

9    Cal.4th 298, 325-27 (Cal. 2009), and show that "members of the public are likely to be deceived" by

10   ZonePerfect's misrepresentations.  *Williams v. Gerber Prods.*, 552 F.3d 934, 938 (9th Cir. 2008).  For

11   class members, however, relief "is available without individualized proof of deception, reliance and

12   injury." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (citing *Tobacco II*, 46 Cal

13   4th at 320).  Plaintiff can prove individual injury and reliance, *see* ¶ 8; Kravec Decl. Exhibit 23

14   (Sethavanish Dep. at 12-13), and all other elements may be proved on a common basis.

15           Finally, Plaintiff asserts claims on her own behalf and on behalf of the Class under the CLRA,

16   ¶¶ 106-113, which are likewise subject to proof by common evidence.  The CLRA makes it unlawful to

17   1) represent that the goods (i.e., the Nutrition Bars) had characteristics which they do not have (i.e., all

18   natural ingredients) (Cal.Civ.Code § 1770(a)(5)); 2) represent that goods are a particular standard,

19   quality or grade which they are not (Cal.Civ.Code § 1770(a)(7)); and 3) advertise goods with the intent

20   not to sell them as advertised (Cal.Civ.Code § 1770(a)(9)).  For the same reasons as above, the proof of

21   whether ZonePerfect's Nutrition Bars were represented to be "All-Natural," or were "All-Natural"

22   when they were not, or that ZonePerfect advertised the Nutrition Bars as being "All-Natural" with the

23   intent not to sell "All-Natural" bars will be common to the Class.  Moreover, while reliance is an

24   element of a CLRA claim, it may be inferred as to the entire class if the representations were

25   objectively material.  *In re Steroid Hormone Prod. Cases*, 181 Cal.App.4th 145, 157 (Cal. Ct. App.

26   2010); *Mass. Mut. Life Ins. Co v. Sup. Ct.*, 97 Cal. App. 4th 1282, 1292 (Cal. Ct. App. 2002).  The

27   record is replete with evidence of the materiality of these statements, which ZonePerfect plastered on

28

19

Case No. CV 12-2907 SC                                      Notice of Motion and Motion for Class Certification;
                                                           Memorandum and Points and Authorities in Support

every package of the ZonePerfect Products sold to class members. *See* Section II.D; Kravec Decl. Exhibit 1; *Kwikset*, 51 Cal.4th at 332-333 (defining materiality).

### 3.   Common Questions of Law Predominate As To Plaintiff's Common Law Fraud and Quasi Contract Claims

Plaintiff asserts causes of action for fraud and restitution based on quasi-contract on behalf of themselves and the Class. ¶¶ 71-79, 114-116.   Like Plaintiff's consumer protection claims, common questions of law predominate on these claims, satisfying Rule 23(b)(3).

Plaintiff brings claims for common law fraud, which requires proof of (1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage.  *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 68 Cal. App. 4th 445, 481, 80 Cal. Rptr. 2d 329, 354 (1998)(citing Civ.Code, §§ 1572, 1709-1710)(further citations omitted).  As above, these elements can be proved from common evidence that 1) ZonePerfect misrepresented that the Nutrition Bars were "All-Natural;" 2) that the "All-Natural" statement is material to the average consumer; 3) that ZonePerfect knew that the bars were not "All-Natural;" 4) that ZonePerfect intended to deceive consumers about the nature of its ingredients; 5) that Plaintiff justifiably relied on ZonePerfect's "All-Natural" misrepresentation; and 6) that Plaintiff and class members were damaged by buying a product that was not "All-Natural."  Further, no individual inquiry of absent class members is necessary since the Court can "find an inference or rebuttable presumption of reliance by each class member without his direct testimony."  *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814, 484 P.2d 964, 973 (1971); *Chavez;* 268 F.R.D. at 376 (certifying a nationwide litigation class for common law fraud and other claims where defendant mislabeled a food product's source of origin).

Finally, Plaintiff brings claims in the alternative for restitution based on quasi-contract, which may be proved by evidence of receipt and unjust retention of a benefit at the expense of another.  *See* Dkt. 38 at 22 (sustaining Plaintiff's quasi-contract claim); *see also McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006)("unjust enrichment is a basis for obtaining restitution based on

quasi-contract"). This claim focuses on ZonePerfect's conduct and may also be proved by common evidence. *See* Sections II.A-G, *supra*.

### 4.   Individual Issues of Damages Do Not Predominate

The determination of relief does not usually defeat predominance, and it does not do so here, as damages are capable of measurement on a class basis from ZonePerfect's records of sales, profits, and prices. *See* Section II.G; *Johns*, 280 F.R.D. at 559 ("amount of damages…does not defeat class action certification") (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)); *Guido v. L'Oreal, USA, Inc.,* 284 F.R.D. 468, 479 (C.D. Cal. 2012) (finding price premium damages susceptible of class-wide treatment); *Cf. Comcast v. Behrend*, --- S.Ct. ----, 2013 WL 1222646, *5 (2013) (finding individual questions predominated where plaintiffs could not show anti-trust injury was capable of measurement).

In sum, questions capable of determination on a class basis predominate and will drive resolution of Plaintiff's and all class members' claims in this action.

### F.        Rule 23(b)(3) − Superiority

Rule 23(b)(3) also requires that the Court determine whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy," based upon the following nonexclusive factors:

> (A) the interest of members of the class in individually controlling the prosecution. . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by. . . members of the class; (C) the desirability. . . of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3). These factors reflect the appropriateness of class certification here.

### 1.   Rule 23(b)(3)(A)

The first factor (the interest of each class member in controlling the prosecution of separate actions) supports the superiority of a class action in the underlying matter. In a case with tens of thousands of class members (or more), each class member's interest in aggregating claims into a single class action lawsuit substantially outweighs the interest of any class member in individual control of the litigation. *See, e.g., Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The more claimants there are, the more likely a class action is to yield substantial economies in litigation").

Notice of Motion and Motion for Class Certification;
                                    Memorandum and Points and Authorities in Support

Further, class members' individual claims here will be relatively small, making individual litigation impracticable. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available."); *In re Worldcom Inc. Sec. Litig.*, 219 F.R.D. 267, 304 (S.D.N.Y. 2003) ("Few individuals could even contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail").

### 2.  Rule 23(b)(3)(B)

Plaintiff's counsel are not aware of any pending litigation in which the claims at issue in this case are being separately pursued by any individual putative class members.  Thus, the second factor (the extent and nature of any litigation concerning the controversy already commenced by members of the class) also supports a finding of superiority.  *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *8 (E.D. Cal. June 12, 2006)("In the absence of competing lawsuits, it is also unlikely that other individuals have an interest in controlling the prosecution of this action. . . ").

### 3.  Rule 23(b)(3)(C)

Analysis of the desirability of concentrating the litigation of the claims in the particular forum also confirms that class treatment is a superior means of adjudicating these claims.  Specifically, since ZonePerfect's conduct at issue in this litigation emanates from California, *see* Section III, *supra*, concentration of litigation in this forum is appropriate.

### 4.  Rule 23(b)(3)(D)

Analysis of the fourth factor (difficulties likely to be found in the management of a class action) further confirms the superiority of the class mechanism here.

Quite simply, there is no reason to believe that the prosecution of the claims of the putative class members in a single class action will create more management problems than the alternative (*i.e.*, the prosecution of tens-of-thousands of separate lawsuits by individual class members).  *See* Sections II.A-G (showing common proof).  In fact, it would be more burdensome on the courts, parties and judicial system to entertain a multiplicity of lawsuits regarding ZonePerfect's common conduct and, in the absence of a class action, thousands of consumers would also have no reasonable means of enforcing their rights.  *Carnegie* , 376 F.3d at 661 ("a class action has to be unwieldy indeed before it can be pronounced an inferior alternative. . . to no litigation at all."); *Haynes v. Logan Furniture Mart, Inc.*,

22

503 F.2d 1161, 1165 (7th Cir. 1974) (in deciding the "best" method, court may consider "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually."); *Jordan v. Paul Financial, LLC*, 285 F.R.D. 435, 467 (N.D.Cal. 2012) (noting failure to certify due to unmanageability is disfavored).

Accordingly, prosecuting the case at bar as a class action does not present any difficulties within the meaning of Rule 23(b)(3)(D), and the class mechanism is clearly the superior vehicle by which to adjudicate this controversy.

## V.   CONCLUSION

For the reasons discussed herein, Plaintiff respectfully requests the Court certify this case as a class action, appoint her as Class Representative, and appoint Class Counsel (*i.e.*, Joseph N. Kravec, Jr. of Feinstein Doyle Payne & Kravec, LLC, Michael D. Braun of the Braun Law Group, P.C., and Janet Lindner Spielberg of the Law Offices of Janet Lindner Spielberg), as indicated in the attached proposed order.

DATED:  July 2, 2013

FEINSTEIN DOYLE  PAYNE
& KRAVEC, LLC


By:  s/Joseph N. Kravec, Jr.
        Joseph N. Kravec, Jr.
        (admitted *pro hac vice*)

Wyatt A. Lison (*pro hac vice*)
429 Forbes Avenue, 17th Floor
Pittsburgh, PA 15219
Tel:  (412) 281-8400
Fax:  (412) 281-1007
Email:  jkravec@stemberfeinstein.com
wlison@stemberfeinstein.com

Michael D. Braun (Bar No. 167416)
**BRAUN LAW GROUP, P.C.**
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
Phone:   (310) 836-6000
Fax:      (310) 836-6010
Email: service@braunlawgroup.com


Janet Lindner Spielberg (Bar No. 221926)

23

**LAW OFFICE OF JANET LINDNER SPIELBERG**
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Phone:   (310) 392-8801
Fax:        (310) 278-5938
Email: jlspielberg@jlslp.com

*Counsel for Plaintiff*

1

**PROOF OF SERVICE**

2

STATE OF PENNSYLVANIA                    )
                                          )   ss.:
3

COUNTY OF ALLEGHENY              )

4

     I am employed in the County of Allegheny, Commonwealth of Pennsylvania.  I am over the age of 18 and not a party to the within action.  My business address is 429 Forbes Avenue, Allegheny Building, 17th Floor, Pittsburgh, PA 15219.

5

6

     On July 2, 2013, I served the document(s) described as:

7

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT**

8

**[X]      BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:**  I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed.R.Civ.P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF).  *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing.  The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P. 5(d)(1).  A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."*

9

10

11

12

13

14

15

     Executed July 2, 2013, at Pittsburgh, Pennsylvania.

16

17

       _   s/Joseph N. Kravec, Jr._
             Joseph N. Kravec, Jr.

18

19

20

21

22

23

24

25

26

27

28