IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY S. SETHAVANISH, on behalf of themselves and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>ZONEPERFECT NUTRITION COMPANY,<br><br>    Defendant. | Case No. 12-2907-SC<br><br>ORDER DENYING MOTION FOR CLASS CERTIFICATION |

## I. INTRODUCTION

Plaintiff Kimberly S. Sethavanish ("Plaintiff") brings this putative class action against Defendant ZonePerfect Nutrition Company ("Defendant"), a maker of nutritional snack bars ("nutrition bars"). The thrust of Plaintiff's Complaint is that Defendant's nutrition bars, which bear on their labels the statement "All-Natural Nutrition Bars," are not all-natural and hence misleadingly labeled. Now pending before the Court is Plaintiff's fully-briefed motion for class certification. ECF Nos. 65 ("Mot."), 73 ("Pl.'s Supp. Br."), 77 (Opp'n), 82 ("Reply"), 85 ("Def.'s Sur-Reply"). Also pending before the Court is Defendant's

United States District Court
For the Northern District of California

fully briefed motion for an evidentiary hearing on class certification issues, ECF Nos. 86 ("Evid. Mot."), 88 ("Opp'n to Evid. Mot.").[1] The motions are suitable for decision without oral argument. Civ. L.R. 7-1(b). For the reasons set forth below, both motions are DENIED.

**II. BACKGROUND**

Defendant manufactures, distributes, and sells nutrition bars (the "ZonePerfect bars") through walk-in and online retailers. ECF No. 1 ("Compl.") ¶ 9. There are twenty varieties of ZonePerfect bars, and they are sold and distributed nationwide in grocery stores, health food stores, and other venues. Id. ¶ 10. The packaging of all twenty varieties is similar. See id. ¶ 42. The front of the packaging is emblazoned with the ZonePerfect logo and the legend "All-Natural Nutrition Bars." Id.

Plaintiff claims that this "all-natural" representation is false and misleading because all varieties of the ZonePerfect bars contain one or more of the following ten allegedly non-natural ingredients: ascorbic acid; calcium pantothenate; calcium phosphates; glycerine; potassium carbonate a/k/a "Cocoa [Processed with Alkali]" or "Cocoa Powder [Processed with Alkali]"; pyridoxine hydrochloride; disodium phosphate; sorbitan monostearate; tocopherols; and xanthan gum. Id. ¶¶ 21-30. Plaintiff contends that these ingredients are not natural because federal regulations define them as "synthetic." See ECF No. 66 ("Kravec Decl.") Ex. 8 (list of applicable regulations).

---

[1] At the Court's request, the parties also submitted supplemental briefing on the issue of standing. ECF Nos. 94, 99.

Beginning on or around September 14, 2007, Plaintiff purchased the ZonePerfect bars for her then-fiancé James Collucci (the two are now married). Compl. ¶ 8. At the time, Mr. Colluci was an active-duty member of the United States Marine Corps. Id. He was stationed at Camp Pendleton in San Diego County, California and then deployed overseas. Id. During this time, Plaintiff sent Mr. Colucci a monthly care package. Id. At Mr. Colucci's request, Plaintiff would include in these care packages "two multi-bar packs of ZonePerfect Nutrition Bars per month, including its Classic ZonePerfect 'All-Natural' Nutrition Bars Chocolate Peanut Butter flavor." Id. Plaintiff alleges that, beginning on September 14, 2007, Ms. Sethavanish would purchase packs of ZonePerfect Chocolate Peanut Butter Bars every four to six weeks from retail stores near her home. See id.

Plaintiff alleges that Mr. Colucci believed and relied upon the "all-natural" representation on the label of the ZonePerfect bars when he asked Plaintiff to purchase them for him. Id. ¶ 7. Plaintiff alleges that, based on the "all-natural" representation, she believed that the nutrition bars were made entirely of natural ingredients. Id. ¶ 8. Plaintiff alleges that she paid more for the ZonePerfect bars than she would have had to pay for other nutrition bars that were not all natural, and that, had she known the truth, she would have purchased another brand of nutrition bar that was truly all natural or, lacking that, other non-natural nutrition bars that were less expensive. Id.

Plaintiff asserts claims for (1) common law fraud; (2)-(4) unlawful, unfair, and fraudulent business practices in violation of the California Unfair Competition Law ("UCL"), Cal. Bus & Prof.

Code § 17200, et seq.; (5) false advertising in violation of the California False Advertising Law ("FAL"), id. § 17500, et seq.; (6) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; and (7) restitution based on quasi contract.[2] Plaintiff now moves this Court to certify a nationwide class of all persons who purchased ZonePerfect bars in the United States on or after September 14, 2007. The class is limited to purchases of ZonePerfect bars that were labeled "All-Natural," but which contain one or more of the allegedly non-natural ingredients listed above.

### III. LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011) (internal quotations and citations omitted). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. (internal quotations and citations omitted).

Under Rule 23(a), four prerequisites must be satisfied for class certification:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties

---

[2] Plaintiff's claim for violation of the Magnuson-Moss Warranty Act was previously dismissed with prejudice. ECF No. 38.

4

> are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

A plaintiff also must satisfy one or more of the separate prerequisites set forth in Rule 23(b). Plaintiff moves for certification under Rule 23(b)(3), which requires that common questions of law or fact predominate and the class action is superior to other available methods of adjudication.

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Dukes, 131 S. Ct. at 2551 (emphasis deleted). Analysis of these factors "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id. at 2552 (internal quotations and citations omitted). "Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, e.g., jurisdiction and venue, is a familiar feature of litigation." Id.

**IV. DISCUSSION**

Defendant argues that the Court need not address the requirements of Rule 23 because (1) Plaintiff has failed to establish that she has standing, and (2) Plaintiff has failed to establish that the proposed class is ascertainable. The Court finds that Plaintiff has satisfied the standing requirements, at

5

1 least for class certification purposes.  However, the Court also
2 finds that Plaintiff has failed to establish ascertainability.
3 Accordingly, her motion for class certification is DENIED.[3]

**A.   Standing**

Article III of the United States Constitution provides that the judicial power of the United States extends only to proper cases and controversies.  The doctrine of standing which flows from this language requires a plaintiff to establish: (1) "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that it is likely "that the injury will be redressed by a favorable decision."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotations omitted).  Defendant contends that the first element of standing, injury in fact, is absent here.  "On a motion for class certification, Plaintiffs must demonstrate, not merely allege, that they have suffered an injury-in-fact to establish Article III standing to bring the claims asserted on behalf of the Main Class." Evans v. Linden Research, Inc., C 11-01078 DMR, 2012 WL 5877579, at *6 (N.D. Cal. Nov. 20, 2012).

At the pleading stage, "[a] consumer who relies on a product label and challenges a misrepresentation contained therein can [satisfy the economic injury] requirement . . . by alleging . . . that he or she would not have bought the product but for the misrepresentation."  Kwikset Corp. v. Sup. Ct., 51 Cal. 4th 310, 330 (Cal. 2011).  At class certification, the plaintiff must present evidence supporting such allegations.  See Evans, 2012 WL

---

[3] Defendant also argues that typicality, adequacy, and predominance are lacking.  The Court need not reach these issues since it finds that the proposed class is not ascertainable.

5877579, at *6. Plaintiffs may establish economic injury even if the product in question is not "defective, overpriced, or of inferior quality." Kwikset, 51 Cal. 4th at 331. For example, in Kwikset, the California Supreme Court found that the plaintiffs had established an economic injury where they had purchased locksets based on the allegedly false representation that the products were made in the United States. The court explained that the plaintiffs had not received the benefit of the bargain:

> Plaintiffs selected Kwikset's locksets to purchase in part because they were "Made in U.S.A."; they would not have purchased them otherwise; and, it may be inferred, they value what they actually received less than either the money they parted with or working locksets that actually were made in the United States. They bargained for locksets that were made in the United States; they got ones that were not. The same points may be made generally with regard to consumers who purchase products in reliance on misrepresentations. The observant Jew who purchases food represented to be, but not in fact, kosher; the Muslim who purchases food represented to be, but not in fact, halal; the parent who purchases food for his or her child represented to be, but not in fact, organic, has in each instance not received the benefit of his or her bargain.

Id. at 332.

Likewise, Plaintiff asserts that she would not have purchased ZonePerfect bars but for the "all natural" claim on the packaging. Plaintiff pleads that "had [she] known the truth that [Defendant]'s Nutrition Bars were not all natural, she would not have purchased [Defendant]'s Nutrition Bars, but would have purchased another brand of nutrition bar that was truly all natural or, if one was not available, would have purchased other non-natural nutrition bars that were less expensive." Compl. ¶ 8. Plaintiff also testified that Mr. Colucci requested that she send him ZonePerfect

7

bars because he wanted to eat an all-natural product while he was deployed. ECF No. 96 Ex. A at 24. When asked whether she considered purchasing something other than the ZonePerfect bars, Plaintiff responded: "I went to the all natural section -- or the nutrition bar section, looked for ones that had "all natural," and just included them in the packages [to Mr. Colucci]." Id. at 34. The Court finds this sufficient to establish injury.

Defendant argues that Plaintiff did not suffer injury because the alleged misrepresentations actually saved her money. Opp'n at 9. Defendant points out that Plaintiff has testified that she now purchases Pure Protein bars, products Plaintiff does not believe to be all natural. Id. Defendant contends that Pure Protein bars are actually more expensive than ZonePerfect bars. But regardless of what Plaintiff now purchases for her household, she has testified that she was interested in purchasing all-natural nutrition bars for Mr. Colucci while he was deployed. Moreover, Plaintiff need not prove that she paid a premium for ZonePerfect bars in order to establish standing. It is enough that she has asserted that she would not have purchased the product but for Defendant's alleged misrepresentation. She bargained for a nutrition bar that was all natural, and she allegedly received one that was not.

Defendant also urges the Court to reject Plaintiff's claim that she and Mr. Colucci valued all-natural products. In support of her motion for class certification, Plaintiff has submitted a declaration stating she did not purchase any nutrition bar that was not labeled as "All Natural" during the class period. ECF No. 95. Defendant argues that this declaration is a sham. Defendant points out that Plaintiff has alleged that she was willing to purchase

8

1  non-natural nutrition bars, so long as they were less expensive
2  than all-natural alternatives.  Compl. ¶ 8.  Defendant also points
3  out that, at her deposition, Plaintiff testified that she
4  previously purchased a number of other nutrition bars, including
5  Power Bars and Luna Bars, but she does not recall whether these
6  products are all natural.  ECF No. 78-5 at 69-70, 122, 126-27.
7  Plaintiff also testified she has always been willing to eat foods
8  with artificial and synthetic ingredients.  Id. at 181.
9       The Court agrees that there is some tension between
10 Plaintiff's declaration, her pleadings, and her deposition
11 testimony.  However, those statements are not irreconcilable.  It
12 is unclear when Plaintiff purchased the other nutrition bars
13 referenced by Defendant, as well as whether Plaintiff purchased
14 these products for Mr. Colucci while he was deployed.  Moreover,
15 the fact that Plaintiff sometimes purchases non-natural products
16 does not preclude the possibility that she also values all-natural
17 products.  In any event, Defendant is essentially asking the Court
18 to assess the credibility of Plaintiff's statements regarding her
19 preference for all-natural foods.  It would be inappropriate to
20 make such a determination on a motion for class certification.
21      For these reasons, the Court finds that Plaintiff has set
22 forth sufficient evidence to establish standing for the purposes of
23 class certification.
24      **B.   Ascertainability**
25      "As a threshold matter, and apart from the explicit
26 requirements of Rule 23(a), the party seeking class certification
27 must demonstrate that an identifiable and ascertainable class
28 exists."  Wolph v. Acer Am. Corp., 272 F.R.D. 477, 482 (N.D. Cal.

2011). "A class definition should be precise, objective, and presently ascertainable." O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotations omitted). "While the identity of the class members need not be known at the time of certification, class membership must be clearly ascertainable.  The class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member." Wolph, 272 F.R.D. at 482 (internal citations omitted).

Defendant argues that Plaintiff has failed to define an objectively ascertainable class.  Opp'n at 10.  Defendant contends that it overwhelmingly sells to retailers, not directly to consumers, and that there are no records identifying any but a small fraction of consumers who have purchased ZonePerfect bars in the last several years.  Id. at 11.  Thus, Defendant reasons, it would be infeasible to determine whether a putative class member actually purchased Defendant's products and in what quantity.  Id. Plaintiff responds that a class need not be so ascertainable that every potential member can be identified at class certification. Reply at 2.  Plaintiff further argues that its class definition is sufficient since it allows identification of class members through objective criteria.  Id.

The Third Circuit addressed a similar dispute in Carrera v. Bayer Corp., 727 F.3d 300 (3d Cir. 2013), a putative class action brought on behalf of the purchasers of the defendant's diet supplement.  The court found that the class was not ascertainable because there was insufficient evidence to show that retailer records could be used to identify class members.  Id. at 308-09.

The court also rejected the plaintiff's contention that class membership could be determined based on affidavits by putative class members, reasoning this process deprived the defendant of the opportunity to challenge class membership. Id. at 309. Additionally, the court held that fraudulent or inaccurate claims could dilute the recovery of absent class members, and, as a result, absent class members could argue that they were not bound by a judgment because the named plaintiff did not adequately represent them. Id. at 310.

Courts in this circuit are split on the issue. Xavier v. Philip Morris USA Inc., 787 F. Supp. 2d 1075 (N.D. Cal. 2011) (Alsup J.), echoes the Third Circuit's decision in Carrera. In Xavier, the plaintiff moved to certify a class of asymptomatic smokers and recent quitters who were more than fifty years old and had at least a twenty-pack-year smoking history.[4] Id. at 1078. The Court denied the motion, holding that the class members could not be ascertained in a reliable manner. Id. at 1089. Specifically, "[t]here [was] no reliable way in which smokers themselves could document their long-term smoking histories." Id. Like the Third Circuit, the Court declined to rely on affidavits to determine class membership, reasoning that the procedure could invite fraudulent or inaccurate claims and undermine the finality of any judgment with respect to absent class members. Id. at 1090-91.

The Court reached a different result in Ries v. Arizona Beverages USA LLC, 287 F.R.D. 523 (N.D. Cal. 2012) (Seeborg J.), a

---

[4] The plaintiff defined "pack-year" as "the product of the number of cigarette packs smoked per day and the number years the smoking habit has continued."  Xavier, 787 F. Supp. 2d at 1078.

11

consumer class action suit challenging the defendant's representation that its ice tea products were "All Natural." The defendant argued that administration of the class would require fact-intensive mini-trials because class members were unlikely to have retained receipts or other proof that they purchased the defendant's products. Id. at 535. The Court rejected this argument, reasoning that if such concerns could defeat class certification, "there would be no such thing as a consumer class action." Id. The Court also held that there is "no requirement that 'the identity of class members . . . be known at the time of certification.'" Id. (quoting Wolph, 272 F.R.D. at 482). Citing to Ries, the District Court for the Southern District of California reached the same conclusion in Astiana v. Kashi Co., 291 F.R.D. 493, 500 (S.D. Cal. 2013), another consumer class action challenging a defendant's "all natural" representations.

The Court finds the reasoning of Carrera and Xavier more persuasive than that of Ries and Astiana. While the former line of cases may restrict the types of consumer classes that can be certified, they do not bar certification in consumer class actions altogether.[5] For example, in some cases, retailer or banking records may make it economically and administratively feasible to determine who is in (and who is out) of a putative class. Moreover, even though there is no requirement that a named plaintiff identify all class members at the time of certification,

---

[5] Moreover, there are other means of curbing the kind of false and misleading labeling alleged here. The FDA could promulgate regulations concerning the use of the term "all natural." Alternatively, under the UCL, the California attorney general or a city attorney could file an action in the name of the people of California. Cal. Bus. & Prof. Code § 17204.

12

that does not mean that a named plaintiff need not present some method of identifying absent class members to prevail on a motion for class certification.

In the instant action, Plaintiff has yet to present any method for determining class membership, let alone an administratively feasible method. It is unclear how Plaintiff intends to determine who purchased ZonePerfect bars during the proposed class period, or how many ZonePerfect bars each of these putative class members purchased. It is also unclear how Plaintiff intends to weed out inaccurate or fraudulent claims. Without more, the Court cannot find that the proposed class is ascertainable.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff Kimberly Sethavanish's motion for class certification is DENIED without prejudice. Plaintiff may move for class certification again if she can devise a method for determining class membership in a manner consistent with the guidance set forth above. Defendant's motion for an evidentiary hearing on class certification issues is DENIED as moot.

IT IS SO ORDERED.

February 13, 2014

_____
UNITED STATES DISTRICT JUDGE